# EXHIBIT C

<u>GUARANTY</u>

THIS GUARANTY (this "<u>Guaranty</u>") is entered into as of September 1, 2022, by and among each of the signatories party hereto and each other Person who becomes a party hereto pursuant to <u>Section 22</u> (including any permitted successors and assigns, collectively, the "<u>Guarantors</u>" and each individually, a "<u>Guarantor</u>") for the benefit of OHP - LPG, LP, a Delaware limited partnership ("<u>OHP</u>"), and its Affiliates (OHP and its Affiliates, together with their successors and assigns, herein sometimes collectively called "<u>Beneficiaries</u>").  Unless otherwise defined herein, all capitalized terms have the meanings given to such terms in the LLC Agreement (as defined herein).

<u>BACKGROUND</u>

The Guarantors, the other parties thereto, and OHP have entered into that certain Limited Liability Company Agreement of the Company dated as of the date hereof (as it may be amended, restated, supplemented, or otherwise modified from time to time, the "<u>LLC Agreement</u>").

It is a condition precedent to effectiveness of the LLC Agreement that Guarantors shall have executed and delivered this Guaranty, and each Guarantor is entering into this Guaranty in order to, among other things, induce OHP to extend OHP Funding Capital (as defined in the LLC Agreement) to Company under the LLC Agreement.

Each Guarantor is a member of an Affiliate of a member in the Company, and the extension of credit to Company is a substantial and direct benefit to each Guarantor.

NOW, THEREFORE, for valuable consideration, the receipt and adequacy of which are hereby acknowledged, each Guarantor hereby guarantees to Beneficiaries the prompt payment and performance of the Guaranteed Obligations, this Guaranty being upon the following terms and conditions:

1.      <u>Definitions</u>.  Capitalized terms used herein and not otherwise defined herein have the meanings given such terms in the LLC Agreement.  As used in this Guaranty, the following terms have the following meanings:

"<u>Company</u>" means PURCHASECO80, LLC, a Delaware limited liability company, and without limitation, Company's successors and assigns (regardless of whether such successor or assign is formed by or results from any merger, consolidation, conversion, sale or transfer of assets, reorganization, or otherwise) including Company as a debtor-in-possession, and any receiver, trustee, liquidator, conservator, custodian, or similar party hereafter appointed for Company or all or substantially all of its assets pursuant to any Debtor Relief Laws from time to time in effect.

"<u>Debtor Relief Laws</u>" means the Bankruptcy Code of the United States of America, and all other liquidation, conservatorship, bankruptcy, assignment for the benefit of creditors, moratorium, rearrangement, receivership, insolvency, reorganization, or similar debtor relief laws of the United States or other applicable jurisdictions from time to time in effect.

"<u>Guaranteed Obligations</u>" means, as of any date, all OHP Funding Capital which has been paid into the Company as of such date of determination, but which has not been repaid, and the Guaranteed Performance Obligations.

"Guaranteed Performance Obligations" means all of the obligations of Company and each Guarantor under the LLC Agreement and the Ancillary Agreements, other than an obligation to pay money.

"Release Date" means the date upon which both of the following have occurred: (a) the Guaranteed Obligations are paid and performed in full and (b) the ability of the Company to request OHP Funding Capital has expired or terminated.

2. Payment. Each Guarantor hereby unconditionally and irrevocably guarantees to Beneficiaries the punctual payment when due, whether by lapse of time, by acceleration of maturity, or otherwise, and at all times thereafter, of the Guaranteed Obligations. This Guaranty covers the Guaranteed Obligations, whether presently outstanding or arising subsequent to the date hereof, including all amounts advanced by any Beneficiary in stages or installments. The guaranty of the Guarantors as set forth in this Section 2 is a continuing guaranty of payment and not a guaranty of collection. Each Guarantor acknowledges and agrees that such Guarantor may be required to pay and perform the Guaranteed Obligations in full without assistance or support from Company, any other Guarantor, or any other party. Each Guarantor agrees that if all or any part of the Guaranteed Obligations shall not be punctually paid when due, whether on the scheduled payment date, by lapse of time, by acceleration of maturity or otherwise, such Guarantor shall, immediately upon demand by a Beneficiary, pay the amount due on the Guaranteed Obligations to such Beneficiary at Beneficiary's address as set forth herein. Such demand(s) may be made at any time coincident with or after the time for payment of all or part of the Guaranteed Obligations, and may be made from time to time with respect to the same or different items of Guaranteed Obligations. Such demand shall be made, given and received in accordance with the notice provisions hereof.

3. Performance. Each Guarantor hereby unconditionally and irrevocably guarantees to Beneficiaries the timely performance of the Guaranteed Performance Obligations. If any of the Guaranteed Performance Obligations are not satisfied or complied with in any respect whatsoever, and without the necessity of any notice from a Beneficiary to any Guarantor, each Guarantor agrees to indemnify and hold Beneficiaries harmless from any and all loss, cost, liability or expense that Beneficiaries may suffer by any reason of any such non-performance or non-compliance. The obligations and liability of the Guarantors under this Section 3 shall not be limited or restricted by the existence of, or any terms of, the guaranty of payment under Section 2 of this Guaranty.

4. Primary Liability of the Guarantors.

(a) This Guaranty is an absolute, irrevocable and unconditional guaranty of payment and performance. Each Guarantor is and shall be jointly and severally liable for the payment and performance of the Guaranteed Obligations, as set forth in this Guaranty, as a primary obligor.

(b) In the event of default in payment or performance of the Guaranteed Obligations, or any part thereof, when such Guaranteed Obligations become due (including as a result of an Event of Default under the LLC Agreement), whether by its terms, by acceleration, or otherwise, each Guarantor shall promptly pay the amount due thereon to Beneficiaries without notice or demand, of any kind or nature, in lawful money of the United States of America or perform the obligations to be performed hereunder, and it shall not be necessary for any Beneficiary in order to enforce such payment and performance by any Guarantor first, or contemporaneously, to institute suit or exhaust remedies against Company or others liable on the Guaranteed Obligations, including any other Guarantor, or to enforce any rights, remedies, powers, privileges or benefits of any Beneficiary against any security or collateral which shall ever have been given to secure the Guaranteed Obligations.

(c)    Suit may be brought or demand may be made against all parties who have signed this Guaranty or any other guaranty in favor of Beneficiaries covering all or any part of the Guaranteed Obligations, or against any one or more of them, separately or together, without impairing the rights of any Beneficiary against any party hereto.  Any time that a Beneficiary is entitled to exercise its rights or remedies hereunder, such Beneficiary may in its discretion elect to demand payment and/or performance.  If a Beneficiary elects to demand performance, it shall at all times thereafter have the right to demand payment until all of the Guaranteed Obligations have been paid and performed in full.  If a Beneficiary elects to demand payment, it shall at all times thereafter have the right to demand performance until all of the Guaranteed Obligations have been paid and performed in full.

5.    <u>Other Guaranteed Debt</u>.  If any Guarantor becomes liable for any indebtedness owing by Company to Beneficiaries, or any or some of them, by endorsement or otherwise, other than under this Guaranty, such liability shall not be in any manner impaired or affected hereby, and the rights and remedies hereunder shall be cumulative of any and all other rights and remedies that Beneficiaries may ever have against the Guarantors.  The exercise by Beneficiary of any right or remedy hereunder or under any other instrument, or at law or in equity, shall not preclude the concurrent or subsequent exercise of any other right or remedy by such Beneficiary or any other Beneficiary.

6.    <u>Subrogation</u>.  Until the Release Date has occurred, each Guarantor hereby covenants and agrees that it shall not assert, enforce, or otherwise exercise (a) any right of subrogation to any of the rights, remedies or liens of Beneficiaries or any other beneficiary against Company or its Affiliates or any other guarantor of the Guaranteed Obligations or any collateral or other security, or (b) unless such rights are expressly made subordinate to the Guaranteed Obligations (in form and upon terms acceptable to OHP) and the rights or remedies of Beneficiaries under this Guaranty and the other Ancillary Agreements, any right of recourse, reimbursement, contribution, indemnification, or similar right against Company or its Affiliates or any other guarantor of all or any part of the Guaranteed Obligations.

7.    <u>Subordinated Debt</u>.  All principal of and interest on all indebtedness, liabilities, and obligations of Company or its Affiliates to any Guarantor (the "<u>Subordinated Debt</u>") now or hereafter existing, due or to become due to any Guarantor, or held or to be held by any Guarantor, whether created directly or acquired by assignment or otherwise, and whether evidenced by written instrument or not, shall be expressly subordinated to the Guaranteed Obligations.  Until the Release Date, each Guarantor agrees not to receive or accept any payment from Company with respect to the Subordinated Debt; and, in the event any Guarantor receives any payment on the Subordinated Debt in violation of the foregoing, such Guarantor will hold any such payment in trust for Beneficiaries and forthwith turn it over to Beneficiaries in the form received, to be applied to the Guaranteed Obligations.

8.    <u>Obligations Not to be Diminished</u>.  Each Guarantor hereby agrees that its obligations under this Guaranty shall not be released, discharged, diminished, impaired, reduced, or affected for any reason or by the occurrence of any event, including, without limitation, one or more of the following events, whether or not with notice to or the consent of such Guarantor:  (a) the taking or accepting of collateral as security for any or all of the Guaranteed Obligations or the release, surrender, exchange, or subordination of any collateral now or hereafter securing any or all of the Guaranteed Obligations; (b) any partial release of the liability of Company or any other Guarantor or the full or partial release of any other guarantor or obligor from liability for any or all of the Guaranteed Obligations; (c) the death, disability, dissolution, insolvency, or bankruptcy of Company, any other Guarantor, or any other party at any time liable for the payment of any or all of the Guaranteed Obligations; (d) any renewal, extension, modification, waiver, amendment, or rearrangement of any or all of the Guaranteed Obligations or any instrument, document, or agreement evidencing, securing, or otherwise relating to any or all of the Guaranteed Obligations; (e) any adjustment, indulgence, forbearance, waiver, or compromise that may be granted or given by any

GUARANTY AGREEMENT – Page 3

Beneficiary to Company, any other Guarantor, or any other party ever liable for any or all of the Guaranteed Obligations; (f) any neglect, delay, omission, failure, or refusal of any Beneficiary to take or prosecute any action for the collection of any of the Guaranteed Obligations or to foreclose or take or prosecute any action in connection with any instrument, document, or agreement evidencing, securing, or otherwise relating to any or all of the Guaranteed Obligations; (g) the unenforceability or invalidity of any or all of the Guaranteed Obligations or of any instrument, document, or agreement evidencing, securing, or otherwise relating to any or all of the Guaranteed Obligations; (h) any payment by Company or any other party to any Beneficiary is held to constitute a preference under applicable Debtor Relief Laws or if for any other reason any Beneficiary is required to refund any payment or pay the amount thereof to someone else; (i) the settlement or compromise of any portion of the Guaranteed Obligations; (j) the non-perfection of any security interest or lien securing any or all of the Guaranteed Obligations; (k) any impairment of any collateral securing any or all of the Guaranteed Obligations; (l) the failure of any Beneficiary to sell any collateral securing any or all of the Guaranteed Obligations in a commercially reasonable manner or as otherwise required by law; (m) any change in the corporate existence, structure, or ownership of Company or any other Guarantor; or (n) any other circumstance which might otherwise constitute a defense available to, or discharge of, Company, any Guarantor, or any other obligor, other than payment.

9. <u>Waivers</u>. Each Guarantor waives (a) any right to revoke this Guaranty with respect to future indebtedness; (b) any right to require any Beneficiary to do any of the following before such Guarantor is obligated to pay the Guaranteed Obligations or before any Beneficiary may proceed against such Guarantor: (i) sue or exhaust remedies against Company, the Guarantors, and other guarantors or obligors, (ii) sue on an accrued right of action in respect of any of the Guaranteed Obligations or bring any other action, exercise any other right, or exhaust all other remedies, or (iii) enforce rights against Company's assets or the collateral pledged by Company or any other Person to secure the Guaranteed Obligations; (c) any right relating to the timing, manner, or conduct of such Beneficiary's enforcement of rights against Company's assets or the collateral pledged by Company or any other Person to secure the Guaranteed Obligations; (d) if any Guarantor and Company (or a third-party) have each pledged assets to secure the Guaranteed Obligations, any right to require any Beneficiary to proceed first against the other collateral before proceeding against collateral pledged by any Guarantor; (e) except as expressly required by any applicable law, promptness, diligence, notice of any default under the Guaranteed Obligations, notice of acceleration or intent to accelerate, demand for payment, notice of acceptance of this Guaranty, presentment, notice of protest, notice of dishonor, notice of the incurring by Company of additional indebtedness, notice of any suit or other action by any Beneficiary against Company or any other Person, any notice to any party liable for the obligation which is the subject of the suit or action, and all other notices and demands with respect to the Guaranteed Obligations and this Guaranty; (f) each of the foregoing rights or defenses regardless whether they arise under (i) Chapter 43 et seq. of the Texas Civil Practice and Remedies Code, as amended, (ii) Section 17.001 of the Texas Civil Practice and Remedies Code, as amended, (iii) Rule 31 of the Texas Rules of Civil Procedure, as amended, (iv) common law, in equity, under contract, by statute, or otherwise; and (g) any and all rights under Sections 51.003, 51.004 and 51.005 of the Texas Property Code, as amended.

10. <u>Insolvency</u>. Should any Guarantor become insolvent, or fail to pay such Guarantor's debts generally as they become due, or voluntarily seek, consent to, or acquiesce in the benefit or benefits of any Debtor Relief Law, or become a party to (or be made the subject of) any proceeding provided for by any Debtor Relief Law (other than as a creditor or claimant) that could suspend or otherwise adversely affect the rights and remedies of Beneficiaries granted hereunder, then, in any such event, the Guaranteed Obligations shall be, as between such Guarantor and Beneficiaries, a fully matured, due, and payable obligation of such Guarantor to Beneficiaries (without regard to whether Company is then in default under the LLC Agreement or whether the Guaranteed Obligations, or any part thereof is then due and owing by Company to Beneficiaries), payable in full by such Guarantor to Beneficiaries upon demand, which shall be the estimated amount owing in respect of the contingent claim created hereunder.

GUARANTY AGREEMENT – Page 4

11.     <u>Termination</u>.  Each Guarantor's obligations hereunder shall remain in full force and effect until the Release Date.  If at any time any payment of the OHP Funding Capital or any other amount payable by Company under the LLC Agreement or the Ancillary Agreements is rescinded or must be otherwise restored or returned upon the insolvency, bankruptcy, or reorganization of Company or otherwise, each Guarantor's obligations hereunder with respect to such payment shall be reinstated as though such payment had been due but not made at such time.

12.     <u>Representations and Warranties</u>.  Each Guarantor represents and warrants as follows:

(a)     If such Guarantor is not a natural Person, such Guarantor (i) is duly organized or formed, validly existing and, as applicable, in good standing under the laws of the jurisdiction of its incorporation or organization; (ii) has all requisite power and authority, and all requisite governmental licenses, authorizations, consents and approvals, to own or lease its assets and carry on its business; and (iii) is duly qualified and is licensed and, as applicable, in good standing under the laws of each jurisdiction where its ownership, lease or operation of properties or the conduct of its business requires such qualification or license, except to the extent that failure to do so could not reasonably be expected to have a Material Adverse Change.

(b)     Such Guarantor has all requisite power and authority and all requisite governmental licenses, authorizations, consents and approvals to execute, deliver, and perform its obligations under this Guaranty and the other Ancillary Agreements to which it is a party.

(c)     The execution, delivery and performance by such Guarantor of this Guaranty have been duly authorized by all necessary corporate or other organizational action, and do not and will not (i) if such Guarantor is not a natural Person, contravene the terms of its organizational documents, (ii) conflict with or result in any breach or contravention of, or the creation of any lien under, or require any payment to be made under (A) any material agreement or instrument to which such Guarantor is a party or by which it or any of its property is bound or subject, or (B) any material order, injunction, writ or decree of any Governmental Authority or any arbitral award to which such Guarantor or its property is subject or (iii) violate any law in any material respect.

(d)     There are no actions, suits, proceedings, claims, disputes or investigations pending or, to the knowledge of such Guarantor, threatened, at law, in equity, in arbitration or before any Governmental Authority, by or against such Guarantor or against any of its properties or revenues that (i) could reasonably be expected to be adversely determined, and, if so determined, either individually or in the aggregate could reasonably be expected to have a Material Adverse Change or (ii) purport to affect or pertain to this Guaranty or any of the transactions contemplated hereby.

(e)     This Guaranty has been duly executed and delivered by such Guarantor.  This Guaranty constitutes a legal, valid and binding obligation of such Guarantor, enforceable against such Guarantor in accordance with its terms, except as limited by Debtor Relief Laws and general principles of equity.

(f)     No approval, consent, exemption, authorization, or other action by, or notice to, or filing with, any Governmental Authority or any other Person is necessary or required in connection with the execution, delivery or performance by, or enforcement against, such Guarantor of this Guaranty, except for such approvals, consents, exemptions, authorizations, actions or notices that have been duly obtained, taken or made and in full force and effect.

(g)     Such Guarantor has, independently and without reliance upon any Beneficiary and based upon such documents and information as such Guarantor has deemed appropriate, made its

GUARANTY AGREEMENT – Page 5

own analysis and decision to enter into this Guaranty, and such Guarantor has adequate means to obtain from Company on a continuing basis information concerning the financial condition and assets of Company, and such Guarantor is not relying upon any Beneficiary to provide (and no Beneficiary shall have duty to provide) any such information to such Guarantor either now or in the future.

(h)     The value of the consideration received and to be received by each Guarantor is reasonably worth at least as much as the liability and obligation of such Guarantor hereunder, and such liability and obligation may reasonably be expected to benefit such Guarantor directly or indirectly.

13.    <u>Covenants</u>.  To the extent not already required by the LLC Agreement, so long as this Guaranty remains in full force and effect, each Guarantor shall, unless Beneficiaries shall otherwise consent in writing:

(a)     furnish to Beneficiaries written notice of the occurrence of any Event of Default promptly upon obtaining knowledge thereof;

(b)     furnish to Beneficiaries such additional information concerning such Guarantor, Company or any other Person under the control of such Guarantor as Beneficiaries may reasonably request;

(c)     obtain at any time and from time to time all authorizations, licenses, consents or approvals as shall now or hereafter be necessary under all applicable laws or regulations or otherwise in connection with the execution, delivery and performance of this Guaranty and will promptly furnish copies thereof to Beneficiaries; and

(d)     comply with ARTICLE VII of the LLC Agreement.

In addition to the foregoing, each Guarantor agrees to comply with any requirements in the LLC Agreement applicable to such Guarantor.

14.    <u>No Fraudulent Transfer</u>.  It is the intention of each Guarantor and Beneficiaries that the amount of the Guaranteed Obligations guaranteed by such Guarantor by this Guaranty shall be in, but not in excess of, the maximum amount permitted by fraudulent conveyance, fraudulent transfer, or similar laws applicable to such Guarantor.  Accordingly, notwithstanding anything to the contrary contained in this Guaranty or any other agreement or instrument executed in connection with the payment of any of the Guaranteed Obligations, the amount of the Guaranteed Obligations guaranteed by each Guarantor by this Guaranty shall be limited to that amount which after giving effect thereto would not (a) render such Guarantor insolvent, (b) result in the fair saleable value of the assets of such Guarantor being less than the amount required to pay its debts and other liabilities (including contingent liabilities) as they mature, or (c) leave such Guarantor with unreasonably small capital to carry out its business as now conducted and as proposed to be conducted, including its capital needs, as such concepts described in clauses (a), (b) and (c) of this <u>Section 14</u>, are determined under applicable law, if the obligations of such Guarantor hereunder would otherwise be set aside, terminated, annulled or avoided for such reason by a court of competent jurisdiction in a proceeding actually pending before such court.

15.    <u>Successors and Assigns</u>.  This Guaranty is for the benefit of Beneficiaries and their successors and assigns, and, in the event of an assignment of the Guaranteed Obligations in accordance with the provisions of the LLC Agreement, or any part thereof, the rights and remedies hereunder, to the extent applicable to the indebtedness so assigned, may be transferred with such indebtedness.  This

Guaranty is binding on each Guarantor, and its heirs, administrators, personal representatives, successors and permitted assigns; provided that, no Guarantor may assign its obligations under this Guaranty without obtaining the prior written consent of OHP, and any assignment purported to be made without the prior written consent of OHP shall be null and void.

16. <u>LLC Agreement</u>. The LLC Agreement, and all of the terms thereof, are incorporated herein by reference, the same as if stated verbatim herein, and each Guarantor agrees that Beneficiaries may exercise any and all rights granted to it under the LLC Agreement and the Ancillary Agreements without affecting the validity or enforceability of this Guaranty.

17. <u>Amendments</u>. No amendment or waiver of any provision herein nor consent to any departure therefrom by any Guarantor shall be effective unless the same shall be in writing and signed by OHP, and then, such amendment, waiver, or consent shall be effective only in the specific instance and for the specific purpose for which given.

18. <u>Setoff Rights</u>. If an Event of Default has occurred and is continuing, Beneficiaries shall have the right to set off and apply against this Guaranty or the Guaranteed Obligations or both, at any time and without notice to any Guarantor, any and all sums at any time credited by or owing from any Beneficiary to any Guarantor whether or not the Guaranteed Obligations are then due and irrespective of whether or not such Beneficiary shall have made any demand under this Guaranty. As security for this Guaranty and the Guaranteed Obligations, each Guarantor hereby grants Beneficiaries a security interest in all money, instruments, certificates of deposit, and other property of such Guarantor now or hereafter held by Beneficiaries, including, without limitation, property held in safekeeping. In addition to Beneficiaries' right of setoff and as further security for this Guaranty and the Guaranteed Obligations, each Guarantor hereby grants Beneficiaries a security interest in all deposits (general or special, time or demand, provisional or final) and all other accounts of such Guarantor now or hereafter on deposit with or held by Beneficiaries or any or some of them and all other sums at any time credited by or owing from each Beneficiary to such Guarantor. The rights and remedies of Beneficiaries hereunder are in addition to other rights and remedies (including, without limitation, other rights of setoff) which Beneficiaries may have.

19. <u>Time of Essence</u>. Time shall be of the essence in this Guaranty with respect to all of each Guarantor's obligations hereunder.

20. <u>Governing Law; Venue; Service of Process</u>. This Guaranty shall be governed by and construed in accordance with the laws of the State of New York and the applicable laws of the United States of America. To the extent a dispute is not resolved in arbitration as set forth in <u>Section 24(b)</u> (the "<u>Arbitration Agreement</u>"), each Guarantor hereby agrees that any such action or proceeding against such Guarantor under or in connection with this Guaranty may be brought in any state or federal court in Austin, Texas. For any such action or proceeding that is not resolved in arbitration pursuant to the Arbitration Agreement, each Guarantor hereby irrevocably (a) submits to the nonexclusive jurisdiction of such courts, and (b) waives any objection it may now or hereafter have as to the venue of any such action or proceeding brought in any such court or that any such court is an inconvenient forum. Each Guarantor agrees that service of process upon it may be made by certified or registered mail, return receipt requested, at its address specified or determined in accordance with the provisions of <u>Section 26</u>. Nothing herein shall affect the right of Beneficiaries to serve process in any other manner permitted by law. Other than as set forth in the Arbitration Agreement, nothing herein shall limit the right of Beneficiaries to bring any action or proceeding against any Guarantor or with respect to any of its property in courts in other jurisdictions. Other than as set forth in the Arbitration Agreement, any action or proceeding by any Guarantor against OHP or any Beneficiary shall be brought only in a court located in Austin, Texas.

GUARANTY AGREEMENT – Page 7

21. <u>Counterparts</u>.  This Guaranty may be executed in counterparts (and by different parties hereto in different counterparts), each of which shall constitute an original, but all of which when taken together shall constitute a single contract.  Delivery of an executed counterpart of a signature page of this Guaranty by facsimile or in electronic (e.g., "pdf" or "tif") format shall be effective as delivery of a manually executed counterpart of this Guaranty.

22. <u>Additional Guarantors</u>.  Any Person who was not a "Guarantor" under this Guaranty at the time of initial execution hereof shall become a "Guarantor" hereunder if required pursuant to the terms of the LLC Agreement by executing and delivering to OHP a Guaranty Supplement in substantially the form of <u>Exhibit A</u> (each, a "<u>Guaranty Supplement</u>").  Any such Person shall thereafter be deemed a "Guarantor" for all purposes under this Guaranty.

23. <u>Death of a Guarantor</u>.  Should any Guarantor that is a natural Person die or become legally incapacitated, or should any Guarantor become insolvent, or fail to pay such Guarantor's debts generally as they become due, or voluntarily seek, consent to, or acquiesce in the benefit or benefits of any Debtor Relief Law or become a party to (or be made the subject of) any proceeding provided for by any Debtor Relief Law (other than as a creditor or claimant) that could suspend or otherwise adversely affect the rights of the OHP granted hereunder, then, in any such event, the Guaranteed Obligations shall be, as between such Guarantor and Beneficiaries, a fully matured, due, payable and performable obligation of such Guarantor to Beneficiaries (without regard to whether there is an Event of Default under the LLC Agreement or whether the Guaranteed Obligations, or any part thereof, are then due and owing or unperformed by the Company), payable and/or performable in full by such Guarantor upon demand of OHP, which shall be the estimated amount owing in respect of the contingent claim created hereunder.

24. <u>WAIVER OF RIGHT TO TRIAL BY JURY; BINDING ARBITRATION</u>.

(a) <u>Waiver of Jury Trial</u>.  EACH PARTY HERETO (INCLUDING OHP) HEREBY IRREVOCABLY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN ANY LEGAL PROCEEDING DIRECTLY OR INDIRECTLY ARISING OUT OF OR RELATING TO THIS GUARANTY OR THE TRANSACTIONS CONTEMPLATED HEREBY (WHETHER BASED ON CONTRACT, TORT OR ANY OTHER THEORY).  IF AND TO THE EXTENT THAT THE FOREGOING WAIVER OF THE RIGHT TO A JURY TRIAL IS UNENFORCEABLE FOR ANY REASON IN SUCH FORUM, EACH OF THE PARTIES HERETO (INCLUDING OHP) HEREBY CONSENTS TO THE ADJUDICATION OF ALL CLAIMS PURSUANT TO JUDICIAL REFERENCE AS PROVIDED IN CALIFORNIA CODE OF CIVIL PROCEDURE SECTION 638, AND THE JUDICIAL REFEREE SHALL BE EMPOWERED TO HEAR AND DETERMINE ALL ISSUES IN SUCH REFERENCE, WHETHER FACT OR LAW. EACH PARTY HERETO (A) CERTIFIES THAT NO REPRESENTATIVE, AGENT OR ATTORNEY OF ANY OTHER PERSON HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT SUCH OTHER PERSON WOULD NOT, IN THE EVENT OF LITIGATION, SEEK TO ENFORCE THE FOREGOING WAIVER AND CONSENT AND (B) ACKNOWLEDGES THAT IT AND THE OTHER PARTIES HERETO HAVE BEEN INDUCED TO ENTER INTO THIS GUARANTY BY, AMONG OTHER THINGS, THE MUTUAL WAIVERS AND CERTIFICATIONS IN THIS SECTION.

(b) <u>Binding Arbitration</u>.

(i) Upon demand of any party, whether made before or after institution of any judicial proceeding, any dispute, claim or controversy arising out of, connected with or

relating to this Guaranty ("<u>Disputes</u>")[1], between or among the parties hereto, shall be resolved by binding arbitration as provided herein. Institution of a judicial proceeding by a party does not waive the right of that party to demand arbitration hereunder. This Arbitration Agreement is intended to be as broad as legally permissible. Disputes may include, but are not limited to, tort claims, counterclaims, claims arising from documents executed in connection with this Guaranty in the future, disputes as to whether a matter is subject to arbitration, or claims concerning any aspect of the past, present or future relationships arising out of or connected with this Guaranty. The Arbitrator, and not any federal, state, or local court or agency, shall have exclusive authority to resolve any dispute relating to the validity, scope, applicability, enforceability, or waiver of this Arbitration Agreement including, but not limited to, any claim that all or any part of this Arbitration Agreement is void or voidable. The obligation to arbitrate any Dispute will survive the repayment in full of all Guaranteed Obligations, the occurrence of the Release Date, and the termination of this Guaranty for any reason. The parties hereto do not waive any applicable federal or state substantive law except as provided herein. A judgment upon the award may be entered in any court having jurisdiction.

(ii)    This Arbitration Agreement is governed by the FAA (9 U.S.C. § 1 et seq.). Unless otherwise agreed in writing by the parties, and notwithstanding any conflicting choice of law provision in this Guaranty between the parties, New York law shall control the interpretation, application, and enforcement of this Guaranty; <u>provided</u>, <u>however</u>, the Federal Arbitration Act will be applied to the Arbitration Agreement. In reaching any determination or award, the arbitrator shall apply the substantive laws of the State of New York and the applicable laws of the United States of America, without giving effect to any principles of conflict of laws under the laws of the State of New York, to all Disputes covered by this Arbitration Agreement. Any arbitration proceeding will be conducted by the American Arbitration Association (the "<u>AAA</u>"), or such other administrator as the parties shall mutually agree upon. Any arbitration proceeding shall be conducted in accordance with the AAA Commercial Arbitration Rules, unless the claim or counterclaim is at least $1,000,000 exclusive of claimed interest, arbitration fees and costs, in which case the arbitration shall be conducted in accordance with the AAA's optional procedures for large, complex commercial disputes (the commercial dispute resolution procedures or the optional procedures for large, complex commercial disputes to be referred to, as applicable, as the "<u>Arbitration Rules</u>"). Any arbitration shall proceed in a location in New York, New York or Austin, Texas selected by the AAA. The expedited procedures set forth in Sections E-1 through E-10, et seq. of the Arbitration Rules shall be applicable to claims of less than $1,000,000. All applicable statutes of limitations shall apply to any Dispute. If there is any inconsistency between the terms hereof and the Arbitration Rules, the terms and procedures set forth herein shall control. Subject to applicable law as determined by the arbitrator, any party who fails or refuses to submit to arbitration following a demand by any other party shall bear all costs and expenses incurred by such other party in compelling arbitration of any Dispute. Notwithstanding anything in the foregoing to the contrary, any arbitration proceeding demanded hereunder shall begin within 90 days after such demand thereof and shall be concluded within 120 days after such demand, unless otherwise mutually agreed in writing by the parties. These time limitations may not be extended

---

[1] The following is not covered under this Arbitration Agreement: disputes or any portion thereof that an applicable federal statute expressly states cannot be arbitrated or cannot be the subject of a pre-dispute arbitration agreement.

GUARANTY AGREEMENT – Page 9

unless a party hereto shows cause for extension and then such extension shall not exceed a total of 60 days, unless otherwise mutually agreed in writing by the parties.

(i) Any arbitration proceeding in which the amount in controversy is $5,000,000 or less will be decided by a single arbitrator selected according to the Arbitration Rules, and who shall not render an award of greater than $5,000,000. Any dispute in which the amount in controversy exceeds $5,000,000 shall be decided by majority vote of a panel of three arbitrators.

(ii) Notwithstanding the preceding binding arbitration provisions, the parties hereto preserve, without diminution, certain remedies that such Persons may employ or exercise freely, either alone, in conjunction with or during a Dispute. Each such Person shall have and hereby reserves the right to proceed in any court of proper jurisdiction or by self-help to exercise or prosecute the following remedies, as applicable: (A) all rights to foreclose against any real or personal property or other security by exercising a power of sale granted in connection with the LLC Agreement or under applicable law or by judicial foreclosure and sale, including a proceeding to confirm the sale, (B) all rights of self-help including peaceful occupation of property and collection of rents, set off, and peaceful possession of property, (C) obtaining provisional or ancillary remedies including injunctive relief, sequestration, garnishment, attachment, appointment of receiver and in filing an involuntary bankruptcy proceeding, and (D) when applicable, a judgment by confession of judgment. Preservation of these remedies does not limit the power of an arbitrator to grant similar remedies that may be requested by a party in a Dispute.

(iii) The parties agree there will be no right or authority for any dispute to be brought, heard or arbitrated as a class, collective and/or consolidated action (the "Class Action Waiver"). Nor shall any arbitrator have the authority to hear or arbitrate any such dispute, regardless of any other language in this Arbitration Agreement, or any provision of any of the rules or procedures of the AAA that might otherwise apply including, without limitation, the AAA Supplemental Rules for Class Action Arbitration. Notwithstanding the broad delegation to the arbitrator to resolve arbitrability disputes, no arbitrator shall have the right to interpret the extent, applicability and/or enforceability of this Class Action Waiver; rather, any issue or dispute as to whether this Guaranty permits such class, collective and/or consolidated action arbitration shall be resolved and/or interpreted solely by a court of competent jurisdiction. This Class Action Waiver shall be severable from this Arbitration Agreement if there is a final judicial determination that the Class Action Waiver is invalid, unenforceable, unconscionable, void or voidable. In such instances, the class or collective action must be litigated in court – not in arbitration.

(iv) Other than as set forth in the Class Action Waiver, if any provision of this Arbitration Agreement is adjudged to be invalid, unenforceable, unconscionable, void or voidable, in whole or in part, such adjudication will not affect the validity of the rest of the Arbitration Agreement; all remaining provisions will remain in effect.

25. <u>OHP Acts for Beneficiaries</u>. OHP shall (absent written notification by a Beneficiary to the contrary) act for all Beneficiaries for the purposes of making demands hereunder, obtaining information, amending or waiving provisions hereof and otherwise taking action on behalf of the Beneficiaries, and (absent written notice to the contrary) each Guarantor shall be entitled to rely on the authority of OHP to act for all Beneficiaries without further investigation.

26. <u>Notices and Deliveries</u>. All notices and other communications to any Guarantor shall be made to such Guarantor's address specified on its signature page hereto. All notices and other communications provided for herein shall be effectuated in the manner provided for in Section 14.03 of the LLC Agreement.

27. <u>Electronic Signatures and Electronic Records</u>. Each Guarantor consents to the use of electronic and/or digital signatures by any Guarantor or OHP, or any one or more of them. This Guaranty and any other Ancillary Agreement may be signed electronically or digitally in a manner specified solely by OHP. Each Guarantor agrees not to deny the legal effect or enforceability of this Guaranty or any other Ancillary Agreement solely because (a) this Guaranty or such other Ancillary Agreement is entirely in electronic or digital form, including any use of electronically or digitally generated signatures, (b) an electronic or digital record was used in the formation of this Guaranty or such other Ancillary Agreement, or (c) this Guaranty or such other Ancillary Agreement was subsequently converted to an electronic or digital record by any Guarantor or OHP, or any one or more of them. Each Guarantor agrees not to object to the admissibility of this Guaranty or any other Ancillary Agreement in the form of an electronic or digital record, or a paper copy of an electronic or digital document, or a paper copy of a document bearing an electronic or digital signature, on the grounds that the record or signature is not in its original form or is not the original of this Guaranty or such other Ancillary Agreement.

28. <u>NO ORAL AGREEMENTS</u>. THIS GUARANTY, THE LLC AGREEMENT AND THE OTHER ANCILLARY AGREEMENTS REPRESENT THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS BY THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.

*[Remainder of Page Intentionally Left Blank. Signature Pages to Follow.]*

EXECUTED as of the first date herein set forth.

**GUARANTORS:**

ADDRESS:

**LITIGATION PRACTICE GROUP PC**, a *California professional corporation*

17542 17th St., Suite 100
Tustin, CA 92780

Attention: _____

By: _____*Daniel S. March*_____
Name: Daniel S. March
Title: Managing Shareholder

GUARANTY AGREEMENT – Signature Page