Message

| | |
|---|---|
| **From**: | Tony Diab [tony@coastprocessing.com] |
| on behalf of | Tony Diab <tony@coastprocessing.com> [tony@coastprocessing.com] |
| **Sent**: | 9/13/2021 6:15:05 AM |
| **To**: | Kevin Yu [kevin.yu93@gmail.com] |
| **CC**: | Mario Azevedo [mario@azevedo.com]; Adam Blum [AdamBlum@aol.com] |
| **Subject**: | Re: Leveraged Buyout and JV Entity |
| **Attachments**: | BAT P&L May 21-12 Month.pdf; BAT Trial Bal Jan-May 21.pdf; BAT P&L May 21.pdf; BAT Tax Return Final 2020.pdf |

Hi Kevin -

We turned the accounting function over to a new accounting firm in early June, and they have redone our books completely. We should have financials for June, July and August in the next week or two, they were waiting for 2020 tax returns to be filed to finalize a few things. I will forward once ready. In the meantime the books from May are attached (they were prepared internally and not by an accounting firm, fyi).

Asante's agreement is confidential and would require written approval to disclose. I will obtain the same this week and forward the agreement. Are you able to jump on a call tomorrow to discuss further? I want to make sure all requisite disclosures have been made.

Thanks,
Tony

On Wed, Sep 8, 2021 at 5:21 PM Kevin Yu <kevin.yu93@gmail.com> wrote:
> Hey all,
>
> Can y'all please provide us with the buy-out agreement with Asante and the latest set of financials y'all have (unaudited is fine).
>
> Thanks,
>
>
> Kevin Yu
> kevin.yu93@gmail.com
> (512) 888-8897


On Tue, Aug 24, 2021 at 1:35 AM Tony Diab <tony@coastprocessing.com> wrote:
> Hi Kevin -
>
> My apologies for the delay, I had to confirm with all interested individuals. This structure works for us. I would ask if you could prepare the term sheet. I will send the draft promissory note in the morning.
>
> Thanks,
> Tony

On Thu, Aug 19, 2021 at 7:05 PM Kevin Yu <kevin.yu93@gmail.com> wrote:
> Hey all,
>
> Per Mario's request, here's a summary of the terms as we understand it from our side. This is also how we have the attached model working. Note that this is all high-level and I've highlighted only a few debt terms

EXHIBIT 472

OHPLPG00072237

we'd expect to include as part of standard market terms. This is also contingent and subject to change upon our receipt and understanding of the buyout docs, but high level this is our understanding.

Loan:
- ~$5 million loan to LPG - 16% interest, current pay interest, principal paydown at LPG's discretion
- Expected ~150k - 250k in monthly payments (including interest) per month from LPG's cash flows

JV Entity:
- Nominal start-up cost invested in entity
- OHP will fund preferred equity (i.e. first money out) to purchase packages
- Common equity afterwards split 50% OHP and 50% LPG and co.
- Exception for first 20 months (or until loan is paid down) where monthly distributions of all excess cash (leaving a nominal 25-50k in the entity) will be made, at 50-50, to help LPG pay down the above loan
-After loan is paid down, cash is recycled within the JV until monthly cash receivables are greater than next months expected purchases, at which point distributions of cash in excess of expected purchases will be made first to pay down preferred equity, then distributed 50/50 to partners.

Other:
-Standard debt terms
-ROFR on all package buying, at cost - carveout for certain existing agreement (e.g. Brian's monthly purchase)
-Covenants surrounding package purchase price (<7.25%), default rate (<30%), etc.
-All asset lien on LPG (or something to this effect if this is explicitly disallowed)

Whenever you get a solid term sheet draft, let us know. Thanks.

Kevin Yu
kevin.yu93@gmail.com
(512) 888-8897


--
Coast Processing
1351 Calle Avanzado
Suite 2
San Clemente, CA 92673
949.229.6262, ext. 1013
tony@coastprocessing.com



--
Coast Processing
1351 Calle Avanzado
Suite 2
San Clemente, CA 92673
949.229.6262, ext. 1013
tony@coastprocessing.com

OHPLPG00072238

**B.A.T.**

**Profit & Loss by Month**

**June 2020 through May 2021**

|  | Jun 20 | Jul 20 |
|---|---:|---:|
| **Ordinary Income/Expense** | | |
| **Income** | | |
| Credit Card Credit Return | 0.00 | 0.00 |
| Discount | 0.00 | 0.00 |
| Other Income | 0.00 | 5,000.00 |
| Sales | 2,214,760.42 | 3,090,679.38 |
| Sweep Interest | 8.75 | 8.00 |
| **Total Income** | 2,214,769.17 | 3,095,687.38 |
| **Gross Profit** | 2,214,769.17 | 3,095,687.38 |
| **Expense** | | |
| Affiliates Reimbursement | 1,930,200.45 | 1,789,185.01 |
| Answering Service Exam | 0.00 | 0.00 |
| Application Fee | 0.00 | 0.00 |
| Auditing Expenses | 0.00 | 0.00 |
| **Automobile Expense** | | |
| Gas | 787.48 | 343.91 |
| Mileage | 109.37 | 174.69 |
| Automobile Expense - Other | 5,624.40 | 631.11 |
| **Total Automobile Expense** | 6,521.25 | 1,149.71 |
| Background Checks | 560.00 | 980.00 |
| Bank Open Items | 0.00 | 0.00 |
| Bank Service Charges | 75.00 | 85.95 |
| City License | 0.00 | 23.00 |
| commission | 0.00 | 0.00 |
| Compliance Fee | 0.00 | 0.00 |
| Computer & Internet Security | 11,933.47 | 34,422.00 |
| **Computer& Internet Supply** | | |
| Website | 22.54 | 1,028.87 |
| Computer& Internet Supply - Other | 4,920.90 | 4,999.94 |
| **Total Computer& Internet Supply** | 4,943.44 | 6,028.81 |
| Consultation | 0.00 | 0.00 |
| Covid 19 Test | 0.00 | 0.00 |
| Credit Reporting | 10,332.00 | 12,702.00 |
| Donation | 0.00 | 0.00 |
| Education | 199.00 | 0.00 |
| Electric | 0.00 | 4,606.68 |
| Employee Benefits | 2,767.90 | 45.00 |
| Employee Search Expense | 759.75 | 239.23 |
| Employment Service | 561.86 | 0.00 |
| Food Expenses | 0.00 | 78.00 |
| Fraud Expenses | 306.83 | 83.81 |
| Gift | 0.00 | 0.00 |
| **Insurance Expense** | | |
| Life Insurance | 0.00 | 0.00 |
| Insurance Expense - Other | 0.00 | 0.00 |
| **Total Insurance Expense** | 0.00 | 0.00 |
| Interest Expense | 0.00 | 0.00 |
| lease improvement | 0.00 | 0.00 |
| Mail Fee | 0.00 | 0.00 |
| Marketing Expense | 8,116.00 | 31,060.00 |
| **Meals and Entertainment** | | |
| Meetings | 11,652.74 | 9,625.41 |
| Meals and Entertainment - Other | 997.80 | 142.70 |
| **Total Meals and Entertainment** | 12,650.54 | 9,768.11 |

OHPLPG00072239

**B.A.T.**
**Profit & Loss by Month**
June 2020 through May 2021

7:05 PM
06/10/21
Accrual Basis

|  | Jun 20 | Jul 20 |
|---|---|---|
| Medical Insurance | 11,351.32 | 11,809.61 |
| Membership Fees | 0.00 | 0.00 |
| Misc. Expense | 0.00 | 0.00 |
| Office Equipment | 22,391.73 | 3,750.20 |
| Office Remodel | 0.00 | 0.00 |
| Office Supplies | 10,601.44 | 9,455.16 |
| Online Reputation Management | 0.00 | 0.00 |
| Outside Consulting | 160,000.00 | 0.00 |
| Outside Service |  |  |
|    Office Cleaning | 1,785.00 | 1,950.00 |
|    Outside Service - Other | 15,215.39 | 17,489.23 |
| Total Outside Service | 17,000.39 | 19,439.23 |
| Parking | 0.00 | 0.00 |
| Payroll Expenses |  |  |
|    Payroll Fees | 388.44 | 124.23 |
|    Payroll Taxes | 54,052.69 | 33,576.71 |
|    Payroll Expenses - Other | 165,201.08 | 111,872.86 |
| Total Payroll Expenses | 219,642.21 | 145,573.80 |
| Personal | 0.00 | 0.00 |
| Phone | 4,625.79 | 10,956.77 |
| Postage and Delivery | 18,074.03 | 22,887.82 |
| Printing Expense | 2,788.03 | 2,725.14 |
| Professional Fees | 11,949.00 | 10,125.00 |
| professional Software Serivce | 0.00 | 0.00 |
| Reconciliation Discrepancies | 0.00 | 0.00 |
| Referral | 0.00 | 0.00 |
| Rent Expense | 21,087.50 | 17,820.50 |
| Repairs and Maintenance | 200.00 | 8,760.41 |
| Service Charge Fees | 0.00 | 0.00 |
| Shipping and Delivery | 771.50 | 1,117.81 |
| Shredding | 280.00 | 0.00 |
| Soft Scape | 0.00 | 0.00 |
| Software | 25,356.59 | 25,917.50 |
| State Filing Expense | 0.00 | 0.00 |
| Tax Consulting | 0.00 | 3,715.00 |
| Taxes | 0.00 | 2,249.00 |
| Trash/Dump | 0.00 | 69.16 |
| Travel Expense |  |  |
|    Travel - Hotel | 0.00 | 0.00 |
|    Travel Expense - Other | 9,987.85 | 12,632.41 |
| Total Travel Expense | 9,987.85 | 12,632.41 |
| Utilities |  |  |
|    Fax | 337.30 | 388.80 |
|    Utilities - Other | 561.86 | 0.00 |
| Total Utilities | 899.16 | 388.80 |
| Total Expense | 2,526,934.03 | 2,199,850.63 |
| Net Ordinary Income | -312,164.86 | 895,836.75 |
| Net Income | -312,164.86 | 895,836.75 |

OHPLPG00072240

**B.A.T.**

**Profit & Loss by Month**

**June 2020 through May 2021**

7:05 PM

06/10/21

Accrual Basis

| | Aug 20 | Sep 20 |
|---|---|---|
| **Ordinary Income/Expense** | | |
| **Income** | | |
| Credit Card Credit Return | 2,421.84 | 962.93 |
| Discount | 0.00 | 0.00 |
| Other Income | 5,000.00 | 5,000.00 |
| Sales | 3,483,825.71 | 3,024,517.50 |
| Sweep Interest | 0.00 | 0.00 |
| **Total Income** | 3,491,247.55 | 3,030,480.43 |
| **Gross Profit** | 3,491,247.55 | 3,030,480.43 |
| **Expense** | | |
| Affiliates Reimbursement | 2,485,854.48 | 2,093,265.33 |
| Answering Service Exam | 0.00 | 0.00 |
| Application Fee | 0.00 | 0.00 |
| Auditing Expenses | 0.00 | 0.00 |
| Automobile Expense | | |
| Gas | 383.40 | 478.17 |
| Mileage | 125.82 | 164.80 |
| Automobile Expense - Other | 1,315.75 | 1,315.75 |
| **Total Automobile Expense** | 1,824.97 | 1,958.72 |
| Background Checks | 1,120.00 | 2,505.00 |
| Bank Open Items | 0.00 | 0.00 |
| Bank Service Charges | 90.50 | 541.11 |
| City License | 4,300.00 | 0.00 |
| commission | 0.00 | 0.00 |
| Compliance Fee | 0.00 | 0.00 |
| Computer & Internet Security | 28,153.99 | 10,688.74 |
| Computer& Internet Supply | | |
| Website | 696.18 | 1,049.78 |
| Computer& Internet Supply - Other | 40,866.82 | 3,524.00 |
| **Total Computer& Internet Supply** | 41,563.00 | 4,573.78 |
| Consultation | 0.00 | 35,590.00 |
| Covid 19 Test | 0.00 | 0.00 |
| Credit Reporting | 561.86 | 555.82 |
| Donation | 20,000.00 | 0.00 |
| Education | 0.00 | 0.00 |
| Electric | 3,749.76 | 3,314.66 |
| Employee Benefits | 0.00 | 0.00 |
| Employee Search Expense | 502.33 | 982.02 |
| Employment Service | 0.00 | 0.00 |
| Food Expenses | 1,125.73 | 1,552.94 |
| Fraud Expenses | 0.00 | 0.00 |
| Gift | 0.00 | 0.00 |
| Insurance Expense | | |
| Life Insurance | 0.00 | 0.00 |
| Insurance Expense - Other | 0.00 | 0.00 |
| **Total Insurance Expense** | 0.00 | 0.00 |
| Interest Expense | 0.00 | 0.00 |
| lease improvement | 0.00 | 0.00 |
| Mail Fee | 0.00 | 281.42 |
| Marketing Expense | 14,351.00 | 3,325.00 |
| Meals and Entertainment | | |
| Meetings | 8,871.35 | 8,830.70 |
| Meals and Entertainment - Other | 0.00 | 0.00 |
| **Total Meals and Entertainment** | 8,871.35 | 8,830.70 |

OHPLPG00072241

**B.A.T.**

7:05 PM

06/10/21

Accrual Basis

## Profit & Loss by Month
### June 2020 through May 2021

| | Aug 20 | Sep 20 |
|---|---:|---:|
| Medical Insurance | 11,267.04 | 11,695.86 |
| Membership Fees | 69.98 | 69.98 |
| Misc. Expense | 0.00 | 0.00 |
| Office Equipment | 1,131.21 | 1,529.57 |
| Office Remodel | 0.00 | 0.00 |
| Office Supplies | 15,922.76 | 17,968.38 |
| Online Reputation Management | 0.00 | 0.00 |
| Outside Consulting | 0.00 | 0.00 |
| Outside Service | | |
|    Office Cleaning | 3,515.00 | 2,776.00 |
|    Outside Service - Other | 86,671.12 | 70,547.73 |
| **Total Outside Service** | 90,186.12 | 73,323.73 |
| Parking | 0.00 | 0.00 |
| Payroll Expenses | | |
|    Payroll Fees | -146.61 | 310.00 |
|    Payroll Taxes | 35,079.83 | 38,220.84 |
|    Payroll Expenses - Other | 112,268.60 | 119,448.10 |
| **Total Payroll Expenses** | 147,201.82 | 157,978.94 |
| Personal | 0.00 | 0.00 |
| Phone | 9,961.67 | 8,863.84 |
| Postage and Delivery | 16,216.50 | 17,667.71 |
| Printing Expense | 506.68 | 0.00 |
| Professional Fees | 10,038.00 | 12,718.00 |
| professional Software Serivce | 0.00 | 0.00 |
| Reconciliation Discrepancies | 0.00 | 0.00 |
| Referral | 0.00 | 0.00 |
| Rent Expense | 14,192.50 | 14,192.50 |
| Repairs and Maintenance | 200.00 | 1,370.16 |
| Service Charge Fees | 0.00 | 161.00 |
| Shipping and Delivery | 402.89 | 101.42 |
| Shredding | 390.00 | 320.00 |
| Soft Scape | 0.00 | 0.00 |
| Software | 29,090.93 | 29,632.12 |
| State Filing Expense | 0.00 | 0.00 |
| Tax Consulting | 0.00 | 0.00 |
| Taxes | 0.00 | 0.00 |
| Trash/Dump | 34.93 | 34.93 |
| Travel Expense | | |
|    Travel - Hotel | 390.37 | 2,054.48 |
|    Travel Expense - Other | 1,172.93 | 4,361.91 |
| **Total Travel Expense** | 1,563.30 | 6,416.39 |
| Utilities | | |
|    Fax | 357.70 | 291.50 |
|    Utilities - Other | 0.00 | 0.00 |
| **Total Utilities** | 357.70 | 291.50 |
| **Total Expense** | 2,960,803.00 | 2,522,301.27 |
| **Net Ordinary Income** | 530,444.55 | 508,179.16 |
| **Net Income** | **530,444.55** | **508,179.16** |

OHPLPG00072242

**B.A.T.**
**Profit & Loss by Month**
June 2020 through May 2021

7:05 PM
06/10/21
Accrual Basis

|  | Oct 20 | Nov 20 |
|---|---:|---:|
| **Ordinary Income/Expense** | | |
| **Income** | | |
| Credit Card Credit Return | 1,262.74 | 1,361.70 |
| Discount | 0.00 | 0.00 |
| Other Income | 5,000.00 | 10,201.00 |
| Sales | 3,720,000.00 | 3,772,000.00 |
| Sweep Interest | 0.00 | 0.00 |
| **Total Income** | 3,726,262.74 | 3,783,562.70 |
| **Gross Profit** | 3,726,262.74 | 3,783,562.70 |
| **Expense** | | |
| Affiliates Reimbursement | 2,351,901.80 | 2,785,052.39 |
| Answering Service Exam | 38,578.87 | 60,120.00 |
| Application Fee | 200.00 | 0.00 |
| Auditing Expenses | 10,000.00 | 0.00 |
| **Automobile Expense** | | |
| Gas | 610.44 | 706.00 |
| Mileage | 67.62 | 99.59 |
| Automobile Expense - Other | 1,369.34 | 1,488.75 |
| **Total Automobile Expense** | 2,047.40 | 2,294.34 |
| Background Checks | 1,960.00 | 420.00 |
| Bank Open Items | 0.00 | 0.00 |
| Bank Service Charges | 139.18 | 82.15 |
| City License | 0.00 | 0.00 |
| commission | 0.00 | 0.00 |
| Compliance Fee | 0.00 | 0.00 |
| Computer & Internet Security | 3,555.52 | 14,802.00 |
| **Computer& Internet Supply** | | |
| Website | 1,374.88 | 1,460.46 |
| Computer& Internet Supply - Other | 1,704.28 | 1,812.78 |
| **Total Computer& Internet Supply** | 3,079.16 | 3,273.24 |
| Consultation | 0.00 | 2,000.00 |
| Covid 19 Test | 0.00 | 0.00 |
| Credit Reporting | 0.00 | 0.00 |
| Donation | 0.00 | 250.00 |
| Education | 0.00 | 0.00 |
| Electric | 3,468.12 | 2,270.04 |
| Employee Benefits | 0.00 | 0.00 |
| Employee Search Expense | 2,809.57 | 3,168.62 |
| Employment Service | 130.00 | 0.00 |
| Food Expenses | 1,808.05 | 2,245.78 |
| Fraud Expenses | 0.00 | 0.00 |
| Gift | 1,655.60 | 0.00 |
| **Insurance Expense** | | |
| Life Insurance | 14,995.00 | 0.00 |
| Insurance Expense - Other | 0.00 | 4,295.00 |
| **Total Insurance Expense** | 14,995.00 | 4,295.00 |
| Interest Expense | 0.00 | 33.83 |
| lease improvement | 0.00 | 0.00 |
| Mail Fee | 149.69 | 129.99 |
| Marketing Expense | 6,876.71 | 21,117.00 |
| **Meals and Entertainment** | | |
| Meetings | 5,321.83 | 6,164.96 |
| Meals and Entertainment - Other | 0.00 | 0.00 |
| **Total Meals and Entertainment** | 5,321.83 | 6,164.96 |

OHPLPG00072243

**B.A.T.**

7:05 PM

06/10/21

Accrual Basis

## Profit & Loss by Month
### June 2020 through May 2021

| | Oct 20 | Nov 20 |
|---|---|---|
| Medical Insurance | 6,619.34 | 11,421.94 |
| Membership Fees | 85.97 | 85.97 |
| Misc. Expense | 0.00 | 0.00 |
| Office Equipment | 3,003.97 | 938.26 |
| Office Remodel | 0.00 | 0.00 |
| Office Supplies | 8,258.27 | 15,929.20 |
| Online Reputation Management | 0.00 | 0.00 |
| Outside Consulting | 0.00 | 0.00 |
| Outside Service | | |
|     Office Cleaning | 445.00 | 1,740.00 |
|     Outside Service - Other | 82,037.92 | 142,881.62 |
| **Total Outside Service** | 82,482.92 | 144,621.62 |
| Parking | 0.00 | 0.00 |
| Payroll Expenses | | |
|     Payroll Fees | 239.62 | 490.54 |
|     Payroll Taxes | 45,170.34 | 48,970.71 |
|     Payroll Expenses - Other | 139,636.01 | 148,946.29 |
| **Total Payroll Expenses** | 185,045.97 | 198,407.54 |
| Personal | 0.00 | 0.00 |
| Phone | 8,477.03 | 7,363.64 |
| Postage and Delivery | 18,011.00 | 35,174.58 |
| Printing Expense | 222.76 | 3,849.17 |
| Professional Fees | 9,111.00 | 17,990.00 |
| professional Software Serivce | 0.00 | 0.00 |
| Reconciliation Discrepancies | 0.00 | 0.00 |
| Referral | 0.00 | 3,000.00 |
| Rent Expense | 14,192.50 | 14,192.50 |
| Repairs and Maintenance | 994.39 | 0.00 |
| Service Charge Fees | 245.80 | 367.40 |
| Shipping and Delivery | 1,370.37 | 1,212.88 |
| Shredding | 400.00 | 320.00 |
| Soft Scape | 0.00 | 0.00 |
| Software | 31,453.59 | 33,869.63 |
| State Filing Expense | 0.00 | 0.00 |
| Tax Consulting | 0.00 | 0.00 |
| Taxes | 0.00 | 0.00 |
| Trash/Dump | 34.93 | 34.93 |
| Travel Expense | | |
|     Travel - Hotel | 0.00 | 4,426.00 |
|     Travel Expense - Other | 17,758.94 | 430.60 |
| **Total Travel Expense** | 17,758.94 | 4,856.60 |
| Utilities | | |
|     Fax | 935.35 | 1,049.07 |
|     Utilities - Other | 0.00 | 0.00 |
| **Total Utilities** | 935.35 | 1,049.07 |
| **Total Expense** | 2,837,380.60 | 3,402,404.27 |
| **Net Ordinary Income** | 888,882.14 | 381,158.43 |
| **Net Income** | **888,882.14** | **381,158.43** |

OHPLPG00072244

**B.A.T.**

7:05 PM

06/10/21

Accrual Basis

## Profit & Loss by Month
### June 2020 through May 2021

| | Dec 20 | Jan 21 |
|---|---:|---:|
| **Ordinary Income/Expense** | | |
| **Income** | | |
| Credit Card Credit Return | 794.14 | 73.57 |
| Discount | 0.00 | 0.00 |
| Other Income | 340.40 | 15,098.34 |
| Sales | 4,774,000.00 | 4,886,802.31 |
| Sweep Interest | 0.00 | 0.00 |
| **Total Income** | 4,775,134.54 | 4,901,974.22 |
| **Gross Profit** | 4,775,134.54 | 4,901,974.22 |
| **Expense** | | |
| Affiliates Reimbursement | 3,119,196.73 | 2,996,956.47 |
| Answering Service Exam | 0.00 | 0.00 |
| Application Fee | 0.00 | 0.00 |
| Auditing Expenses | 11,500.00 | 0.00 |
| **Automobile Expense** | | |
| Gas | 1,210.17 | 373.01 |
| Mileage | 90.97 | 77.74 |
| Automobile Expense - Other | 1,315.75 | 1,315.75 |
| **Total Automobile Expense** | 2,616.89 | 1,766.50 |
| Background Checks | 5,231.00 | 2,800.00 |
| Bank Open Items | 0.00 | 0.00 |
| Bank Service Charges | 220.05 | 1,132.95 |
| City License | 0.00 | 0.00 |
| commission | 0.00 | 0.00 |
| Compliance Fee | 0.00 | 100.00 |
| Computer & Internet Security | 42,171.81 | 1,475.00 |
| **Computer& Internet Supply** | | |
| Website | 1,263.90 | 1,588.80 |
| Computer& Internet Supply - Other | 3,954.32 | 45,192.51 |
| **Total Computer& Internet Supply** | 5,218.22 | 46,781.31 |
| Consultation | 24,940.00 | 24,068.66 |
| Covid 19 Test | 400.00 | 1,025.00 |
| Credit Reporting | 0.00 | 0.00 |
| Donation | 0.00 | 0.00 |
| Education | 0.00 | 1,785.00 |
| Electric | 2,015.66 | 2,015.66 |
| Employee Benefits | 910.14 | 0.00 |
| Employee Search Expense | 3,531.23 | 2,106.77 |
| Employment Service | -130.00 | 0.00 |
| Food Expenses | 2,030.05 | 1,491.69 |
| Fraud Expenses | 0.00 | 9.99 |
| Gift | 10,000.00 | 0.00 |
| **Insurance Expense** | | |
| Life Insurance | 0.00 | 0.00 |
| Insurance Expense - Other | 0.00 | 4,880.00 |
| **Total Insurance Expense** | 0.00 | 4,880.00 |
| Interest Expense | 499.79 | 137.60 |
| lease improvement | 0.00 | 0.00 |
| Mail Fee | 25.00 | 0.00 |
| Marketing Expense | 43,536.57 | 18,446.96 |
| **Meals and Entertainment** | | |
| Meetings | 7,608.43 | 5,289.82 |
| Meals and Entertainment - Other | 0.00 | 0.00 |
| **Total Meals and Entertainment** | 7,608.43 | 5,289.82 |

OHPLPG00072245

**B.A.T.**
**Profit & Loss by Month**
June 2020 through May 2021

7:05 PM
06/10/21
Accrual Basis

|                                    | Dec 20      | Jan 21      |
| ---------------------------------- | ----------: | ----------: |
| Medical Insurance                  | 17,502.67   | 11,696.72   |
| Membership Fees                    | 85.97       | 95.97       |
| Misc. Expense                      | 19.37       | 0.00        |
| Office Equipment                   | 15,630.58   | 1,904.22    |
| Office Remodel                     | 0.00        | 0.00        |
| Office Supplies                    | 34,185.08   | 12,848.62   |
| Online Reputation Management       | 0.00        | 0.00        |
| Outside Consulting                 | 259,246.67  | 2,605.68    |
| Outside Service                    |             |             |
|    Office Cleaning   | 1,695.00    | 1,695.00    |
|    Outside Service - Other | 207,379.73 | 139,190.24 |
| **Total Outside Service**          | 209,074.73  | 140,885.24  |
| Parking                            | 0.00        | 0.00        |
| Payroll Expenses                   |             |             |
|    Payroll Fees     | 822.36      | 2,716.60    |
|    Payroll Taxes    | 88,442.90   | 43,769.77   |
|    Payroll Expenses - Other | 288,893.78 | 114,778.66 |
| **Total Payroll Expenses**         | 378,159.04  | 161,265.03  |
| Personal                           | 1,288.62    | 0.00        |
| Phone                              | 27,226.18   | 62,280.81   |
| Postage and Delivery               | 10,386.64   | 21,543.42   |
| Printing Expense                   | 4,123.87    | 1,035.00    |
| Professional Fees                  | 44,423.00   | 10,370.00   |
| professional Software Serivce      | 0.00        | 0.00        |
| Reconciliation Discrepancies       | 0.00        | 11,100.00   |
| Referral                           | 0.00        | 0.00        |
| Rent Expense                       | 14,618.28   | 14,368.31   |
| Repairs and Maintenance            | 1,210.00    | 0.00        |
| Service Charge Fees                | 1,235.30    | 3,725.55    |
| Shipping and Delivery              | 3,151.90    | 527.54      |
| Shredding                          | 320.00      | 468.00      |
| Soft Scape                         | 0.00        | 0.00        |
| Software                           | 46,471.76   | 37,967.73   |
| State Filing Expense               | 5.00        | 0.00        |
| Tax Consulting                     | 0.00        | 0.00        |
| Taxes                              | 2,696.24    | 0.00        |
| Trash/Dump                         | 34.93       | 0.00        |
| Travel Expense                     |             |             |
|    Travel - Hotel   | 2,841.03    | 9,539.35    |
|    Travel Expense - Other | 0.00  | 0.00        |
| **Total Travel Expense**           | 2,841.03    | 9,539.35    |
| Utilities                          |             |             |
|    Fax              | 1,119.65    | 612.10      |
|    Utilities - Other | 0.00       | 0.00        |
| **Total Utilities**                | 1,119.65    | 612.10      |
| **Total Expense**                  | 4,356,578.08 | 3,617,108.67 |
| **Net Ordinary Income**            | 418,556.46  | 1,284,865.55 |
| **Net Income**                     | **418,556.46** | **1,284,865.55** |

OHPLPG00072246

**B.A.T.**

**7:05 PM**

**06/10/21**

**Accrual Basis**

## Profit & Loss by Month
### June 2020 through May 2021

| | Feb 21 | Mar 21 |
|---|---:|---:|
| **Ordinary Income/Expense** | | |
| **Income** | | |
| Credit Card Credit Return | 0.00 | 371.03 |
| Discount | 0.00 | 0.00 |
| Other Income | 150.94 | 0.00 |
| Sales | 4,586,000.00 | 5,420,318.22 |
| Sweep Interest | 0.00 | 0.00 |
| **Total Income** | 4,586,150.94 | 5,420,689.25 |
| **Gross Profit** | 4,586,150.94 | 5,420,689.25 |
| **Expense** | | |
| Affiliates Reimbursement | 2,877,468.53 | 3,508,040.74 |
| Answering Service Exam | 0.00 | 0.00 |
| Application Fee | 0.00 | 0.00 |
| Auditing Expenses | 0.00 | 0.00 |
| Automobile Expense | | |
| Gas | 250.65 | 826.83 |
| Mileage | 50.37 | 0.00 |
| Automobile Expense - Other | 1,363.93 | 1,315.75 |
| **Total Automobile Expense** | 1,664.95 | 2,142.58 |
| Background Checks | 1,540.00 | 3,160.00 |
| Bank Open Items | 0.00 | 255.63 |
| Bank Service Charges | 571.64 | 79.00 |
| City License | 0.00 | 0.00 |
| commission | 0.00 | 0.00 |
| Compliance Fee | 0.00 | 0.00 |
| Computer & Internet Security | 0.00 | 13,197.20 |
| Computer& Internet Supply | | |
| Website | 1,753.90 | 1,726.26 |
| Computer& Internet Supply - Other | 5,615.48 | 9,993.81 |
| **Total Computer& Internet Supply** | 7,369.38 | 11,720.07 |
| Consultation | 16,085.06 | 56,256.79 |
| Covid 19 Test | 0.00 | 270.00 |
| Credit Reporting | 0.00 | 0.00 |
| Donation | 0.00 | 0.00 |
| Education | 15.99 | 350.00 |
| Electric | 2,379.28 | 2,647.40 |
| Employee Benefits | 0.00 | 0.00 |
| Employee Search Expense | 230.71 | 805.92 |
| Employment Service | 0.00 | 0.00 |
| Food Expenses | 2,490.76 | 1,760.19 |
| Fraud Expenses | 0.00 | 139.98 |
| Gift | 0.00 | 703.15 |
| Insurance Expense | | |
| Life Insurance | 0.00 | 0.00 |
| Insurance Expense - Other | 0.00 | 31,784.60 |
| **Total Insurance Expense** | 0.00 | 31,784.60 |
| Interest Expense | 1,392.41 | 0.00 |
| lease improvement | 38,572.13 | 63,545.49 |
| Mail Fee | 500.00 | 1,214.00 |
| Marketing Expense | 3,790.80 | 2,053.53 |
| Meals and Entertainment | | |
| Meetings | 14,958.25 | 11,766.03 |
| Meals and Entertainment - Other | 0.00 | 0.00 |
| **Total Meals and Entertainment** | 14,958.25 | 11,766.03 |

OHPLPG00072247

**7:05 PM**

**06/10/21**

**Accrual Basis**

# B.A.T.
## Profit & Loss by Month
### June 2020 through May 2021

| | Feb 21 | Mar 21 |
|---|---|---|
| Medical Insurance | 20,574.03 | 10,366.85 |
| Membership Fees | 174.63 | 863.21 |
| Misc. Expense | 0.00 | 0.00 |
| Office Equipment | 1,172.19 | 759.69 |
| Office Remodel | 0.00 | 0.00 |
| Office Supplies | 22,476.30 | 12,360.89 |
| Online Reputation Management | 0.00 | 2,500.00 |
| Outside Consulting | 91,666.66 | 91,666.66 |
| Outside Service | | |
|     Office Cleaning | 2,504.51 | 4,524.99 |
|     Outside Service - Other | 126,332.18 | 159,800.36 |
| **Total Outside Service** | 128,836.69 | 164,325.35 |
| Parking | 0.00 | 0.00 |
| Payroll Expenses | | |
|     Payroll Fees | 1,089.90 | 784.48 |
|     Payroll Taxes | 91,488.25 | 102,565.39 |
|     Payroll Expenses - Other | 232,484.19 | 264,924.17 |
| **Total Payroll Expenses** | 325,062.34 | 368,274.04 |
| Personal | 0.00 | 0.00 |
| Phone | 46,563.92 | 66,646.88 |
| Postage and Delivery | 57,304.35 | 13,671.44 |
| Printing Expense | 391.05 | 371.44 |
| Professional Fees | 9,200.00 | 11,500.00 |
| professional Software Serivce | 0.00 | 0.00 |
| Reconciliation Discrepancies | 0.00 | -11,100.00 |
| Referral | 0.00 | 0.00 |
| Rent Expense | 14,618.28 | 14,618.28 |
| Repairs and Maintenance | 250.00 | 0.00 |
| Service Charge Fees | 4,361.35 | 4,965.55 |
| Shipping and Delivery | 1,570.11 | 1,117.42 |
| Shredding | 420.00 | 320.00 |
| Soft Scape | 52,600.00 | 0.00 |
| Software | 39,824.15 | 98,626.38 |
| State Filing Expense | 0.00 | 0.00 |
| Tax Consulting | 0.00 | 0.00 |
| Taxes | 0.00 | 66,840.00 |
| Trash/Dump | 230.12 | 230.12 |
| Travel Expense | | |
|     Travel - Hotel | 4,659.98 | 13,485.52 |
|     Travel Expense - Other | 0.00 | 2,894.30 |
| **Total Travel Expense** | 4,659.98 | 16,379.82 |
| Utilities | | |
|     Fax | 722.60 | 495.20 |
|     Utilities - Other | 0.00 | 1,390.00 |
| **Total Utilities** | 722.60 | 1,885.20 |
| **Total Expense** | 3,791,708.64 | 4,649,081.52 |
| **Net Ordinary Income** | 794,442.30 | 771,607.73 |
| **Net Income** | **794,442.30** | **771,607.73** |

OHPLPG00072248

**B.A.T.**

**Profit & Loss by Month**

**June 2020 through May 2021**

7:05 PM

06/10/21

Accrual Basis

|  | Apr 21 | May 21 |
|---|---|---|
| **Ordinary Income/Expense** | | |
| **Income** | | |
| Credit Card Credit Return | 139.98 | 59.00 |
| Discount | 3,000.00 | 0.00 |
| Other Income | 0.00 | 0.00 |
| Sales | 5,541,491.00 | 5,184,938.82 |
| Sweep Interest | 0.00 | 0.00 |
| **Total Income** | 5,544,630.98 | 5,184,997.82 |
| **Gross Profit** | 5,544,630.98 | 5,184,997.82 |
| **Expense** | | |
| Affiliates Reimbursement | 3,839,941.94 | 4,153,136.36 |
| Answering Service Exam | 0.00 | 0.00 |
| Application Fee | 0.00 | 0.00 |
| Auditing Expenses | 9,000.00 | 5,980.00 |
| Automobile Expense | | |
| Gas | 1,523.70 | 640.08 |
| Mileage | 0.00 | 363.75 |
| Automobile Expense - Other | 1,315.75 | 1,351.40 |
| **Total Automobile Expense** | 2,839.45 | 2,355.23 |
| Background Checks | 0.00 | 0.00 |
| Bank Open Items | 0.00 | 0.00 |
| Bank Service Charges | 112.01 | 10.00 |
| City License | 4.00 | 100.00 |
| commission | 35,676.80 | 0.00 |
| Compliance Fee | 0.00 | 0.00 |
| Computer & Internet Security | 22,460.45 | 18,083.16 |
| Computer& Internet Supply | | |
| Website | 1,986.85 | 716.32 |
| Computer& Internet Supply - Other | 5,039.75 | 5,025.94 |
| **Total Computer& Internet Supply** | 7,026.60 | 5,742.26 |
| Consultation | 194,544.61 | 136,493.21 |
| Covid 19 Test | 0.00 | 0.00 |
| Credit Reporting | 0.00 | 0.00 |
| Donation | 0.00 | 0.00 |
| Education | 0.00 | 0.00 |
| Electric | 2,978.93 | 3,042.19 |
| Employee Benefits | 0.00 | 0.00 |
| Employee Search Expense | 1,720.75 | 650.69 |
| Employment Service | 0.00 | 0.00 |
| Food Expenses | 3,030.90 | 1,448.83 |
| Fraud Expenses | 0.00 | 0.00 |
| Gift | 4,496.37 | 1,809.63 |
| Insurance Expense | | |
| Life Insurance | 0.00 | 0.00 |
| Insurance Expense - Other | 0.00 | 4,060.00 |
| **Total Insurance Expense** | 0.00 | 4,060.00 |
| Interest Expense | 0.00 | 0.00 |
| lease improvement | 0.00 | 0.00 |
| Mail Fee | 1,141.68 | 2,427.81 |
| Marketing Expense | 4,770.33 | 59,668.68 |
| Meals and Entertainment | | |
| Meetings | 14,910.60 | 4,946.11 |
| Meals and Entertainment - Other | 0.00 | 0.00 |
| **Total Meals and Entertainment** | 14,910.60 | 4,946.11 |

OHPLPG00072249

**B.A.T.**

**Profit & Loss by Month**

**June 2020 through May 2021**

7:05 PM

06/10/21

Accrual Basis

|  | Apr 21 | May 21 |
|---|---:|---:|
| Medical Insurance | 15,385.22 | 17,917.53 |
| Membership Fees | 57.98 | 57.98 |
| Misc. Expense | 0.00 | 0.00 |
| Office Equipment | 2,076.77 | 0.00 |
| Office Remodel | 0.00 | 0.00 |
| Office Supplies | 16,256.44 | 1,614.57 |
| Online Reputation Management | 0.00 | 0.00 |
| Outside Consulting | 0.00 | 0.00 |
| Outside Service |  |  |
|     Office Cleaning | 2,800.92 | 3,022.44 |
|     Outside Service - Other | 98,269.36 | 124,756.94 |
| **Total Outside Service** | 101,070.28 | 127,779.38 |
| Parking | 30.00 | 0.00 |
| Payroll Expenses |  |  |
|     Payroll Fees | 1,778.22 | 1,598.67 |
|     Payroll Taxes | 177,580.21 | 117,094.49 |
|     Payroll Expenses - Other | 446,178.93 | 317,362.33 |
| **Total Payroll Expenses** | 625,537.36 | 436,055.49 |
| Personal | 337.29 | 0.00 |
| Phone | 77,841.44 | 38,424.92 |
| Postage and Delivery | 74,367.34 | 24,151.23 |
| Printing Expense | 1,339.33 | 961.30 |
| Professional Fees | 9,200.00 | 19,864.00 |
| professional Software Serivce | 7,000.00 | 8,500.00 |
| Reconciliation Discrepancies | 0.00 | 0.00 |
| Referral | 0.00 | 0.00 |
| Rent Expense | 14,618.28 | 14,618.28 |
| Repairs and Maintenance | 0.00 | 0.00 |
| Service Charge Fees | 9,020.43 | 10,262.12 |
| Shipping and Delivery | 781.58 | 163.88 |
| Shredding | 0.00 | 320.00 |
| Soft Scape | 0.00 | 0.00 |
| Software | 40,781.18 | 53,115.29 |
| State Filing Expense | 0.00 | 0.00 |
| Tax Consulting | 0.00 | 0.00 |
| Taxes | 0.00 | 0.00 |
| Trash/Dump | 230.12 | 230.12 |
| Travel Expense |  |  |
|     Travel - Hotel | 10,090.26 | 13,455.37 |
|     Travel Expense - Other | 1,395.08 | 0.00 |
| **Total Travel Expense** | 11,485.34 | 13,455.37 |
| Utilities |  |  |
|     Fax | 530.10 | 663.90 |
|     Utilities - Other | 0.00 | 40.00 |
| **Total Utilities** | 530.10 | 703.90 |
| **Total Expense** | 5,152,601.90 | 5,168,149.52 |
| **Net Ordinary Income** | 392,029.08 | 16,848.30 |
| **Net Income** | **392,029.08** | **16,848.30** |

OHPLPG00072250

**B.A.T.**

**Profit & Loss by Month**

**June 2020 through May 2021**

7:05 PM

06/10/21

Accrual Basis

|  | TOTAL |
|---|---:|
| **Ordinary Income/Expense** | |
| **Income** | |
| Credit Card Credit Return | 7,446.93 |
| Discount | 3,000.00 |
| Other Income | 45,790.68 |
| Sales | 49,699,333.36 |
| Sweep Interest | 16.75 |
| **Total Income** | 49,755,587.72 |
| **Gross Profit** | 49,755,587.72 |
| **Expense** | |
| Affiliates Reimbursement | 33,930,200.23 |
| Answering Service Exam | 98,698.87 |
| Application Fee | 200.00 |
| Auditing Expenses | 36,480.00 |
| Automobile Expense | |
| Gas | 8,133.84 |
| Mileage | 1,324.72 |
| Automobile Expense - Other | 19,723.43 |
| **Total Automobile Expense** | 29,181.99 |
| Background Checks | 20,276.00 |
| Bank Open Items | 255.63 |
| Bank Service Charges | 3,139.54 |
| City License | 4,427.00 |
| commission | 35,676.80 |
| Compliance Fee | 100.00 |
| Computer & Internet Security | 200,943.34 |
| Computer& Internet Supply | |
| Website | 14,668.74 |
| Computer& Internet Supply - Other | 132,650.53 |
| **Total Computer& Internet Supply** | 147,319.27 |
| Consultation | 489,978.33 |
| Covid 19 Test | 1,695.00 |
| Credit Reporting | 24,151.68 |
| Donation | 20,250.00 |
| Education | 2,349.99 |
| Electric | 32,488.38 |
| Employee Benefits | 3,723.04 |
| Employee Search Expense | 17,507.59 |
| Employment Service | 561.86 |
| Food Expenses | 19,062.92 |
| Fraud Expenses | 540.61 |
| Gift | 18,664.75 |
| Insurance Expense | |
| Life Insurance | 14,995.00 |
| Insurance Expense - Other | 45,019.60 |
| **Total Insurance Expense** | 60,014.60 |
| Interest Expense | 2,063.63 |
| lease improvement | 102,117.62 |
| Mail Fee | 5,869.59 |
| Marketing Expense | 217,112.58 |
| Meals and Entertainment | |
| Meetings | 109,946.23 |
| Meals and Entertainment - Other | 1,140.50 |
| **Total Meals and Entertainment** | 111,086.73 |

OHPLPG00072251

**B.A.T.**
## Profit & Loss by Month
### June 2020 through May 2021

7:05 PM

06/10/21

Accrual Basis

|  | TOTAL |
|---|---|
| Medical Insurance | 157,608.13 |
| Membership Fees | 1,647.64 |
| Misc. Expense | 19.37 |
| Office Equipment | 54,288.39 |
| Office Remodel | 0.00 |
| Office Supplies | 177,877.11 |
| Online Reputation Management | 2,500.00 |
| Outside Consulting | 605,185.67 |
| Outside Service | |
|    Office Cleaning | 28,453.86 |
|    Outside Service - Other | 1,270,571.82 |
| **Total Outside Service** | 1,299,025.68 |
| Parking | 30.00 |
| Payroll Expenses | |
|    Payroll Fees | 10,196.45 |
|    Payroll Taxes | 876,012.13 |
|    Payroll Expenses - Other | 2,461,995.00 |
| **Total Payroll Expenses** | 3,348,203.58 |
| Personal | 1,625.91 |
| Phone | 369,232.89 |
| Postage and Delivery | 329,456.06 |
| Printing Expense | 18,313.77 |
| Professional Fees | 176,488.00 |
| professional Software Serivce | 15,500.00 |
| Reconciliation Discrepancies | 0.00 |
| Referral | 3,000.00 |
| Rent Expense | 183,137.71 |
| Repairs and Maintenance | 12,984.96 |
| Service Charge Fees | 34,344.50 |
| Shipping and Delivery | 12,289.30 |
| Shredding | 3,558.00 |
| Soft Scape | 52,600.00 |
| Software | 492,106.85 |
| State Filing Expense | 5.00 |
| Tax Consulting | 3,715.00 |
| Taxes | 71,785.24 |
| Trash/Dump | 1,164.29 |
| Travel Expense | |
|    Travel - Hotel | 60,942.36 |
|    Travel Expense - Other | 50,634.02 |
| **Total Travel Expense** | 111,576.38 |
| Utilities | |
|    Fax | 7,503.27 |
|    Utilities - Other | 1,991.86 |
| **Total Utilities** | 9,495.13 |
| **Total Expense** | 43,184,902.13 |
| **Net Ordinary Income** | 6,570,685.59 |
| **Net Income** | **6,570,685.59** |

OHPLPG00072252

7:12 PM

06/10/21

Accrual Basis

**B.A.T.**

**Trial Balance**

**As of May 31, 2021**

| | May 31, 21 | |
| --- | --- | --- |
| | Debit | Credit |
| Cash Account | 14,489.00 | |
| Chase Bank 7885 | 3,300,000.00 | |
| City National Bank | 0.00 | |
| City National Sweep | 0.00 | |
| CNB | 0.00 | |
| CNB - Nevada | 0.00 | |
| Petty Cash- Asante, | 1,581.39 | |
| Petty Cash - Brooke | 2,105.25 | |
| Petty Cash - San Juan | 0.00 | |
| Union Bank 1804 | 21,499.21 | |
| Union Bank 4833 | | 65,944.99 |
| Accounts Receivable | 50,523.83 | |
| Accounts Receivable:Client Payments | 0.00 | |
| CP Customers Control | 1,963,821.93 | |
| Inventory Asset | 0.00 | |
| Personal Loan | 271,000.00 | |
| Undeposited Funds | 0.00 | |
| Accumulated Depreciation | | 160,904.09 |
| Call Center /Headsets | 5,817.90 | |
| Computer /Monitor | 216,678.70 | |
| Furniture and Equipment | 60,068.80 | |
| Leasehold Improvements | 10,148.96 | |
| Office Depot | 3,835.76 | |
| Pool Table / Arcade | 10,660.69 | |
| Printer | 10,610.89 | |
| Refrigerator | 654.93 | |
| Tenant Improvment | 277,782.50 | |
| Windows | 15,111.00 | |
| Account Payable - OTHER | | 245,627.02 |
| Accounts Payable -AFFILIATES | | 2,127,892.35 |
| AMEX Platinum | 0.00 | |
| Arsha Courp | 0.00 | |
| Credit Card Balance:AMEX Platinum | 0.00 | |
| Credit Card Balance:Chase Hyatt | 0.00 | |
| Credit Card Balance:Chase Southwest | 0.00 | |
| LPG Law Frim | | 424,143.07 |
| Refund | 0.00 | |
| Uncleared checks | | 2,053.76 |
| Loan - Petty Cash Reimb. | 0.00 | |
| LOAN DISB/AFS | | 294,860.00 |
| Loan Payback | | 1,819.85 |
| Payroll payable | | 31,448.82 |
| Payroll Tax payable | 238.58 | |
| Petty Cash Reimbursement | | 300.00 |
| Capital Stock | | 54,950.50 |
| Officer Distribution | 5,013,605.23 | |

Page 1

OHPLPG00072253

7:12 PM

06/10/21

Accrual Basis

**B.A.T.**
**Trial Balance**
As of May 31, 2021

|  | May 31, 21 | |
|---|---|---|
|  | Debit | Credit |
| Operating Control | 0.00 |  |
| Retained Earnings |  | 4,580,497.14 |
| Credit Card Credit Return |  | 643.58 |
| Discount |  | 3,000.00 |
| Other Income |  | 15,249.28 |
| Sales |  | 25,619,550.35 |
| Affiliates Reimbursement | 17,375,544.04 |  |
| Auditing Expenses | 14,980.00 |  |
| Automobile Expense | 6,662.58 |  |
| Automobile Expense:Gas | 3,614.27 |  |
| Automobile Expense:Mileage | 491.88 |  |
| Background Checks | 7,500.00 |  |
| Bank Open Items | 255.63 |  |
| Bank Service Charges | 1,905.60 |  |
| City License | 104.00 |  |
| commission | 35,676.80 |  |
| Compliance Fee | 100.00 |  |
| Computer & Internet Security | 55,215.81 |  |
| Computer& Internet Supply | 70,867.49 |  |
| Computer& Internet Supply:Website | 7,772.13 |  |
| Consultation | 427,448.33 |  |
| Covid 19 Test | 1,295.00 |  |
| Education | 2,150.99 |  |
| Electric | 13,063.46 |  |
| Employee Search Expense | 5,514.84 |  |
| Food Expenses | 10,222.37 |  |
| Fraud Expenses | 149.97 |  |
| Gift | 7,009.15 |  |
| Insurance Expense | 40,724.60 |  |
| Interest Expense | 1,530.01 |  |
| lease improvement | 102,117.62 |  |
| Mail Fee | 5,283.49 |  |
| Marketing Expense | 88,730.30 |  |
| Meals and Entertainment:Meetings | 51,870.81 |  |
| Medical Insurance | 75,940.35 |  |
| Membership Fees | 1,249.77 |  |
| Office Equipment | 5,912.87 |  |
| Office Supplies | 65,556.82 |  |
| Online Reputation Management | 2,500.00 |  |
| Outside Consulting | 185,939.00 |  |
| Outside Service | 648,349.08 |  |
| Outside Service:Office Cleaning | 14,547.86 |  |
| Parking | 30.00 |  |
| Payroll Expenses | 1,375,728.28 |  |
| Payroll Expenses:Payroll Fees | 7,967.87 |  |
| Payroll Expenses:Payroll Taxes | 532,498.11 |  |

OHPLPG00072254

**B.A.T.**
**Trial Balance**
As of May 31, 2021

|  | May 31, 21 | |
| --- | --- | --- |
|  | Debit | Credit |
| Personal | 337.29 | |
| Phone | 291,757.97 | |
| Postage and Delivery | 191,037.78 | |
| Printing Expense | 4,098.12 | |
| Professional Fees | 60,134.00 | |
| professional Software Serivce | 15,500.00 | |
| Reconciliation Discrepancies | 0.00 | |
| Rent Expense | 72,841.43 | |
| Repairs and Maintenance | 250.00 | |
| Service Charge Fees | 32,335.00 | |
| Shipping and Delivery | 4,160.53 | |
| Shredding | 1,528.00 | |
| Soft Scape | 52,600.00 | |
| Software | 270,314.73 | |
| Taxes | 66,840.00 | |
| Trash/Dump | 920.48 | |
| Travel Expense | 4,289.38 | |
| Travel Expense:Travel - Hotel | 51,230.48 | |
| Utilities | 1,430.00 | |
| Utilities:Fax | 3,023.90 | |
| **TOTAL** | **33,628,884.80** | **33,628,884.80** |

OHPLPG00072255

7:04 PM

06/10/21

Accrual Basis

**B.A.T.**

**Profit & Loss**

May 2021

|  | May 21 |
|---|---|
| **Ordinary Income/Expense** | |
| **Income** | |
| Credit Card Credit Return | 59.00 |
| Sales | 5,184,938.82 |
| **Total Income** | 5,184,997.82 |
| **Gross Profit** | 5,184,997.82 |
| **Expense** | |
| Affiliates Reimbursement | 4,153,136.36 |
| Auditing Expenses | 5,980.00 |
| **Automobile Expense** | |
| Gas | 640.08 |
| Mileage | 363.75 |
| Automobile Expense - Other | 1,351.40 |
| **Total Automobile Expense** | 2,355.23 |
| Bank Service Charges | 10.00 |
| City License | 100.00 |
| Computer & Internet Security | 18,083.16 |
| **Computer& Internet Supply** | |
| Website | 716.32 |
| Computer& Internet Supply - Other | 5,025.94 |
| **Total Computer& Internet Supply** | 5,742.26 |
| Consultation | 136,493.21 |
| Electric | 3,042.19 |
| Employee Search Expense | 650.69 |
| Food Expenses | 1,448.83 |
| Gift | 1,809.63 |
| Insurance Expense | 4,060.00 |
| Mail Fee | 2,427.81 |
| Marketing Expense | 59,668.68 |
| **Meals and Entertainment** | |
| Meetings | 4,946.11 |
| **Total Meals and Entertainment** | 4,946.11 |
| Medical Insurance | 17,917.53 |
| Membership Fees | 57.98 |
| Office Supplies | 1,614.57 |
| **Outside Service** | |
| Office Cleaning | 3,022.44 |
| Outside Service - Other | 124,756.94 |
| **Total Outside Service** | 127,779.38 |
| **Payroll Expenses** | |
| Payroll Fees | 1,598.67 |
| Payroll Taxes | 117,094.49 |
| Payroll Expenses - Other | 317,362.33 |
| **Total Payroll Expenses** | 436,055.49 |

Page 1

OHPLPG00072256

7:04 PM

06/10/21

Accrual Basis

## B.A.T.
## Profit & Loss
### May 2021

|  | May 21 |
|---|---:|
| Phone | 38,424.92 |
| Postage and Delivery | 24,151.23 |
| Printing Expense | 961.30 |
| Professional Fees | 19,864.00 |
| professional Software Serivce | 8,500.00 |
| Rent Expense | 14,618.28 |
| Service Charge Fees | 10,262.12 |
| Shipping and Delivery | 163.88 |
| Shredding | 320.00 |
| Software | 53,115.29 |
| Trash/Dump | 230.12 |
| Travel Expense |  |
|    Travel - Hotel | 13,455.37 |
| Total Travel Expense | 13,455.37 |
| Utilities |  |
|    Fax | 663.90 |
|    Utilities - Other | 40.00 |
| Total Utilities | 703.90 |
| Total Expense | 5,168,149.52 |
| Net Ordinary Income | 16,848.30 |
| Net Income | **16,848.30** |

OHPLPG00072257

**PLACEHOLDER**

**OHPLPG00072258-OHPLPG00072330 CAN BE PROVIDED IN NATIVE**

Message

| | |
|---|---|
| **From**: | Kevin Yu [kevin.yu93@gmail.com] |
| on behalf of | Kevin Yu <kevin.yu93@gmail.com> [kevin.yu93@gmail.com] |
| **Sent**: | 9/9/2021 12:21:22 AM |
| **To**: | Tony Diab [tony@coastprocessing.com] |
| **CC**: | Mario Azevedo [mario@azevedo.com]; Adam Blum [AdamBlum@aol.com] |
| **Subject**: | Re: Leveraged Buyout and JV Entity |

Hey all,

Can y'all please provide us with the buy-out agreement with Asante and the latest set of financials y'all have (unaudited is fine).

Thanks,


Kevin Yu
kevin.yu93@gmail.com
(512) 888-8897


On Tue, Aug 24, 2021 at 1:35 AM Tony Diab <tony@coastprocessing.com> wrote:
Hi Kevin -

My apologies for the delay, I had to confirm with all interested individuals. This structure works for us. I would ask if you could prepare the term sheet. I will send the draft promissory note in the morning.

Thanks,
Tony

On Thu, Aug 19, 2021 at 7:05 PM Kevin Yu <kevin.yu93@gmail.com> wrote:
Hey all,

Per Mario's request, here's a summary of the terms as we understand it from our side. This is also how we have the attached model working. Note that this is all high-level and I've highlighted only a few debt terms we'd expect to include as part of standard market terms. This is also contingent and subject to change upon our receipt and understanding of the buyout docs, but high level this is our understanding.

Loan:
- ~$5 million loan to LPG - 16% interest, current pay interest, principal paydown at LPG's discretion
- Expected ~150k - 250k in monthly payments (including interest) per month from LPG's cash flows

JV Entity:
- Nominal start-up cost invested in entity
- OHP will fund preferred equity (i.e. first money out) to purchase packages
- Common equity afterwards split 50% OHP and 50% LPG and co.
- Exception for first 20 months (or until loan is paid down) where monthly distributions of all excess cash (leaving a nominal 25-50k in the entity) will be made, at 50-50, to help LPG pay down the above loan
- After loan is paid down, cash is recycled within the JV until monthly cash receivables are greater than next months expected purchases, at which point distributions of cash in excess of expected purchases will be made first to pay down preferred equity, then distributed 50/50 to partners.

EXHIBIT 473

Other:
-Standard debt terms
-ROFR on all package buying, at cost - carveout for certain existing agreement (e.g. Brian's monthly purchase)
-Covenants surrounding package purchase price (<7.25%), default rate (<30%), etc.
-All asset lien on LPG (or something to this effect if this is explicitly disallowed)

Whenever you get a solid term sheet draft, let us know. Thanks.

Kevin Yu
kevin.yu93@gmail.com
(512) 888-8897


--
Coast Processing
1351 Calle Avanzado
Suite 2
San Clemente, CA 92673
949.229.6262, ext. 1013
tony@coastprocessing.com

Message

| | |
|---|---|
| **From**: | elijah@lpglaw.com.com [elijah@lpglaw.com.com] |
| **Sent**: | 9/2/2021 4:34:50 PM |
| **To**: | kevin.yu93@gmail.com |
| **Subject**: | New Note Created On File: ███████ SR - 494034888 |

Note Type: General
Entered By: ███████████
Notified: kevin.yu93@gmail.com, sharon.murray@nextstepfinancial.org, tabby.amare@nextstepfinancial.org

Cl called in returning missed phone call.

EXHIBIT 474

Message

| From: | Tony Diab [tony@coastprocessing.com] |
|---|---|
| on behalf of | Tony Diab <tony@coastprocessing.com> [tony@coastprocessing.com] |
| Sent: | 8/24/2021 6:34:41 AM |
| To: | Kevin Yu [kevin.yu93@gmail.com] |
| CC: | Mario Azevedo [mario@azevedo.com]; Adam Blum [AdamBlum@aol.com] |
| Subject: | Re: Leveraged Buyout and JV Entity |

Hi Kevin -

My apologies for the delay, I had to confirm with all interested individuals.  This structure works for us.  I would ask if you could prepare the term sheet.  I will send the draft promissory note in the morning.

Thanks,
Tony

On Thu, Aug 19, 2021 at 7:05 PM Kevin Yu <kevin.yu93@gmail.com> wrote:
  Hey all,

  Per Mario's request, here's a summary of the terms as we understand it from our side. This is also how we have the attached model working. Note that this is all high-level and I've highlighted only a few debt terms we'd expect to include as part of standard market terms. This is also contingent and subject to change upon our receipt and understanding of the buyout docs, but high level this is our understanding.

  Loan:
  - ~$5 million loan to LPG - 16% interest, current pay interest, principal paydown at LPG's discretion
  - Expected ~150k - 250k in monthly payments (including interest) per month from LPG's cash flows

  JV Entity:
  - Nominal start-up cost invested in entity
  - OHP will fund preferred equity (i.e. first money out) to purchase packages
  - Common equity afterwards split 50% OHP and 50% LPG and co.
  - Exception for first 20 months (or until loan is paid down) where monthly distributions of all excess cash (leaving a nominal 25-50k in the entity) will be made, at 50-50, to help LPG pay down the above loan
  -After loan is paid down, cash is recycled within the JV until monthly cash receivables are greater than next months expected purchases, at which point distributions of cash in excess of expected purchases will be made first to pay down preferred equity, then distributed 50/50 to partners.

  Other:
  -Standard debt terms
  -ROFR on all package buying, at cost - carveout for certain existing agreement (e.g. Brian's monthly purchase)
  -Covenants surrounding package purchase price (<7.25%), default rate (<30%), etc.
  -All asset lien on LPG (or something to this effect if this is explicitly disallowed)

  Whenever you get a solid term sheet draft, let us know. Thanks.

  Kevin Yu
  kevin.yu93@gmail.com
  (512) 888-8897

EXHIBIT 475

OHPLPG00072334

--
Coast Processing
1351 Calle Avanzado
Suite 2
San Clemente, CA 92673
949.229.6262, ext. 1013
tony@coastprocessing.com

OHPLPG00072335

Message

| | |
|---|---|
| **From**: | Kevin Yu [kevin.yu93@gmail.com] |
| on behalf of | Kevin Yu <kevin.yu93@gmail.com> [kevin.yu93@gmail.com] |
| **Sent**: | 8/20/2021 2:05:26 AM |
| **To**: | Mario Azevedo [mario@azevedo.com]; Tony Diab [tony@coastprocessing.com] |
| **CC**: | Adam Blum [AdamBlum@aol.com] |
| **Subject**: | Leveraged Buyout and JV Entity |
| **Attachments**: | Coast - OHP JV model 8-18.xlsx |

Hey all,

Per Mario's request, here's a summary of the terms as we understand it from our side. This is also how we have the attached model working. Note that this is all high-level and I've highlighted only a few debt terms we'd expect to include as part of standard market terms. This is also contingent and subject to change upon our receipt and understanding of the buyout docs, but high level this is our understanding.

Loan:
- ~$5 million loan to LPG - 16% interest, current pay interest, principal paydown at LPG's discretion
- Expected ~150k - 250k in monthly payments (including interest) per month from LPG's cash flows

JV Entity:
- Nominal start-up cost invested in entity
- OHP will fund preferred equity (i.e. first money out) to purchase packages
- Common equity afterwards split 50% OHP and 50% LPG and co.
- Exception for first 20 months (or until loan is paid down) where monthly distributions of all excess cash (leaving a nominal 25-50k in the entity) will be made, at 50-50, to help LPG pay down the above loan
- After loan is paid down, cash is recycled within the JV until monthly cash receivables are greater than next months expected purchases, at which point distributions of cash in excess of expected purchases will be made first to pay down preferred equity, then distributed 50/50 to partners.

Other:
- Standard debt terms
- ROFR on all package buying, at cost - carveout for certain existing agreement (e.g. Brian's monthly purchase)
- Covenants surrounding package purchase price (<7.25%), default rate (<30%), etc.
- All asset lien on LPG (or something to this effect if this is explicitly disallowed)

Whenever you get a solid term sheet draft, let us know. Thanks.

Kevin Yu
kevin.yu93@gmail.com
(512) 888-8897

EXHIBIT 476

OHPLPG00072336

**PLACEHOLDER**

**OHPLPG00072337-OHPLPG00072660 CAN BE PROVIDED IN NATIVE**

Message

| | |
|---|---|
| **From**: | Tony Diab [tony@coastprocessing.com] |
| **on behalf of** | Tony Diab <tony@coastprocessing.com> [tony@coastprocessing.com] |
| **Sent**: | 8/5/2021 6:17:01 AM |
| **To**: | Kevin Yu [kevin.yu93@gmail.com] |
| **CC**: | Brian [brian@freedomea.com] |
| **Subject**: | Re: Model |

Thanks Kevin, this framework looks good from our perspective, do you want me to draft an agreement or did you want to take the first stab at it?

Also, what period of time do you anticipate the due diligence process will take?

Thanks,
Tony

On Wed, Aug 4, 2021 at 3:22 PM Kevin Yu <kevin.yu93@gmail.com> wrote:
> Hey all,
>
> See attached. Assuming 150 purchasable files/220k in files per month (LPG pays for 150k worth and we fund the rest), growing at about 4% per month (increases steadily to about 400k/month after 1 year) we're projecting a 20 month payback, after monthly distributions of all excess cash. With more availability that number and the associated interest expense would decrease.
>
> Let me know if y'all want to set up a time to talk through this further, or have any comments or suggestions on the assumptions I've made here.
>
>
>
> Kevin Yu
> kevin.yu93@gmail.com
> (512) 888-8897

--
Coast Processing
1351 Calle Avanzado
Suite 2
San Clemente, CA 92673
949.229.6262, ext. 1013
tony@coastprocessing.com

EXHIBIT 477

Message

| **From**: | Kevin Yu [kevin.yu93@gmail.com] |
|---|---|
| on behalf of | Kevin Yu <kevin.yu93@gmail.com> [kevin.yu93@gmail.com] |
| **Sent**: | 8/4/2021 10:22:00 PM |
| **To**: | Brian [brian@freedomea.com]; Tony Diab [tony@coastprocessing.com] |
| **Subject**: | Model |
| **Attachments**: | Coast - OHP JV model 8-4.xlsx |

Hey all,

See attached. Assuming 150 purchasable files/220k in files per month (LPG pays for 150k worth and we fund the rest), growing at about 4% per month (increases steadily to about 400k/month after 1 year) we're projecting a 20 month payback, after monthly distributions of all excess cash. With more availability that number and the associated interest expense would decrease.

Let me know if y'all want to set up a time to talk through this further, or have any comments or suggestions on the assumptions I've made here.


Kevin Yu
kevin.yu93@gmail.com
(512) 888-8897

EXHIBIT 478

OHPLPG00072662

**PLACEHOLDER**

**OHPLPG00072663-OHPLPG00072990 CAN BE PROVIDED IN NATIVE**

Message

| | |
|---|---|
| **From**: | Kevin Yu [kevin.yu93@gmail.com] |
| on behalf of | Kevin Yu <kevin.yu93@gmail.com> [kevin.yu93@gmail.com] |
| **Sent**: | 7/26/2021 8:55:38 AM |
| **To**: | Tony Diab [tony@coastprocessing.com] |
| **CC**: | Kevin Yu [kevin.yu@oldhickorypartners.com] |
| **Subject**: | Re: Revised Term Sheet |

Sounds good. Yes, I can hop on a call tomorrow afternoon. My calendar is pretty clear so let me know what times work best for you.

Kevin Yu
kevin.yu93@gmail.com
(512) 888-8897

On Sun, Jul 25, 2021 at 11:14 PM Tony Diab <tony@coastprocessing.com> wrote:
Hi Kevin -

The share purchase agreement was confidential, I will have to obtain a release to be able to share it.  I will work on that tomorrow.

Are you available for a call tomorrow afternoon?  Just a quit call to discuss all of the options so we are all on the same page.

Thanks,
Tony

On Thu, Jul 22, 2021 at 2:18 PM Kevin Yu <kevin.yu93@gmail.com> wrote:
Yes, apologies, will try to have something to you tomorrow. Do you have buyout docs we can review simultaneously?

Kevin Yu
kevin.yu93@gmail.com
(512) 888-8897

On Wed, Jul 21, 2021 at 8:32 PM Tony Diab <tony@coastprocessing.com> wrote:
Hi Kevin -

Can you forward a term sheet for review?  I understand that Brian shared with you that only Litigation Practice Group PC remains, and the relevant percentage would be 50% instead of 30%.  Please forward and I will review with Brian and Mario and respond.

Thanks,
Tony

--
Coast Processing

EXHIBIT 479

1351 Calle Avanzado
Suite 2
San Clemente, CA 92673
949.229.6262, ext. 1013
tony@coastprocessing.com

--
Coast Processing
1351 Calle Avanzado
Suite 2
San Clemente, CA 92673
949.229.6262, ext. 1013
tony@coastprocessing.com

Message

| | |
|---|---|
| **From**: | Tony Diab [tony@coastprocessing.com] |
| on behalf of | Tony Diab <tony@coastprocessing.com> [tony@coastprocessing.com] |
| **Sent**: | 7/26/2021 4:13:23 AM |
| **To**: | Kevin Yu [kevin.yu93@gmail.com] |
| **CC**: | Kevin Yu [kevin.yu@oldhickorypartners.com] |
| **Subject**: | Re: Revised Term Sheet |

Hi Kevin -

The share purchase agreement was confidential, I will have to obtain a release to be able to share it.  I will work on that tomorrow.

Are you available for a call tomorrow afternoon?  Just a quit call to discuss all of the options so we are all on the same page.

Thanks,
Tony

On Thu, Jul 22, 2021 at 2:18 PM Kevin Yu <kevin.yu93@gmail.com> wrote:
> Yes, apologies, will try to have something to you tomorrow. Do you have buyout docs we can review simultaneously?
>
> Kevin Yu
> kevin.yu93@gmail.com
> (512) 888-8897
>
>
> On Wed, Jul 21, 2021 at 8:32 PM Tony Diab <tony@coastprocessing.com> wrote:
>> Hi Kevin -
>>
>> Can you forward a term sheet for review?  I understand that Brian shared with you that only Litigation Practice Group PC remains, and the relevant percentage would be 50% instead of 30%.  Please forward and I will review with Brian and Mario and respond.
>>
>> Thanks,
>> Tony
>>
>>
>> --
>> Coast Processing
>> 1351 Calle Avanzado
>> Suite 2
>> San Clemente, CA 92673
>> 949.229.6262, ext. 1013
>> tony@coastprocessing.com

--

EXHIBIT 480

OHPLPG00072993

Coast Processing
1351 Calle Avanzado
Suite 2
San Clemente, CA 92673
949.229.6262, ext. 1013
tony@coastprocessing.com

OHPLPG00072994

Message

| | |
|---|---|
| **From**: | Kevin Yu [kevin.yu93@gmail.com] |
| on behalf of | Kevin Yu <kevin.yu93@gmail.com> [kevin.yu93@gmail.com] |
| **Sent**: | 7/22/2021 9:18:34 PM |
| **To**: | Tony Diab [tony@coastprocessing.com] |
| **CC**: | Kevin Yu [kevin.yu@oldhickorypartners.com] |
| **Subject**: | Re: Revised Term Sheet |

Yes, apologies, will try to have something to you tomorrow. Do you have buyout docs we can review simultaneously?

Kevin Yu
kevin.yu93@gmail.com
(512) 888-8897


On Wed, Jul 21, 2021 at 8:32 PM Tony Diab <tony@coastprocessing.com> wrote:
Hi Kevin -

Can you forward a term sheet for review?  I understand that Brian shared with you that only Litigation Practice Group PC remains, and the relevant percentage would be 50% instead of 30%.  Please forward and I will review with Brian and Mario and respond.

Thanks,
Tony


--
Coast Processing
1351 Calle Avanzado
Suite 2
San Clemente, CA 92673
949.229.6262, ext. 1013
tony@coastprocessing.com

EXHIBIT 481

Message

| | |
|---|---|
| **From**: | Tony Diab [tony@coastprocessing.com] |
| on behalf of | Tony Diab <tony@coastprocessing.com> [tony@coastprocessing.com] |
| **Sent**: | 7/22/2021 1:31:28 AM |
| **To**: | Kevin Yu [kevin.yu@oldhickorypartners.com]; Kevin Yu [kevin.yu93@gmail.com] |
| **Subject**: | Revised Term Sheet |

Hi Kevin -

Can you forward a term sheet for review?  I understand that Brian shared with you that only Litigation Practice Group PC remains, and the relevant percentage would be 50% instead of 30%.  Please forward and I will review with Brian and Mario and respond.

Thanks,
Tony


--
Coast Processing
1351 Calle Avanzado
Suite 2
San Clemente, CA 92673
949.229.6262, ext. 1013
tony@coastprocessing.com

EXHIBIT 482

OHPLPG00072996

Message

**From**: Kevin Yu [kevin.yu93@gmail.com]
on behalf of   Kevin Yu <kevin.yu93@gmail.com> [kevin.yu93@gmail.com]
**Sent**: 5/27/2021 11:09:21 PM
**To**: Asante Bayrooti [asante@coastprocessing.com]
**Subject**: Re: Check-in

Hey Asante,

Thanks for catching up quickly yesterday, look forward to hearing more. In the meantime, I'm trying to build Coast's actual growth in 2020 into our projections model. Would it be possible to get y'all's "affiliates reimbursement" numbers by month?

Thanks,


Kevin Yu
kevin.yu93@gmail.com
(512) 888-8897


On Wed, May 26, 2021 at 7:48 PM Asante Bayrooti <asante@coastprocessing.com> wrote:
  Call me

  Asante Bayrooti
  949-355-9514



  On May 26, 2021, at 3:23 PM, Kevin Yu <kevin.yu93@gmail.com> wrote:


  Hi all,

  Wanted to touch base and check in and see how things were going. Do y'all feel Coast is at a place to resume discussions on our deal? I caught up with Scott and the audit team and was impressed by the growth of the company in the past year. We continue to think this additional revenue stream will be a massive win-win for all parties and are excited to get this deal over the finish line.

  Thanks,


  Kevin Yu
  kevin.yu93@gmail.com
  (512) 888-8897

EXHIBIT 483

Message

| | |
|---|---|
| **From**: | Kevin Yu [kevin.yu93@gmail.com] |
| on behalf of | Kevin Yu <kevin.yu93@gmail.com> [kevin.yu93@gmail.com] |
| **Sent**: | 5/27/2021 10:58:25 PM |
| **To**: | Mario Azevedo [Mario@azevedo.com] |
| **Subject**: | Re: Check-in |

Asante called me yesterday saying something similar. Looking forward to reconnecting and hearing all about it.
Thanks,


Kevin Yu
kevin.yu93@gmail.com
(512) 888-8897


On Thu, May 27, 2021 at 5:25 PM Mario Azevedo <Mario@azevedo.com> wrote:

Hi Kevin,


We should have things ironed out in about 2 weeks when we can disclose what we are up to.

I can tell you it is a good thing for us, client base, etc.

Lets connect after you speak to Asanti about it.


Mario


**From:** Kevin Yu [mailto:kevin.yu93@gmail.com]
**Sent:** Wednesday, May 26, 2021 3:23 PM
**To:** Asante Bayrooti; Brian; Mario Azevedo; Adam Blum
**Subject:** Check-in


Hi all,


Wanted to touch base and check in and see how things were going. Do y'all feel Coast is at a place to resume discussions on our deal? I caught up with Scott and the audit team and was impressed by the growth of the company in the past year. We continue to think this additional revenue stream will be a massive win-win for all parties and are excited to get this deal over the finish line.


Thanks,


Kevin Yu
kevin.yu93@gmail.com
(512) 888-8897


EXHIBIT 484

OHPLPG00072998

Message

---

**From**:            Mario Azevedo [Mario@Azevedo.com]
on behalf of      Mario Azevedo <Mario@Azevedo.com> [Mario@Azevedo.com]
**Sent**:             5/27/2021 10:25:48 PM
**To**:               'Kevin Yu' [kevin.yu93@gmail.com]
**Subject**:       RE: Check-in

Hi Kevin,

We should have things ironed out in about 2 weeks when we can disclose what we are up to.
I can tell you it is a good thing for us, client base, etc.
Lets connect after you speak to Asanti about it.

Mario

---

**From:** Kevin Yu [mailto:kevin.yu93@gmail.com]
**Sent:** Wednesday, May 26, 2021 3:23 PM
**To:** Asante Bayrooti; Brian; Mario Azevedo; Adam Blum
**Subject:** Check-in

Hi all,

Wanted to touch base and check in and see how things were going. Do y'all feel Coast is at a place to resume discussions on our deal? I caught up with Scott and the audit team and was impressed by the growth of the company in the past year. We continue to think this additional revenue stream will be a massive win-win for all parties and are excited to get this deal over the finish line.

Thanks,


Kevin Yu
kevin.yu93@gmail.com
(512) 888-8897

EXHIBIT 485

OHPLPG00072999

Message

| | |
|---|---|
| **From**: | Asante Bayrooti [asante@coastprocessing.com] |
| on behalf of | Asante Bayrooti <asante@coastprocessing.com> [asante@coastprocessing.com] |
| **Sent**: | 5/27/2021 12:48:15 AM |
| **To**: | Kevin Yu [kevin.yu93@gmail.com] |
| **Subject**: | Re: Check-in |

Call me

Asante Bayrooti
949-355-9514


On May 26, 2021, at 3:23 PM, Kevin Yu <kevin.yu93@gmail.com> wrote:


Hi all,

Wanted to touch base and check in and see how things were going. Do y'all feel Coast is at a place to resume discussions on our deal? I caught up with Scott and the audit team and was impressed by the growth of the company in the past year. We continue to think this additional revenue stream will be a massive win-win for all parties and are excited to get this deal over the finish line.

Thanks,


Kevin Yu
kevin.yu93@gmail.com
(512) 888-8897

EXHIBIT 486

OHPLPG00073000

Message

| | |
|---|---|
| **From**: | Kevin Yu [kevin.yu93@gmail.com] |
| on behalf of | Kevin Yu <kevin.yu93@gmail.com> [kevin.yu93@gmail.com] |
| **Sent**: | 5/26/2021 10:23:24 PM |
| **To**: | Asante Bayrooti [asante@coastprocessing.com]; Brian [brian@freedomea.com]; Mario Azevedo [mario@azevedo.com]; Adam Blum [AdamBlum@aol.com] |
| **Subject**: | Check-in |

Hi all,

Wanted to touch base and check in and see how things were going. Do y'all feel Coast is at a place to resume discussions on our deal? I caught up with Scott and the audit team and was impressed by the growth of the company in the past year. We continue to think this additional revenue stream will be a massive win-win for all parties and are excited to get this deal over the finish line.

Thanks,


Kevin Yu
kevin.yu93@gmail.com
(512) 888-8897

EXHIBIT 487

OHPLPG00073001

Message

**From**:        Kevin Yu [kevin.yu93@gmail.com]
on behalf of    Kevin Yu <kevin.yu93@gmail.com> [kevin.yu93@gmail.com]
**Sent**:        4/30/2021 7:20:46 PM
**To**:          Scott K. Bivens [sbivens@ks-llp.com]
**CC**:          Asante Bayrooti [asante@coastprocessing.com]
**Subject**:     Re: BAT Coast Processing

Yea either or is fine. Just let me know when y'all are finished and we can organize. I'm flexible.

Kevin Yu
kevin.yu93@gmail.com
(512) 888-8897

On Fri, Apr 30, 2021 at 12:17 PM Scott K. Bivens <sbivens@ks-llp.com> wrote:

Hi Kevin, we should have our audit work papers completed by early next week. It seems like you may be out in Texas so we can probably work it out so that you can review our audit file remotely or we can e-mail you copies of what you request. When would you want to review the file?

**Scott K. Bivens**

Audit Partner

Phone: (949) 270-7782

Address: 6201 Oak Canyon Drive

Suite 200, Irvine CA 92618

Email:  sbivens@ks-llp.com



**From:** Kevin Yu <kevin.yu93@gmail.com>
**Sent:** Tuesday, April 27, 2021 7:45 PM
**To:** Scott K. Bivens <sbivens@ks-llp.com>
**Cc:** Asante Bayrooti <asante@coastprocessing.com>
**Subject:** Re: BAT Coast Processing

**[EXTERNAL]**

Hi Scott,

See attached. Let me know if you need anything else. Thanks!

Kevin Yu
kevin.yu93@gmail.com

EXHIBIT 488

(512) 888-8897


On Tue, Apr 27, 2021 at 8:03 PM Scott K. Bivens <sbivens@ks-llp.com> wrote:

 Kevin, let me know if you have any questions. Please sign and return to me.


**Scott K. Bivens**

Audit Partner

Phone: (949) 270-7782

Address: 6201 Oak Canyon Drive

             Suite 200, Irvine CA 92618

Email:  sbivens@ks-llp.com



OHPLPG00073003

Message

---

| | |
|---|---|
| **From**: | Scott K. Bivens [sbivens@ks-llp.com] |
| on behalf of | Scott K. Bivens <sbivens@ks-llp.com> [sbivens@ks-llp.com] |
| **Sent**: | 4/30/2021 5:17:19 PM |
| **To**: | Kevin Yu [kevin.yu93@gmail.com] |
| **CC**: | Asante Bayrooti [asante@coastprocessing.com] |
| **Subject**: | RE: BAT Coast Processing |

Hi Kevin, we should have our audit work papers completed by early next week. It seems like you may be out in Texas so we can probably work it out so that you can review our audit file remotely or we can e-mail you copies of what you request. When would you want to review the file?

**Scott K. Bivens**
Audit Partner
Phone: (949) 270-7782
Address: 6201 Oak Canyon Drive
            Suite 200, Irvine CA 92618
Email:  sbivens@ks-llp.com



---

**From:** Kevin Yu <kevin.yu93@gmail.com>
**Sent:** Tuesday, April 27, 2021 7:45 PM
**To:** Scott K. Bivens <sbivens@ks-llp.com>
**Cc:** Asante Bayrooti <asante@coastprocessing.com>
**Subject:** Re: BAT Coast Processing

**[EXTERNAL]**

Hi Scott,

See attached. Let me know if you need anything else. Thanks!

Kevin Yu
kevin.yu93@gmail.com
(512) 888-8897

On Tue, Apr 27, 2021 at 8:03 PM Scott K. Bivens <sbivens@ks-llp.com> wrote:

Kevin, let me know if you have any questions. Please sign and return to me.

**Scott K. Bivens**
Audit Partner
Phone: (949) 270-7782
Address: 6201 Oak Canyon Drive
            Suite 200, Irvine CA 92618
Email:  sbivens@ks-llp.com



EXHIBIT 489

OHPLPG00073005

Message

| | |
|---|---|
| **From**: | Kevin Yu [kevin.yu93@gmail.com] |
| on behalf of | Kevin Yu <kevin.yu93@gmail.com> [kevin.yu93@gmail.com] |
| **Sent**: | 4/28/2021 2:44:54 AM |
| **To**: | Scott K. Bivens [sbivens@ks-llp.com] |
| **CC**: | Asante Bayrooti [asante@coastprocessing.com] |
| **Subject**: | Re: BAT Coast Processing |
| **Attachments**: | 3rd Party Acknowledgement Letter for BAT Inc_executed.pdf |

Hi Scott,

See attached. Let me know if you need anything else. Thanks!


Kevin Yu
kevin.yu93@gmail.com
(512) 888-8897


On Tue, Apr 27, 2021 at 8:03 PM Scott K. Bivens <sbivens@ks-llp.com> wrote:

Kevin, let me know if you have any questions. Please sign and return to me.


**Scott K. Bivens**

Audit Partner

Phone: (949) 270-7782

Address: 6201 Oak Canyon Drive

 Suite 200, Irvine CA 92618

Email:  sbivens@ks-llp.com



EXHIBIT 490

**Kieckhafer
Schiffer LLP**

April 27, 2021

Old Hickory
Partners LP
303 Colorado
Suite 2550
Austin, TX 78701
Attn: Kevin Yu

Dear Mr. Yu:

We have previously audited, in accordance with auditing standards generally accepted in the United States of America, the December 31, 2020 financial statements of B.A.T. Inc. dba Coast Processing. We rendered a report on those financial statements and have not performed any audit procedures subsequent to the audit report date. In connection with this due diligence for your client, you have requested access to our audit documentation prepared in connection with that audit. B.A.T. Inc.'s management has authorized our firm to allow you to review that audit documentation.

Our audit, and the audit documentation prepared in connection therewith, of B.A.T. Inc.'s financial statements was not planned or conducted in contemplation of your review. Therefore, items of possible interest to you may not have been specifically addressed. Our use of professional judgment and the assessment of audit risk and materiality for the purpose of our audit mean that matters may have existed that would have been assessed differently by you. We make no representation as to the sufficiency or appropriateness of the information in our audit documentation for your purposes.

We understand that the purpose of your review is to obtain information about B.A.T. Inc. and our December 31, 2020 audit results to assist you with your company's due diligence. For that purpose only, we will provide you access to our audit documentation that relates to that objective.

Upon request, we will provide copies of audit documentation that provides factual information about B.A.T. Inc. You agree to subject any such copies or information otherwise derived from our audit documentation to your normal policy for retention of documentation and protection of confidential entity information. Furthermore, in the event of a third-party request for access to your documentation prepared in connection with decisions of B.A.T. Inc., you agree to obtain our permission before voluntarily allowing any such access to our audit documentation or information otherwise derived from our audit documentation, and to obtain on our behalf any releases that you obtain from such third party. You agree to advise us promptly and provide us a copy of any subpoena, summons, or other court order for access to your documentation that includes copies of our audit documentation or information otherwise derived therefrom.

Please confirm your agreement with the foregoing by signing and dating a copy of this letter and returning it to us.

Sincerely,

*Scott Bivens*

Kieckhafer Schiffer LLP
By:        Scott Bivens, Audit Partner


Accepted:        Old Hickory Partners LP

By: _____        Date:  4/27/21


Kieckhafer Schiffer LLP, Certified Public Accountants
6201 Oak Canyon, Suite 200, Irvine, CA 92618

OHPLPG00073007

Message

---

**From**:          Scott K. Bivens [sbivens@ks-llp.com]
on behalf of     Scott K. Bivens <sbivens@ks-llp.com> [sbivens@ks-llp.com]
**Sent**:          4/28/2021 1:03:30 AM
**To**:            Kevin Yu [kevin.yu93@gmail.com]
**CC**:            Asante Bayrooti [asante@coastprocessing.com]
**Subject**:       BAT Coast Processing
**Attachments**:   3rd Party Acknowledgement Letter for BAT Inc_.pdf

Kevin, let me know if you have any questions. Please sign and return to me.

**Scott K. Bivens**
Audit Partner
Phone: (949) 270-7782
Address: 6201 Oak Canyon Drive
          Suite 200, Irvine CA 92618
Email:  sbivens@ks-llp.com



EXHIBIT 491

OHPLPG00073008

April 27, 2021

Old Hickory
Partners LP
303 Colorado
Suite 2550
Austin, TX 78701
Attn: Kevin Yu

Dear Mr. Yu:

We have previously audited, in accordance with auditing standards generally accepted in the United States of America, the December 31, 2020 financial statements of B.A.T. Inc. dba Coast Processing. We rendered a report on those financial statements and have not performed any audit procedures subsequent to the audit report date. In connection with this due diligence for your client, you have requested access to our audit documentation prepared in connection with that audit. B.A.T. Inc.'s management has authorized our firm to allow you to review that audit documentation.

Our audit, and the audit documentation prepared in connection therewith, of B.A.T. Inc.'s financial statements was not planned or conducted in contemplation of your review. Therefore, items of possible interest to you may not have been specifically addressed. Our use of professional judgment and the assessment of audit risk and materiality for the purpose of our audit mean that matters may have existed that would have been assessed differently by you. We make no representation as to the sufficiency or appropriateness of the information in our audit documentation for your purposes.

We understand that the purpose of your review is to obtain information about B.A.T. Inc. and our December 31, 2020 audit results to assist you with your company's due diligence. For that purpose only, we will provide you access to our audit documentation that relates to that objective.

Upon request, we will provide copies of audit documentation that provides factual information about B.A.T. Inc. You agree to subject any such copies or information otherwise derived from our audit documentation to your normal policy for retention of documentation and protection of confidential entity information. Furthermore, in the event of a third-party request for access to your documentation prepared in connection with decisions of B.A.T. Inc., you agree to obtain our permission before voluntarily allowing any such access to our audit documentation or information otherwise derived from our audit documentation, and to obtain on our behalf any releases that you obtain from such third party. You agree to advise us promptly and provide us a copy of any subpoena, summons, or other court order for access to your documentation that includes copies of our audit documentation or information otherwise derived therefrom.

Please confirm your agreement with the foregoing by signing and dating a copy of this letter and returning it to us.

Sincerely,

*Scott Bivens*

Kieckhafer Schiffer LLP
  By:          Scott Bivens, Audit Partner


  Accepted:     Old Hickory Partners LP


  By:      _____        Date:

OHPLPG00073009

Message

| | |
|---|---|
| **From**: | Asante Bayrooti [asante@coastprocessing.com] |
| **on behalf of** | Asante Bayrooti <asante@coastprocessing.com> [asante@coastprocessing.com] |
| **Sent**: | 4/16/2021 9:41:47 AM |
| **To**: | Kevin Yu [kevin.yu93@gmail.com] |
| **CC**: | Adam Blum [adamblum@aol.com] |
| **Subject**: | Re: Financial Statement Discussion |

Call me in the morning please

Asante Bayrooti
949-355-9514


On Apr 15, 2021, at 7:45 PM, Kevin Yu <kevin.yu93@gmail.com> wrote:


I did, but I never heard back from you on a good time so I assumed you were too busy or something and I figured we'd push to tomorrow or next week. I can chat now if you're free.


Kevin Yu
kevin.yu93@gmail.com
(512) 888-8897


On Thu, Apr 15, 2021 at 9:42 PM Asante Bayrooti <asante@coastprocessing.com> wrote:
You said today

Asante Bayrooti
949-355-9514


On Apr 15, 2021, at 1:27 PM, Kevin Yu <kevin.yu93@gmail.com> wrote:


Hey Asante,

Hope you're feeling well. I'm free after 12:30 PT tomorrow, and pretty open early next week, if you want to connect then.

Thanks,


Kevin Yu
kevin.yu93@gmail.com
(512) 888-8897


On Wed, Apr 14, 2021 at 11:38 AM Kevin Yu <kevin.yu93@gmail.com> wrote:


EXHIBIT 492

OHPLPG00073010

Hey Asante,

I've outlined some questions below. Can we plan to hop on a quick call tomorrow afternoon? What times work best for you?

Is costs of services primarily payments to front ends? Is there any package purchasing done at the company level or is this all 65% cash flow stream breakout?

What comprises G+A expenses? Are Related Party expenses included in this?

Where are LPG expenses or are they taken out pre revenue?

Footnote 1.n. – Subsequent Events and FN 4 PPP Loan: Is there an updated version with more Sub Events?  When will PPP forgiveness and resulting revenue (January 2021) be recognized as revenue, considering forgiveness was approved in Jan 2021?

Can we walk through each of these accounts at a high level at what they are primarily composed of and see workpapers testing the following FSLIs/Footnotes. If you want to connect me with the auditor over email, I can organize.

Accounts Receivable
Accounts Payable
Revenues
Costs of Services
General and administrative Expenses
Related Party Receivables
Related Party Transactions/Balances

Thanks,

Kevin Yu
kevin.yu93@gmail.com
(512) 888-8897

On Tue, Apr 13, 2021 at 11:33 AM Kevin Yu <kevin.yu93@gmail.com> wrote:
 Sounds good. How does your Thursday look?

 Kevin Yu
 kevin.yu93@gmail.com
 (512) 888-8897

On Wed, Apr 7, 2021 at 11:48 PM Asante Bayrooti <asante@coastprocessing.com> wrote:
 Next week some time

 Asante Bayrooti

OHPLPG00073011

949-355-9514

On Apr 7, 2021, at 12:43 PM, Kevin Yu <kevin.yu93@gmail.com> wrote:

Great, are there some dates and times that work well for you?

Kevin Yu
kevin.yu93@gmail.com
(512) 888-8897

On Tue, Apr 6, 2021 at 10:59 PM Asante Bayrooti <asante@coastprocessing.com> wrote:
No issues
You can meet with me and the accounting team

Asante Bayrooti
949-355-9514

On Apr 6, 2021, at 3:14 PM, Kevin Yu <kevin.yu93@gmail.com> wrote:

Hey all,

Great to catch up the other day. We understand y'all wanting a few months to circle the wagons, but wanted to continue to do our due diligence in the meantime so we're ready to move when y'all are. In that spirit, we reviewed the financial statements y'all provided and had a couple questions.

Can we set up a time (I'm thinking with someone from y'all's internal accounting like Mustafa) to discuss with a little more granularity what comprised some of these larger FSLI's like Accounts Payable, Costs of Services, G+A Expense, etc. We'd like to have a better understanding of where things like front-end payments, LPG's costs, package selling, etc. are reflected in the financial statements. Can we also get access to the auditor's workpapers?

Thanks,

Kevin Yu
kevin.yu93@gmail.com
(512) 888-8897

OHPLPG00073012

Message

| | |
|---|---|
| **From**: | Kevin Yu [kevin.yu93@gmail.com] |
| on behalf of | Kevin Yu <kevin.yu93@gmail.com> [kevin.yu93@gmail.com] |
| **Sent**: | 4/16/2021 2:45:33 AM |
| **To**: | Asante Bayrooti [asante@coastprocessing.com] |
| **CC**: | Adam Blum [adamblum@aol.com] |
| **Subject**: | Re: Financial Statement Discussion |

I did, but I never heard back from you on a good time so I assumed you were too busy or something and I figured we'd push to tomorrow or next week. I can chat now if you're free.

Kevin Yu
kevin.yu93@gmail.com
(512) 888-8897

On Thu, Apr 15, 2021 at 9:42 PM Asante Bayrooti <asante@coastprocessing.com> wrote:
You said today

Asante Bayrooti
949-355-9514

On Apr 15, 2021, at 1:27 PM, Kevin Yu <kevin.yu93@gmail.com> wrote:

Hey Asante,

Hope you're feeling well. I'm free after 12:30 PT tomorrow, and pretty open early next week, if you want to connect then.

Thanks,

Kevin Yu
kevin.yu93@gmail.com
(512) 888-8897

On Wed, Apr 14, 2021 at 11:38 AM Kevin Yu <kevin.yu93@gmail.com> wrote:
Hey Asante,

I've outlined some questions below. Can we plan to hop on a quick call tomorrow afternoon? What times work best for you?

Is costs of services primarily payments to front ends? Is there any package purchasing done at the company level or is this all 65% cash flow stream breakout?

What comprises G+A expenses? Are Related Party expenses included in this?

EXHIBIT 493

OHPLPG00073013

Where are LPG expenses or are they taken out pre revenue?

Footnote 1.n. – Subsequent Events and FN 4 PPP Loan: Is there an updated version with more Sub Events?  When will PPP forgiveness and resulting revenue (January 2021) be recognized as revenue, considering forgiveness was approved in Jan 2021?

Can we walk through each of these accounts at a high level at what they are primarily composed of and see workpapers testing the following FSLIs/Footnotes. If you want to connect me with the auditor over email, I can organize.

Accounts Receivable
Accounts Payable
Revenues
Costs of Services
General and administrative Expenses
Related Party Receivables
Related Party Transactions/Balances

Thanks,

Kevin Yu
kevin.yu93@gmail.com
(512) 888-8897

On Tue, Apr 13, 2021 at 11:33 AM Kevin Yu <kevin.yu93@gmail.com> wrote:
 Sounds good. How does your Thursday look?

 Kevin Yu
 kevin.yu93@gmail.com
 (512) 888-8897

On Wed, Apr 7, 2021 at 11:48 PM Asante Bayrooti <asante@coastprocessing.com> wrote:
 Next week some time

 Asante Bayrooti
 949-355-9514

 On Apr 7, 2021, at 12:43 PM, Kevin Yu <kevin.yu93@gmail.com> wrote:

 Great, are there some dates and times that work well for you?

Kevin Yu
kevin.yu93@gmail.com
(512) 888-8897


On Tue, Apr 6, 2021 at 10:59 PM Asante Bayrooti <asante@coastprocessing.com> wrote:
No issues
You can meet with me and the accounting team

Asante Bayrooti
949-355-9514


On Apr 6, 2021, at 3:14 PM, Kevin Yu <kevin.yu93@gmail.com> wrote:


Hey all,

Great to catch up the other day. We understand y'all wanting a few months to circle the wagons, but
wanted to continue to do our due diligence in the meantime so we're ready to move when y'all are. In that
spirit, we reviewed the financial statements y'all provided and had a couple questions.

Can we set up a time (I'm thinking with someone from y'all's internal accounting like Mustafa) to discuss
with a little more granularity what comprised some of these larger FSLI's like Accounts Payable, Costs of
Services, G+A Expense, etc. We'd like to have a better understanding of where things like front-end
payments, LPG's costs, package selling, etc. are reflected in the financial statements. Can we also get
access to the auditor's workpapers?

Thanks,


Kevin Yu
kevin.yu93@gmail.com
(512) 888-8897

OHPLPG00073015

Message

| | |
|---|---|
| **From**: | Asante Bayrooti [asante@coastprocessing.com] |
| on behalf of | Asante Bayrooti <asante@coastprocessing.com> [asante@coastprocessing.com] |
| **Sent**: | 4/16/2021 2:42:11 AM |
| **To**: | Kevin Yu [kevin.yu93@gmail.com] |
| **CC**: | Adam Blum [adamblum@aol.com] |
| **Subject**: | Re: Financial Statement Discussion |

You said today

Asante Bayrooti
949-355-9514


On Apr 15, 2021, at 1:27 PM, Kevin Yu <kevin.yu93@gmail.com> wrote:


Hey Asante,

Hope you're feeling well. I'm free after 12:30 PT tomorrow, and pretty open early next week, if you want to connect then.

Thanks,


Kevin Yu
kevin.yu93@gmail.com
(512) 888-8897


On Wed, Apr 14, 2021 at 11:38 AM Kevin Yu <kevin.yu93@gmail.com> wrote:
Hey Asante,

I've outlined some questions below. Can we plan to hop on a quick call tomorrow afternoon? What times work best for you?

Is costs of services primarily payments to front ends? Is there any package purchasing done at the company level or is this all 65% cash flow stream breakout?

What comprises G+A expenses? Are Related Party expenses included in this?

Where are LPG expenses or are they taken out pre revenue?


Footnote 1.n. – Subsequent Events and FN 4 PPP Loan: Is there an updated version with more Sub Events?  When will PPP forgiveness and resulting revenue (January 2021) be recognized as revenue, considering forgiveness was approved in Jan 2021?

EXHIBIT 494

OHPLPG00073016

Can we walk through each of these accounts at a high level at what they are primarily composed of and see workpapers testing the following FSLIs/Footnotes. If you want to connect me with the auditor over email, I can organize.

Accounts Receivable
Accounts Payable
Revenues
Costs of Services
General and administrative Expenses
Related Party Receivables
Related Party Transactions/Balances

Thanks,

Kevin Yu
kevin.yu93@gmail.com
(512) 888-8897

On Tue, Apr 13, 2021 at 11:33 AM Kevin Yu <kevin.yu93@gmail.com> wrote:
Sounds good. How does your Thursday look?

Kevin Yu
kevin.yu93@gmail.com
(512) 888-8897

On Wed, Apr 7, 2021 at 11:48 PM Asante Bayrooti <asante@coastprocessing.com> wrote:
Next week some time

Asante Bayrooti
949-355-9514

On Apr 7, 2021, at 12:43 PM, Kevin Yu <kevin.yu93@gmail.com> wrote:

Great, are there some dates and times that work well for you?

Kevin Yu
kevin.yu93@gmail.com
(512) 888-8897

On Tue, Apr 6, 2021 at 10:59 PM Asante Bayrooti <asante@coastprocessing.com> wrote:
No issues
You can meet with me and the accounting team

OHPLPG00073017

Asante Bayrooti
949-355-9514


On Apr 6, 2021, at 3:14 PM, Kevin Yu <kevin.yu93@gmail.com> wrote:


Hey all,

Great to catch up the other day. We understand y'all wanting a few months to circle the wagons, but wanted to continue to do our due diligence in the meantime so we're ready to move when y'all are. In that spirit, we reviewed the financial statements y'all provided and had a couple questions.

Can we set up a time (I'm thinking with someone from y'all's internal accounting like Mustafa) to discuss with a little more granularity what comprised some of these larger FSLI's like Accounts Payable, Costs of Services, G+A Expense, etc. We'd like to have a better understanding of where things like front-end payments, LPG's costs, package selling, etc. are reflected in the financial statements. Can we also get access to the auditor's workpapers?

Thanks,


Kevin Yu
kevin.yu93@gmail.com
(512) 888-8897

OHPLPG00073018

Message

| | |
|---|---|
| **From**: | Kevin Yu [kevin.yu93@gmail.com] |
| on behalf of | Kevin Yu <kevin.yu93@gmail.com> [kevin.yu93@gmail.com] |
| **Sent**: | 4/15/2021 8:27:21 PM |
| **To**: | Asante Bayrooti [asante@coastprocessing.com] |
| **CC**: | Adam Blum [adamblum@aol.com] |
| **Subject**: | Re: Financial Statement Discussion |

Hey Asante,

Hope you're feeling well. I'm free after 12:30 PT tomorrow, and pretty open early next week, if you want to connect then.

Thanks,


Kevin Yu
kevin.yu93@gmail.com
(512) 888-8897


On Wed, Apr 14, 2021 at 11:38 AM Kevin Yu <kevin.yu93@gmail.com> wrote:
Hey Asante,

I've outlined some questions below. Can we plan to hop on a quick call tomorrow afternoon? What times work best for you?

Is costs of services primarily payments to front ends? Is there any package purchasing done at the company level or is this all 65% cash flow stream breakout?

What comprises G+A expenses? Are Related Party expenses included in this?

Where are LPG expenses or are they taken out pre revenue?

Footnote 1.n. – Subsequent Events and FN 4 PPP Loan: Is there an updated version with more Sub Events?  When will PPP forgiveness and resulting revenue (January 2021) be recognized as revenue, considering forgiveness was approved in Jan 2021?


Can we walk through each of these accounts at a high level at what they are primarily composed of and see workpapers testing the following FSLIs/Footnotes. If you want to connect me with the auditor over email, I can organize.


Accounts Receivable
Accounts Payable
Revenues
Costs of Services
General and administrative Expenses
Related Party Receivables
Related Party Transactions/Balances

EXHIBIT 495

OHPLPG00073019

Thanks,

Kevin Yu
kevin.yu93@gmail.com
(512) 888-8897


On Tue, Apr 13, 2021 at 11:33 AM Kevin Yu <kevin.yu93@gmail.com> wrote:
 Sounds good. How does your Thursday look?


 Kevin Yu
 kevin.yu93@gmail.com
 (512) 888-8897


On Wed, Apr 7, 2021 at 11:48 PM Asante Bayrooti <asante@coastprocessing.com> wrote:
 Next week some time

 Asante Bayrooti
 949-355-9514


 On Apr 7, 2021, at 12:43 PM, Kevin Yu <kevin.yu93@gmail.com> wrote:

 Great, are there some dates and times that work well for you?


 Kevin Yu
 kevin.yu93@gmail.com
 (512) 888-8897


On Tue, Apr 6, 2021 at 10:59 PM Asante Bayrooti <asante@coastprocessing.com> wrote:
 No issues
 You can meet with me and the accounting team

 Asante Bayrooti
 949-355-9514


 On Apr 6, 2021, at 3:14 PM, Kevin Yu <kevin.yu93@gmail.com> wrote:


 Hey all,

Great to catch up the other day. We understand y'all wanting a few months to circle the wagons, but wanted to continue to do our due diligence in the meantime so we're ready to move when y'all are. In that spirit, we reviewed the financial statements y'all provided and had a couple questions.

Can we set up a time (I'm thinking with someone from y'all's internal accounting like Mustafa) to discuss with a little more granularity what comprised some of these larger FSLI's like Accounts Payable, Costs of Services, G+A Expense, etc. We'd like to have a better understanding of where things like front-end payments, LPG's costs, package selling, etc. are reflected in the financial statements. Can we also get access to the auditor's workpapers?

Thanks,


Kevin Yu
kevin.yu93@gmail.com
(512) 888-8897

OHPLPG00073021

Message

| | |
|---|---|
| **From**: | Kevin Yu [kevin.yu93@gmail.com] |
| on behalf of | Kevin Yu <kevin.yu93@gmail.com> [kevin.yu93@gmail.com] |
| **Sent**: | 4/14/2021 4:38:27 PM |
| **To**: | Asante Bayrooti [asante@coastprocessing.com] |
| **CC**: | Adam Blum [adamblum@aol.com] |
| **Subject**: | Re: Financial Statement Discussion |

Hey Asante,

I've outlined some questions below. Can we plan to hop on a quick call tomorrow afternoon? What times work best for you?

Is costs of services primarily payments to front ends? Is there any package purchasing done at the company level or is this all 65% cash flow stream breakout?

What comprises G+A expenses? Are Related Party expenses included in this?

Where are LPG expenses or are they taken out pre revenue?

Footnote 1.n. – Subsequent Events and FN 4 PPP Loan: Is there an updated version with more Sub Events?  When will PPP forgiveness and resulting revenue (January 2021) be recognized as revenue, considering forgiveness was approved in Jan 2021?

Can we walk through each of these accounts at a high level at what they are primarily composed of and see workpapers testing the following FSLIs/Footnotes. If you want to connect me with the auditor over email, I can organize.

Accounts Receivable
Accounts Payable
Revenues
Costs of Services
General and administrative Expenses
Related Party Receivables
Related Party Transactions/Balances

Thanks,

Kevin Yu
kevin.yu93@gmail.com
(512) 888-8897

On Tue, Apr 13, 2021 at 11:33 AM Kevin Yu <kevin.yu93@gmail.com> wrote:
  Sounds good. How does your Thursday look?

EXHIBIT 496

Kevin Yu
kevin.yu93@gmail.com
(512) 888-8897


On Wed, Apr 7, 2021 at 11:48 PM Asante Bayrooti <asante@coastprocessing.com> wrote:
 Next week some time

 Asante Bayrooti
 949-355-9514


On Apr 7, 2021, at 12:43 PM, Kevin Yu <kevin.yu93@gmail.com> wrote:


Great, are there some dates and times that work well for you?


Kevin Yu
kevin.yu93@gmail.com
(512) 888-8897


On Tue, Apr 6, 2021 at 10:59 PM Asante Bayrooti <asante@coastprocessing.com> wrote:
 No issues
 You can meet with me and the accounting team

 Asante Bayrooti
 949-355-9514


On Apr 6, 2021, at 3:14 PM, Kevin Yu <kevin.yu93@gmail.com> wrote:


Hey all,

Great to catch up the other day. We understand y'all wanting a few months to circle the wagons, but wanted to continue to do our due diligence in the meantime so we're ready to move when y'all are. In that spirit, we reviewed the financial statements y'all provided and had a couple questions.

Can we set up a time (I'm thinking with someone from y'all's internal accounting like Mustafa) to discuss with a little more granularity what comprised some of these larger FSLI's like Accounts Payable, Costs of Services, G+A Expense, etc. We'd like to have a better understanding of where things like front-end payments, LPG's costs, package selling, etc. are reflected in the financial statements. Can we also get access to the auditor's workpapers?

Thanks,


Kevin Yu

kevin.yu93@gmail.com
(512) 888-8897

OHPLPG00073024

Message

| | |
|---|---|
| **From**: | Kevin Yu [kevin.yu93@gmail.com] |
| on behalf of | Kevin Yu <kevin.yu93@gmail.com> [kevin.yu93@gmail.com] |
| **Sent**: | 4/13/2021 4:33:56 PM |
| **To**: | Asante Bayrooti [asante@coastprocessing.com] |
| **CC**: | Adam Blum [adamblum@aol.com] |
| **Subject**: | Re: Financial Statement Discussion |

Sounds good. How does your Thursday look?

Kevin Yu
kevin.yu93@gmail.com
(512) 888-8897

On Wed, Apr 7, 2021 at 11:48 PM Asante Bayrooti <asante@coastprocessing.com> wrote:
> Next week some time
>
> Asante Bayrooti
> 949-355-9514
>
>
> On Apr 7, 2021, at 12:43 PM, Kevin Yu <kevin.yu93@gmail.com> wrote:
>
> Great, are there some dates and times that work well for you?
>
> Kevin Yu
> kevin.yu93@gmail.com
> (512) 888-8897
>
> On Tue, Apr 6, 2021 at 10:59 PM Asante Bayrooti <asante@coastprocessing.com> wrote:
>> No issues
>> You can meet with me and the accounting team
>>
>> Asante Bayrooti
>> 949-355-9514
>>
>>
>> On Apr 6, 2021, at 3:14 PM, Kevin Yu <kevin.yu93@gmail.com> wrote:
>>
>> Hey all,
>>
>> Great to catch up the other day. We understand y'all wanting a few months to circle the wagons, but wanted to
>> continue to do our due diligence in the meantime so we're ready to move when y'all are. In that spirit, we
>> reviewed the financial statements y'all provided and had a couple questions.

EXHIBIT 497

OHPLPG00073025

Can we set up a time (I'm thinking with someone from y'all's internal accounting like Mustafa) to discuss with a little more granularity what comprised some of these larger FSLI's like Accounts Payable, Costs of Services, G+A Expense, etc. We'd like to have a better understanding of where things like front-end payments, LPG's costs, package selling, etc. are reflected in the financial statements. Can we also get access to the auditor's workpapers?

Thanks,


Kevin Yu
kevin.yu93@gmail.com
(512) 888-8897

OHPLPG00073026

Message

| | |
|---|---|
| **From**: | Asante Bayrooti [asante@coastprocessing.com] |
| on behalf of | Asante Bayrooti <asante@coastprocessing.com> [asante@coastprocessing.com] |
| **Sent**: | 4/8/2021 4:48:22 AM |
| **To**: | Kevin Yu [kevin.yu93@gmail.com] |
| **CC**: | Adam Blum [adamblum@aol.com] |
| **Subject**: | Re: Financial Statement Discussion |

Next week some time

Asante Bayrooti
949-355-9514

On Apr 7, 2021, at 12:43 PM, Kevin Yu <kevin.yu93@gmail.com> wrote:

Great, are there some dates and times that work well for you?

Kevin Yu
kevin.yu93@gmail.com
(512) 888-8897

On Tue, Apr 6, 2021 at 10:59 PM Asante Bayrooti <asante@coastprocessing.com> wrote:
No issues
You can meet with me and the accounting team

Asante Bayrooti
949-355-9514

On Apr 6, 2021, at 3:14 PM, Kevin Yu <kevin.yu93@gmail.com> wrote:

Hey all,

Great to catch up the other day. We understand y'all wanting a few months to circle the wagons, but wanted to continue to do our due diligence in the meantime so we're ready to move when y'all are. In that spirit, we reviewed the financial statements y'all provided and had a couple questions.

Can we set up a time (I'm thinking with someone from y'all's internal accounting like Mustafa) to discuss with a little more granularity what comprised some of these larger FSLI's like Accounts Payable, Costs of Services, G+A Expense, etc. We'd like to have a better understanding of where things like front-end payments, LPG's costs, package selling, etc. are reflected in the financial statements. Can we also get access to the auditor's workpapers?

Thanks,

EXHIBIT 498

OHPLPG00073027

Kevin Yu
kevin.yu93@gmail.com
(512) 888-8897

OHPLPG00073028

Message

| | |
|---|---|
| **From**: | Kevin Yu [kevin.yu93@gmail.com] |
| on behalf of | Kevin Yu <kevin.yu93@gmail.com> [kevin.yu93@gmail.com] |
| **Sent**: | 4/7/2021 7:43:07 PM |
| **To**: | Asante Bayrooti [asante@coastprocessing.com] |
| **CC**: | Adam Blum [adamblum@aol.com] |
| **Subject**: | Re: Financial Statement Discussion |

Great, are there some dates and times that work well for you?

Kevin Yu
kevin.yu93@gmail.com
(512) 888-8897

On Tue, Apr 6, 2021 at 10:59 PM Asante Bayrooti <asante@coastprocessing.com> wrote:
No issues
You can meet with me and the accounting team

Asante Bayrooti
949-355-9514

On Apr 6, 2021, at 3:14 PM, Kevin Yu <kevin.yu93@gmail.com> wrote:

Hey all,

Great to catch up the other day. We understand y'all wanting a few months to circle the wagons, but wanted to continue to do our due diligence in the meantime so we're ready to move when y'all are. In that spirit, we reviewed the financial statements y'all provided and had a couple questions.

Can we set up a time (I'm thinking with someone from y'all's internal accounting like Mustafa) to discuss with a little more granularity what comprised some of these larger FSLI's like Accounts Payable, Costs of Services, G+A Expense, etc. We'd like to have a better understanding of where things like front-end payments, LPG's costs, package selling, etc. are reflected in the financial statements. Can we also get access to the auditor's workpapers?

Thanks,

Kevin Yu
kevin.yu93@gmail.com
(512) 888-8897

EXHIBIT 499

Message

| | |
|---|---|
| **From**: | Asante Bayrooti [asante@coastprocessing.com] |
| on behalf of | Asante Bayrooti <asante@coastprocessing.com> [asante@coastprocessing.com] |
| **Sent**: | 4/7/2021 3:59:54 AM |
| **To**: | Kevin Yu [kevin.yu93@gmail.com] |
| **CC**: | Brian [brian@freedomea.com]; Mario Azevedo [Mario@azevedo.com]; Adam Blum [adamblum@aol.com] |
| **Subject**: | Re: Financial Statement Discussion |

No issues
You can meet with me and the accounting team

Asante Bayrooti
949-355-9514


On Apr 6, 2021, at 3:14 PM, Kevin Yu <kevin.yu93@gmail.com> wrote:


Hey all,

Great to catch up the other day. We understand y'all wanting a few months to circle the wagons, but wanted to continue to do our due diligence in the meantime so we're ready to move when y'all are. In that spirit, we reviewed the financial statements y'all provided and had a couple questions.

Can we set up a time (I'm thinking with someone from y'all's internal accounting like Mustafa) to discuss with a little more granularity what comprised some of these larger FSLI's like Accounts Payable, Costs of Services, G+A Expense, etc. We'd like to have a better understanding of where things like front-end payments, LPG's costs, package selling, etc. are reflected in the financial statements. Can we also get access to the auditor's workpapers?

Thanks,


Kevin Yu
kevin.yu93@gmail.com
(512) 888-8897

EXHIBIT 500

Message

| | |
|---|---|
| **From**: | Kevin Yu [kevin.yu93@gmail.com] |
| on behalf of | Kevin Yu <kevin.yu93@gmail.com> [kevin.yu93@gmail.com] |
| **Sent**: | 4/6/2021 10:14:35 PM |
| **To**: | Asante Bayrooti [asante@coastprocessing.com]; Brian [brian@freedomea.com]; Mario Azevedo [mario@azevedo.com]; Adam Blum [AdamBlum@aol.com] |
| **Subject**: | Financial Statement Discussion |

Hey all,

Great to catch up the other day. We understand y'all wanting a few months to circle the wagons, but wanted to continue to do our due diligence in the meantime so we're ready to move when y'all are. In that spirit, we reviewed the financial statements y'all provided and had a couple questions.

Can we set up a time (I'm thinking with someone from y'all's internal accounting like Mustafa) to discuss with a little more granularity what comprised some of these larger FSLI's like Accounts Payable, Costs of Services, G+A Expense, etc. We'd like to have a better understanding of where things like front-end payments, LPG's costs, package selling, etc. are reflected in the financial statements. Can we also get access to the auditor's workpapers?

Thanks,


Kevin Yu
kevin.yu93@gmail.com
(512) 888-8897

EXHIBIT 501

OHPLPG00073031

Message

| | |
|---|---|
| **From:** | Tony Diab [tony@coastprocessing.com] |
| **on behalf of** | Tony Diab <tony@coastprocessing.com> [tony@coastprocessing.com] |
| **Sent:** | 2/1/2021 5:25:23 AM |
| **To:** | Kevin Yu [kevin.yu93@gmail.com] |
| **CC:** | Brian [brian@freedomea.com]; Adam Blum [AdamBlum@aol.com]; Mario Azevedo [mario@azevedo.com] |
| **Subject:** | Re: Context surrounding disbarments |
| **Attachments:** | Release of Liability re License of Tony.docx |

Hi Kevin -

Release attached, my apologies for the delay.  Now that the issue of my licensing status has been raised as a concern, it is important to BAT to confirm that this will not become an issue at any point in the future.  Disbarment carries a stigma that makes it impossible to defend claims.  BAT does not want my consultation to it during our negotiations or any at any point in the past, present or future, to serve as cause to raise concerns or make demands about the operation of BAT.  As noted multiple times, BAT wants to ensure that its unfettered control and discretion over its operations remains intact after this agreement is entered into.  I am free tomorrow to discuss with you or your counsel at any time after noon pacific.

Thanks!

On Fri, Jan 29, 2021 at 3:21 PM Kevin Yu <kevin.yu93@gmail.com> wrote:
> Hey,
>
> Wanted to check in on the liability waiver y'all wanted us to look over before consenting to the background check.
>
> Thanks,
>
> Kevin Yu
> Kevin.Yu93@gmail.com
> (512) 888-8897
>
>
> On Jan 25, 2021, at 10:53 PM, Tony Diab <tony@coastprocessing.com> wrote:
>
> Hi Kevin -
>
> To clarify, I am neither an owner/principal nor employee of Coast Processing.  I only advise and do so on a limited basis.  I hold no position within the company nor am I compensated by the company in any way.  If a background check is still necessary please let me know.
>
> In terms of disbarment, both jurisdictions (NV and CA) proceeded by way of default.  I am happy to provide further background related to disbarment, but have limits in terms of what I can share about the client relationship that I had at the time.  If you want to discuss by phone tomorrow I can tailor my response to your inquiry.  Let me know a good time to touch base by phone.
>
> Thanks,
> Tony

EXHIBIT 502

OHPLPG00073032

On Mon, Jan 25, 2021 at 6:03 PM Kevin Yu <kevin.yu93@gmail.com> wrote:

Hi Tony,

Excited to have the term sheet behind us! I mentioned this to Brian already, but as we move forward with this, we do need to address your disbarments. While we understand that you retain the full trust of Brian and Asante and everyone at Coast, it *is* a scary word without context. As such, we'd like to have the full context of the situation and be ready with an answer to any questions before they are asked, if you will.

That said, could you fill out the attached Background Check Consent document (Brian, Asante, and Mario have all had one done) and type up a statement explaining what happened and your current role within Coast Processing? Anything you can share related to the whole story - more is better - will be kept confidential. We'd rather hear it all from you (including anything civil, criminal, bankruptcy-related, etc.) than see it on the background check.

We've enjoyed working with you and appreciate your assistance and transparency with this.

Thanks,

Kevin Yu
kevin.yu93@gmail.com
(512) 888-8897

--
Coast Processing
1351 Calle Avanzado
Suite 2
San Clemente, CA 92673
949.229.6262, ext. 1013
tony@coastprocessing.com

--
Coast Processing
1351 Calle Avanzado
Suite 2
San Clemente, CA 92673
949.229.6262, ext. 1013
tony@coastprocessing.com

OHPLPG00073033

## *WAIVER AND RELEASE OF LIABILITY*

As a condition of the Operating Agreement of an entity now known as PurchaseCo LLC, but which may take a different name at the time of formation, Old Hickory Partners – Coast L.P. ("OHP"), and its principals, agents, employees, and independent contracts, has requested information concerning the background of Tony M. Diab ("Diab"), an individual known to consult for BAT Inc. dba Coast Processing ("BAT"). Diab has voluntarily submitted to a background check and inquiry by OHP, and the Parties now formally agree to the following:

**1. DISCLOSURE.** OHP agrees to disclose all information obtained as a result of or in connection with its investigation into Diab, without limitation. Such information shall be shared with Diab only, and shall not be given to any other individuals or entity other than Diab or an individual authorized to act on behalf of OHP. Any disclosure of information to any individual other than Diab shall constitute a breach of this Agreement and event of default of any Operating Agreement OHP and BAT form for PurchaseCo LLC.

**2. ASSUMPTION OF THE RISKS AND RELEASE.** OHP understands and acknowledges that Diab is not authorized to practice law in any jurisdiction and currently does not practice law. BAT and Diab have disclosed Diab's status and ineligibility to practice law. OHP and BAT both acknowledge and agree that Diab has not offered legal advice to either entity nor practiced law for benefit of nor on behalf of either entity. Diab has participated in negotiations of the Operating Agreement contemplated above as a consultant to BAT, and OHP now hereby agrees to the following:

- That OHP shall not raise, at any point after the execution of the Operating Agreement for PuchaseCo LLC, the status of Diab's license nor any other conduct of Diab as a basis for terminating, modifying, amending, or in any way altering the Operating Agreement or relationship of the Parties. Any attempt to raise Diab's license status of background as of the date of the background report run by OHP as contemplated by this Agreement shall be deemed an event of default under the Operating Agreement and shall trigger all remedies available thereunder;
- That OHP shall keep the contents of its background check and related inquiry under strict confidentiality, permitting access only to employees and agents of OHP, including counsel of record. Any disclosure, direct or indirect, of confidential information shall constitute an event of default under the Operating Agreement and shall trigger all remedies available thereunder;
- That OHP and BAT acknowledge that Diab has no title, role, or employment with BAT, but serves only as a consultant to BAT for limited purposes;
- That OHP may, at the conclusion of its background investigation, opt not to proceed with participation in the Operating Agreement or PurchaseCo LLC in general, and shall incur no liability nor be required to explain its decision not to proceed, even if that decision is the result of its investigation into Diab or based his status with the State Bar of California or Nevada.

OHPLPG00073034

**3. INDEMNIFICATION.** OHP and BAT agree to indemnify and hold Diab harmless for any claim that might arise against him by any individual or entity in connection with the formation or operation of BAT, OHP, PuchaseCo LLC, or any related entity, without limitation.  This includes any claim that might be filed by BAT, OHP, PurchaseCo LLC, a client of any of the above, or an investor or vendor of any of the above.  This indemnification shall include damages and attorneys' fees and costs for counsel of Diab's choosing, without limitation.

**4. FEES AND COSTS.**  Any fee or cost incurred in enforcing the terms of this Agreement, including but not limited to attorneys' fees, shall be recoverable by the prevailing party to such dispute.

**5. APPLICABLE LAW.** Any legal or equitable claim that may arise from participation in the above shall be resolved under California law, and venue for such action shall be limited to the Superior Court of California for the County of Orange as the sole and exclusive jurisdiction and venue.

**6. NO DURESS.** I agree and acknowledge that I am under no pressure or duress to sign this Agreement and that I have been given a reasonable opportunity to review it before signing. I further agree and acknowledge that I am free to have my own legal counsel review this Agreement if I so desire. I further agree and acknowledge that Coast Processing has offered to refund any fees I have paid to use its facilities if I choose not to sign this Agreement.

**7. ARM'S LENGTH AGREEMENT.** This Agreement and each of its terms are the product of an arm's length negotiation between the Parties. In the event any ambiguity is found to exist in the interpretation of this Agreement, or any of its provisions, the Parties, and each of them, explicitly reject the application of any legal or equitable rule of interpretation which would lead to a construction either "for" or "against" a particular party based upon their status as the drafter of a specific term, language, or provision giving rise to such ambiguity. Accordingly, the Parties specifically reject the application of Cal. Civ. Code §1654 to this Agreement, as well as any other statute or common law principles of similar effect.

**8. ENFORCEABILITY.** The invalidity or unenforceability of any provision of this Agreement, whether standing alone or as applied to a particular occurrence or circumstance, shall not affect the validity or enforceability of any other provision of this Agreement or of any other applications of such provision, as the case may be, and such invalid or unenforceable provision shall be deemed not to be a part of this Agreement.

**I HAVE READ THIS DOCUMENT AND UNDERSTAND IT. I FURTHER UNDERSTAND THAT BY SIGNING THIS RELEASE, I VOLUNTARILY SURRENDER CERTAIN LEGAL RIGHTS.**

Dated: _____    Signature: _____

Message

| | |
|---|---|
| **From:** | Kevin Yu [kevin.yu93@gmail.com] |
| **on behalf of** | Kevin Yu <kevin.yu93@gmail.com> [kevin.yu93@gmail.com] |
| **Sent:** | 1/29/2021 11:21:31 PM |
| **To:** | Brian [brian@freedomea.com] |
| **CC:** | Adam Blum [AdamBlum@aol.com]; Tony Diab [tony@coastprocessing.com]; Mario Azevedo [mario@azevedo.com] |
| **Subject:** | Re: Context surrounding disbarments |

Hey,

Wanted to check in on the liability waiver y'all wanted us to look over before consenting to the background check.

Thanks,

Kevin Yu
Kevin.Yu93@gmail.com
(512) 888-8897


On Jan 25, 2021, at 10:53 PM, Tony Diab <tony@coastprocessing.com> wrote:


Hi Kevin -

To clarify, I am neither an owner/principal nor employee of Coast Processing. I only advise and do so on a limited basis. I hold no position within the company nor am I compensated by the company in any way. If a background check is still necessary please let me know.

In terms of disbarment, both jurisdictions (NV and CA) proceeded by way of default. I am happy to provide further background related to disbarment, but have limits in terms of what I can share about the client relationship that I had at the time. If you want to discuss by phone tomorrow I can tailor my response to your inquiry. Let me know a good time to touch base by phone.

Thanks,
Tony

On Mon, Jan 25, 2021 at 6:03 PM Kevin Yu <kevin.yu93@gmail.com> wrote:
Hi Tony,

Excited to have the term sheet behind us! I mentioned this to Brian already, but as we move forward with this, we do need to address your disbarments. While we understand that you retain the full trust of Brian and Asante and everyone at Coast, it *is* a scary word without context. As such, we'd like to have the full context of the situation and be ready with an answer to any questions before they are asked, if you will.

That said, could you fill out the attached Background Check Consent document (Brian, Asante, and Mario have all had one done) and type up a statement explaining what happened and your current role within Coast Processing? Anything you can share related to the whole story - more is better - will be kept confidential. We'd rather hear it all from you (including anything civil, criminal, bankruptcy-related, etc.) than see it on the background check.

EXHIBIT 503

OHPLPG00073036

We've enjoyed working with you and appreciate your assistance and transparency with this.

Thanks,

Kevin Yu
kevin.yu93@gmail.com
(512) 888-8897


--
Coast Processing
1351 Calle Avanzado
Suite 2
San Clemente, CA 92673
949.229.6262, ext. 1013
tony@coastprocessing.com

OHPLPG00073037

Message

| | |
|---|---|
| **From**: | Kevin Yu [kevin.yu93@gmail.com] |
| on behalf of | Kevin Yu <kevin.yu93@gmail.com> [kevin.yu93@gmail.com] |
| **Sent**: | 1/27/2021 11:50:35 PM |
| **To**: | Tony Diab [tony@coastprocessing.com] |
| **Subject**: | Re: Context surrounding disbarments |

Hey Tony,

You free to catch up tomorrow?

Kevin Yu
kevin.yu93@gmail.com
(512) 888-8897

On Tue, Jan 26, 2021 at 1:13 PM Kevin Yu <kevin.yu93@gmail.com> wrote:
Hey Tony,

As we've interfaced with you as part of negotiating this deal we do still want to run a background check.

We totally respect that you're limited on what you can share. We just want to full picture of the situation as we move forward rather than having an incomplete understanding of what happened.

Again, we really do enjoy working with you, and hope that you understand our need to have the full context here.

I'm pretty free this afternoon does 1 or 2 pst work for you?

Thanks,

Kevin Yu
Kevin.Yu93@gmail.com
(512) 888-8897

On Jan 25, 2021, at 10:53 PM, Tony Diab <tony@coastprocessing.com> wrote:

Hi Kevin -

To clarify, I am neither an owner/principal nor employee of Coast Processing. I only advise and do so on a limited basis. I hold no position within the company nor am I compensated by the company in any way. If a background check is still necessary please let me know.

In terms of disbarment, both jurisdictions (NV and CA) proceeded by way of default. I am happy to provide further background related to disbarment, but have limits in terms of what I can share about the client relationship that I had at the time. If you want to discuss by phone tomorrow I can tailor my response to your inquiry. Let me know a good time to touch base by phone.

EXHIBIT 504

Thanks,
Tony

On Mon, Jan 25, 2021 at 6:03 PM Kevin Yu <kevin.yu93@gmail.com> wrote:
  Hi Tony,

  Excited to have the term sheet behind us! I mentioned this to Brian already, but as we move forward with this,
  we do need to address your disbarments. While we understand that you retain the full trust of Brian and
  Asante and everyone at Coast, it *is* a scary word without context. As such, we'd like to have the full context of
  the situation and be ready with an answer to any questions before they are asked, if you will.

  That said, could you fill out the attached Background Check Consent document (Brian, Asante, and Mario
  have all had one done) and type up a statement explaining what happened and your current role within Coast
  Processing? Anything you can share related to the whole story - more is better - will be kept confidential.
  We'd rather hear it all from you (including anything civil, criminal, bankruptcy-related, etc.) than see it on the
  background check.

  We've enjoyed working with you and appreciate your assistance and transparency with this.

  Thanks,

  Kevin Yu
  kevin.yu93@gmail.com
  (512) 888-8897


  --
  Coast Processing
  1351 Calle Avanzado
  Suite 2
  San Clemente, CA 92673
  949.229.6262, ext. 1013
  tony@coastprocessing.com

OHPLPG00073039

Message

| | |
|---|---|
| **From**: | Kevin Yu [kevin.yu93@gmail.com] |
| on behalf of | Kevin Yu <kevin.yu93@gmail.com> [kevin.yu93@gmail.com] |
| **Sent**: | 1/26/2021 7:13:22 PM |
| **To**: | Tony Diab [tony@coastprocessing.com] |
| **CC**: | Brian [brian@freedomea.com]; Adam Blum [AdamBlum@aol.com] |
| **Subject**: | Re: Context surrounding disbarments |

Hey Tony,

As we've interfaced with you as part of negotiating this deal we do still want to run a background check.

We totally respect that you're limited on what you can share. We just want to full picture of the situation as we move forward rather than having an incomplete understanding of what happened.

Again, we really do enjoy working with you, and hope that you understand our need to have the full context here.

I'm pretty free this afternoon does 1 or 2 pst work for you?

Thanks,

Kevin Yu
Kevin.Yu93@gmail.com
(512) 888-8897


On Jan 25, 2021, at 10:53 PM, Tony Diab <tony@coastprocessing.com> wrote:


Hi Kevin -

To clarify, I am neither an owner/principal nor employee of Coast Processing. I only advise and do so on a limited basis. I hold no position within the company nor am I compensated by the company in any way. If a background check is still necessary please let me know.

In terms of disbarment, both jurisdictions (NV and CA) proceeded by way of default. I am happy to provide further background related to disbarment, but have limits in terms of what I can share about the client relationship that I had at the time. If you want to discuss by phone tomorrow I can tailor my response to your inquiry. Let me know a good time to touch base by phone.

Thanks,
Tony

On Mon, Jan 25, 2021 at 6:03 PM Kevin Yu <kevin.yu93@gmail.com> wrote:
  Hi Tony,

  Excited to have the term sheet behind us! I mentioned this to Brian already, but as we move forward with this, we do need to address your disbarments. While we understand that you retain the full trust of Brian and Asante

EXHIBIT 505

OHPLPG00073040

and everyone at Coast, it *is* a scary word without context. As such, we'd like to have the full context of the situation and be ready with an answer to any questions before they are asked, if you will.

That said, could you fill out the attached Background Check Consent document (Brian, Asante, and Mario have all had one done) and type up a statement explaining what happened and your current role within Coast Processing? Anything you can share related to the whole story - more is better - will be kept confidential. We'd rather hear it all from you (including anything civil, criminal, bankruptcy-related, etc.) than see it on the background check.

We've enjoyed working with you and appreciate your assistance and transparency with this.

Thanks,

Kevin Yu
kevin.yu93@gmail.com
(512) 888-8897


--
Coast Processing
1351 Calle Avanzado
Suite 2
San Clemente, CA 92673
949.229.6262, ext. 1013
tony@coastprocessing.com

OHPLPG00073041

Message

| From: | Tony Diab [tony@coastprocessing.com] |
|---|---|
| on behalf of | Tony Diab <tony@coastprocessing.com> [tony@coastprocessing.com] |
| Sent: | 1/26/2021 4:52:45 AM |
| To: | Kevin Yu [kevin.yu93@gmail.com] |
| CC: | Brian [brian@freedomea.com]; Adam Blum [AdamBlum@aol.com] |
| Subject: | Re: Context surrounding disbarments |

Hi Kevin -

To clarify, I am neither an owner/principal nor employee of Coast Processing.  I only advise and do so on a limited basis.  I hold no position within the company nor am I compensated by the company in any way.  If a background check is still necessary please let me know.

In terms of disbarment, both jurisdictions (NV and CA) proceeded by way of default.  I am happy to provide further background related to disbarment, but have limits in terms of what I can share about the client relationship that I had at the time.  If you want to discuss by phone tomorrow I can tailor my response to your inquiry.  Let me know a good time to touch base by phone.

Thanks,
Tony

On Mon, Jan 25, 2021 at 6:03 PM Kevin Yu <kevin.yu93@gmail.com> wrote:
Hi Tony,

Excited to have the term sheet behind us! I mentioned this to Brian already, but as we move forward with this, we do need to address your disbarments. While we understand that you retain the full trust of Brian and Asante and everyone at Coast, it *is* a scary word without context. As such, we'd like to have the full context of the situation and be ready with an answer to any questions before they are asked, if you will.

That said, could you fill out the attached Background Check Consent document (Brian, Asante, and Mario have all had one done) and type up a statement explaining what happened and your current role within Coast Processing? Anything you can share related to the whole story - more is better - will be kept confidential. We'd rather hear it all from you (including anything civil, criminal, bankruptcy-related, etc.) than see it on the background check.

We've enjoyed working with you and appreciate your assistance and transparency with this.

Thanks,

Kevin Yu
kevin.yu93@gmail.com
(512) 888-8897


--
Coast Processing
1351 Calle Avanzado
Suite 2
San Clemente, CA 92673

EXHIBIT 506

OHPLPG00073042

949.229.6262, ext. 1013
tony@coastprocessing.com

OHPLPG00073043

Message

| From: | Tony Diab [tony@coastprocessing.com] |
| on behalf of | Tony Diab <tony@coastprocessing.com> [tony@coastprocessing.com] |
| Sent: | 1/23/2021 2:29:43 AM |
| To: | Kevin Yu [kevin.yu93@gmail.com] |
| CC: | Adam Blum [AdamBlum@aol.com]; Asante Bayrooti [asante@coastprocessing.com]; Brian Reale [brian@freedomea.com] |
| Subject: | Re: Coast-OHP Term Sheet |
| Attachments: | Signed Term Sheet.pdf |

Hi Kevin -

My apologies, please see attached.  This delay was my fault, Brian and Asante are on board and authorized the attached.

Thanks,
Tony

On Tue, Jan 12, 2021 at 12:47 PM Kevin Yu <kevin.yu93@gmail.com> wrote:
Hi Tony,

Any updates on this?


Kevin Yu
kevin.yu93@gmail.com
(512) 888-8897


On Fri, Jan 8, 2021 at 5:50 PM Kevin Yu <kevin.yu93@gmail.com> wrote:
Hi Tony,

See attached for revised term sheet and redline. Please let us know if this is agreeable and we can proceed with execution.

Thanks,



Kevin Yu
kevin.yu93@gmail.com
(512) 888-8897


On Fri, Jan 8, 2021 at 1:49 PM Kevin Yu <kevin.yu93@gmail.com> wrote:
Apologies, forgot to pass this along yesterday. See attached for our proposed term sheet redlined to your last draft.

Thanks,

EXHIBIT 507

OHPLPG00073044

Kevin Yu
kevin.yu93@gmail.com
(512) 888-8897


On Thu, Jan 7, 2021 at 3:49 PM Tony Diab <tony@coastprocessing.com> wrote:
  Ok, thanks!  Can we pencil in 1:30 pm Pacific tomorrow?

  Thanks!

On Thu, Jan 7, 2021 at 1:48 PM Kevin Yu <kevin.yu93@gmail.com> wrote:
  Hi Tony,

  We caught up with our counsel, are you free at or after 1 PM PST tomorrow (Friday) to talk with them?

  We are generally okay with most of your changes, but given the carte blanche to operate outside of
  PurchaseCo, we felt the need to shore up the ROFR. I think it's probably more efficient to keep it small
  between the lawyers and focus on making sure the legal language is accomplishing our intentions. From an
  economic perspective, we don't believe we've altered anything and given all of our previous discussions we
  were cognizant to ensure that:

  1) Everything has a cure period to prevent any "gotchas"
  2) There is no scenario where OHP is entitled to anything beyond the return of our Funding Capital and
  30% of remaining equity

  Finishing up a few last edits and will circulate the revisions shortly.

  Thanks,



  Kevin Yu
  kevin.yu93@gmail.com
  (512) 888-8897


On Thu, Dec 24, 2020 at 9:32 PM Tony Diab <tony@coastprocessing.com> wrote:
  Revision per our conversation.  Please let me know as soon as you speak with your team on the issue we
  identified, and then we can set up a call with the group.  Asante and Brian would like to reach a resolution
  point as soon as possible.

  Thanks!

  On Thu, Dec 17, 2020 at 12:11 PM Kevin Yu <kevin.yu93@gmail.com> wrote:
    Sure. See attached.


    Kevin Yu
    kevin.yu93@gmail.com
    (512) 888-8897

OHPLPG00073045

On Thu, Dec 17, 2020 at 1:43 PM Tony Diab <tony@coastprocessing.com> wrote:

Hi Kevin -

Can you send as a word document, a few proposed revisions.

Thanks!

On Wed, Dec 16, 2020 at 1:54 PM Kevin Yu <kevin.yu93@gmail.com> wrote:

Hi all,

Happy to share with y'all the term sheet. I believe we've gone through almost every bit of this at least verbally so there shouldn't be any surprises. Please let us know if y'all have any questions, comments, or concerns.

Thanks,


Kevin Yu
kevin.yu93@gmail.com
(512) 888-8897
--
Coast Processing
1351 Calle Avanzado
Suite 2
San Clemente, CA 92673
949.229.6262, ext. 1013
tony@coastprocessing.com



--
Coast Processing
1351 Calle Avanzado
Suite 2
San Clemente, CA 92673
949.229.6262, ext. 1013
tony@coastprocessing.com



--
Coast Processing
1351 Calle Avanzado
Suite 2
San Clemente, CA 92673
949.229.6262, ext. 1013

OHPLPG00073046

tony@coastprocessing.com

--
Coast Processing
1351 Calle Avanzado
Suite 2
San Clemente, CA 92673
949.229.6262, ext. 1013
tony@coastprocessing.com

OHPLPG00073047

Nonbinding Term Sheet

COAST PROCESSING
INDICATIVE SUMMARY OF TERMS AND CONDITIONS

This Indicative Summary of Terms and Conditions is intended only as an outline of certain of the material terms of the proposed operating agreement (the "Operating Agreement") for PurchaseCo, a Delaware limited liability company to be jointly owned and managed by Old Hickory Partners – Coast, L.P. ("OHP") and B.A.T. Inc. dba Coast Processing and its principals Brian Reale, Asante Bayrooti and Mario Azevedo ("Coast," and together with OHP, the "PurchaseCo Parties") and does not purport to summarize all of the conditions, covenants, representations, warranties and other provisions that would be contained in definitive documentation for the structure of the Operating Agreement contemplated hereby.

| | |
|---|---|
| **PURCHASECO ENTITY:** | The PurchaseCo Parties will establish PurchaseCo, a Delaware limited liability company to be jointly owned and managed by OHP and Coast for the exclusive purpose of purchasing all future cash flow streams from individual receivables (collectively, "Packages") sourced by Coast and its Affiliates, and to receive cash flows therefrom. |
| **OWNERSHIP:** | Each PurchaseCo Party's respective interest in PurchaseCo ("Ownership Interest") is as follows:<br><br>Coast – 70%<br>OHP – 30% |
| **CAPITALIZATION:** | Prior to commencing operations at PurchaseCo, the PurchaseCo Parties will capitalize PurchaseCo with $300,000.00 of equity, pro rata, according to the Ownership Interests (the "Equity Investment"):<br><br>Coast – $210,000.00<br>OHP – $90,000.00<br><br>One time per month, PurchaseCo can issue an additional capital call request to OHP for the sole purpose of funding the purchase of Eligible Receivables (as hereinafter defined) that PurchaseCo's cash on hand cannot fund (the "Funding Capital"). The PurchaseCo Parties agree that OHP's Ownership Interest in PurchaseCo will not exceed 30%, except in certain circumstances to be described in the Operating Agreement, and is not adjusted by its contributions of Funding Capital.<br><br>OHP's Funding Capital is available over 5 years in the amount of $10 million (the "Commitment"); provided that during the first 6 months starting from the Closing Date (as hereinafter defined), availability of Funding Capital shall be limited to $5 million, and that the first advance of Funding Capital shall be limited to $2 million. Any distributions of Funding Capital to OHP are subject to reinvestment by PurchaseCo to fund additional Eligible Receivables. The Commitment term and size can be increased at OHP's option.<br><br>PurchaseCo's ability to call Funding Capital shall be subject to certain restrictions set forth in the Operating Agreement, including the Cost Basis of Eligible Receivables measured as of the last day of the prior month (the "Funding Base"). The Funding Base as of any date of determination shall be an amount equal to 100% of the Cost Basis of Eligible Receivables. The "Cost Basis" of Eligible Receivables refers to the amount paid to Affiliates for a File (as hereinafter defined) or Packages. For the purposes of calculating the Funding Base, Eligible Receivables shall also include any Files or Packages contracted with Affiliates and approved for purchase by PurchaseCo in the current month. To the extent that the outstanding amount of the Funding Capital exceeds the Funding Base (a "Funding Base Deficiency"), PurchaseCo |

CONFIDENTIAL

4811-7258-7475v.2 62697-19

OHPLPG00073048

Nonbinding Term Sheet

shall immediately pay OHP in an amount sufficient to eliminate the Funding Base Deficiency.

"Eligible Receivables" shall mean any payment stream from a File (or collectively, a Package for a given month) that satisfies either of the following conditions: (a) receives unanimous consent for purchase by all the PurchaseCo Parties, or (b) meets the following criteria: (1) such receivable has had at least its first payment made, and (2) such receivable has a purchase cost of less than the lesser of (i) 40% of the total expected cash flows to be collected over the term of the File or Package (prior to management fee or cancellations), or (ii) 7.5% of the total gross balance of debt enrolled per File or Package.

**CONDITIONS PRECEDENT:**

The creation of PurchaseCo will be subject to satisfaction of the conditions precedent deemed appropriate by OHP for the an alignment of interest between the PurchaseCo Parties, defined as the following:

Coast shall certify that Brian Reale, Asante Bayrooti and Mario Azevedo (the "Principals") individually and their other Package-buying entities, including but not limited to ABR Enterprises, LLC, Freedom Enrollment, and any trusts or entities owned, managed by, or for the benefit of the Principals or their affiliates (the "Coast Entities"), shall not engage in the purchase of any new Packages that meet the criteria of an Eligible Receivable, unless OHP first declines to provide Funding Capital for the specific Package.

The execution of the Operating Agreement will also be subject to satisfaction of the conditions precedent deemed appropriate by OHP for transactions of this type generally and for this transaction in particular, including, but not limited to, the following:

- OHP shall have received from PurchaseCo all fees required to be paid and all expenses for which invoices have been presented.

- All governmental and third party approvals necessary in connection with the transaction(s) contemplated hereby and the continuing operations of PurchaseCo, Coast and its subsidiaries (including shareholder approvals, if any) shall have been obtained on satisfactory terms and shall be in full force and effect.

- OHP shall have received such closing documents as are customary for transactions of this type or as it may reasonably request, including but not limited to resolutions, good standing certificates, incumbency certificates, organizational documents, consents, and financing statements or similar filings, all in form and substance acceptable to OHP and its counsel.

The date on which the PurchaseCo Parties execute the Operating Agreement shall be referred to as the "Closing Date."

**PURCHASECO OPERATIONS:**

PurchaseCo will purchase, from lead generating and marketing companies affiliated with Coast ("Affiliates"), cash flow streams that represent the Affiliate's entire interest in customer payments for debt validation services ("Files"). All Files purchased within a calendar month will be collectively called a "Package." Files will be funded from the following capital sources of PurchaseCo, in order of availability:

1) Available cash on hand at PurchaseCo (retaining a minimum Cash (as hereinafter defined) balance of $25,000.00 at all times);

2) Funding Capital, up to the Commitment amount (one draw per month maximum); and

OHPLPG00073049

Nonbinding Term Sheet

    3) Equity infusion from the PurchaseCo Parties in proportion to the Ownership Interests.

Coast will manage the day-to-day operations of PurchaseCo and will administer all Package collections and management of the Files, with the help of a fund administrator (to be hired by PurchaseCo if so requested by OHP). Collections and management will operate substantially similar to the collections and management of current Packages of Files sold to third parties and as detailed in that certain B.A.T. Inc. dba Coast Processing - Affiliate Agreement with ACB Holdings, LP, dated September 29, 2020 (Exhibit A), including, but not limited to, the monthly maintenance fee and refund clawback mechanics. At any time, OHP may request that PurchaseCo and Coast engage a backup servicer to onboard in preparation for one day taking over PurchaseCo's servicing and collections should, in OHP's determination, Coast not be able to fulfill such duties. The Principals will be the primary negotiators with each Affiliate for the terms of Package or File purchases on behalf of PurchaseCo, and Coast, as well as the Coast Entities, will act at all times with a fiduciary duty first and foremost to PurchaseCo. Any commission income due or received by any of Coast, the Principals, or its affiliates, related to the purchase of Files or Packages funded by PurchaseCo, shall be contributed to PurchaseCo and deemed income of PurchaseCo and not part of Coast's equity contributions to PurchaseCo. Should Coast or its affiliates ever create an Affiliate, Package- or File-buying entity or any other similar entity or joint venture (such business to be determined to be a similar business in OHP's reasonable discretion) that is owned or managed, directly or indirectly, by Coast or the Principals or affiliates, Coast will notify the PurchaseCo Parties in advance and will provide all reasonable disclosures as requested by the PurchaseCo Parties on a continuing and ongoing basis, including evidence that such business does not violate the terms of the Operating Agreement or any other contract among the PurchaseCo Parties and their assigns.

Each of OHP and Coast will appoint a manager to represent its interests at PurchaseCo. Authorization from both Managers representing the PurchaseCo Parties shall be required for certain business operations including, but not limited to, bank outflows (dual authorization required for any disbursements), debt drawdowns, debt prepayments, equity distributions, any raises of debt or equity or issuance/purchase of securities, annual budgeting, tax matters, any acquisition or sale of assets (except in the normal course), initiation or responses to any litigation, and other major activities deemed as such by OHP in its reasonable discretion (collectively "Major Decisions"). The PurchaseCo Parties hereby agree that the exclusive capital provider to PurchaseCo shall be OHP and its assigns, Coast, and the Principals.

**RIGHT OF FIRST REFUSAL:**

For so long as PurchaseCo has not been wound down, PurchaseCo will have a right of first offer for any and all Files or Packages related to a Coast customer, that of an Affiliate, an affiliate of Coast or a Principal of Coast. Should OHP decline to have PurchaseCo fund payments associated with a complete Package, then the Package may be offered to any other party, provided such offer be made on the same economic and qualitative terms (in OHP's reasonable discretion) as those offered to PurchaseCo. At no time shall Coast, an affiliate of Coast or a Principal of Coast present a File or a Package to any third-party prior to presentation to PurchaseCo and OHP and the rejection of such File or Package (subject to the immediately following sentence) by OHP. To the extent PurcahseCo is presented certain Files, but not a complete Package, any rejection of such Files by OHP shall not permit that such Files

           CONFIDENTIAL

OHPLPG00073050

Nonbinding Term Sheet

|  | may be offered to any other party, until such time as OHP rejects the entire Package. Following a rejection of a Package, if any terms change for the acquisition of such Package, OHP (on PurchaseCo's behalf) must be presented with the revised terms for such Package with the opportunity to acquire such Package.   The right of first offer set forth in this section shall continue regardless of default under the terms of the Operating Agreement or other definitive documents or of the number of times OHP has rejected Packages presented to PurchaseCo. In the event that OHP accepts a transaction, but PurchaseCo or Coast is in default of any agreement involving OHP, then OHP may, in its discretion, have such File or Package accounted for separately from all previously acquired Files or Packages or have such Files or Packages acquired by a different entity than PurchaseCo that may be owned and controlled by OHP. |
|---|---|
| **DISTRIBUTIONS:** | At such time as a distribution is made by PurchaseCo to the PurchaseCo Parties, the "waterfall" would work as follows:<br><br>1. First, to OHP until such time as OHP has received a return of all Funding Capital contributed to PurchaseCo;<br>2. Next, to OHP until such time as OHP has received a return of its Equity Investment in PurchaseCo;<br>3. Next, to Coast until Coast has received a return of all of its Equity Investment in PurchaseCo; and<br>4. Thereafter, to the PurchaseCo Parties pro rata according to Ownership Interests. |
| **CONDITIONS PRECEDENT TO EACH ADVANCE OF FUNDING CAPITAL:** | In advance of each monthly funding request, Coast agrees to furnish to OHP, with at least two weeks' notice, a report, in a form to be agreed upon by the PurchaseCo Parties, which includes but is not limited to historical and projected performance statistics of Files purchased, organized by Affiliate.  Funding of each monthly Funding Capital advance request is subject to OHP's receipt of and approval of such report, such approval not to be unreasonably withheld. Any nonresponse within forty-eight (48) hours of such receipt is deemed to be an approval of such report.<br><br>The making of each monthly contribution of Funding Capital shall further be conditioned upon (a) the accuracy of certain material representations and warranties which the PurchaseCo Parties shall set forth in the Operating Agreement following a further meet and confer on the subject; (b) there being no breach of any covenants in the Operating Agreement nor any Events of Default (as further defined below) in existence at the time of, or after giving effect to, the making of, such contributions of Funding Capital; (c) there being no material adverse change in PurchaseCo's or Coast's business practices in existence at the time of, or after giving effect to the making of, such Funding Capital advance, except that Coast has sole discretion to control the manner in which its validation program is operated (the PurchaseCo Parties shall define the scope of a material adverse change in business practices in further detail as part of the Operating Agreement); and (d) after giving effect to the contribution of Funding Capital, the total outstanding balance of the Funding Capital to PurchaseCo shall not exceed the lesser of the Commitment or the Funding Base then in effect. |
| **FUNDING CAPITAL COVENANTS:** | The financial covenants under the Operating Agreement governing the Funding Capital shall be as follows: |

CONFIDENTIAL

OHPLPG00073051

Nonbinding Term Sheet

- PurchaseCo shall not permit the Cancellation Rate (as hereinafter defined) of any monthly Package, or across all owned Files, to be greater than 40%, tested at the end of each calendar month; and

- PurchaseCo's Cash balance shall at all times be at least $25,000.00.

"Cancellation Rate" means, as of any date of determination thereof, an amount, expressed as a percentage, equal to (a) the total dollar amount of undiscounted expected future cash flows from Files cancelled, written off, or greater than 60 days overdue, divided by (b) the total dollar amount of undiscounted received and expected future cash flows from all Files.

"Cash" shall mean cash or cash equivalents of a person, (a) that are not, and are not required to be, designated as "restricted" on the financial statements of such person, (b) that are not contractually required, and have not been contractually committed by such person, to be used for a specific purpose, (c) that are not subject to (i) any provision of law, statute, rule or regulation, (ii) any provision of the organizational documents of such person, or (iii) any order of any governmental authority, (d) in which no person has a lien, and (e) that are held in a deposit account or securities account, as applicable, in which OHP has direct access.

A violation of either of these covenants shall entitle OHP to, in its sole discretion: (a) withhold future investment notwithstanding any representation to the contrary without waiving its ROFO/ROFR, (b) accelerate the repayment of Funding Capital to OHP pursuant to the Distributions section above, and (c) institute a "freeze" on the bank account(s) whereby no transaction may be made from the bank account(s) of PurchaseCo.

**REPRESENTATIONS AND WARRANTIES:**

The Operating Agreement shall contain representations and warranties customary for transactions of this type and other terms deemed appropriate by OHP, including with respect to licenses, permits and compliance with law.

**AFFIRMATIVE COVENANTS:**

The affirmative covenants applicable to PurchaseCo and its subsidiaries shall include, without limitation, the following: delivery to PurchaseCo Parties of monthly, quarterly and annual financial statements of Coast and PurchaseCo; annual audits with unqualified opinions of PurchaseCo and Coast; access to real-time performance of packages; delivery of monthly projections by Coast for OHP's expected advances of Funding Capital; payment of obligations; continuation of business and maintenance of existence and material rights and privileges; compliance with laws and material contractual obligations and obtainment and maintenance of any and all applicable licenses with proper authorities, if any, by both Coast and PurchaseCo; accuracy of information; maintenance of property and general liability insurance; maintenance of books and records; right of OHP to inspect property and books and records of Coast and PurchaseCo; notices of defaults and notice of formal service of lawsuits against PurchaseCo and Coast; continued unrestricted access provided to OHP of all PurchaseCo's bank accounts; use of proceeds of Funding Capital; and all or substantially all of professional time of Coast's senior management devoted to the management of the business of Coast and PurchaseCo.

**NEGATIVE COVENANTS:**

The negative covenants applicable to PurchaseCo and its subsidiaries shall include, without limitation, limitations on the following (subject to exceptions, as appropriate, to be negotiated and including the specific exceptions set forth herein):

- indebtedness (including guarantee obligations);

CONFIDENTIAL

OHPLPG00073052

Nonbinding Term Sheet

- liens;
- fundamental changes (including mergers, consolidations, liquidations, dissolutions, and divisions; changes in fiscal year and changes in line of business; transfers of interests; issuances of securities);
- investments;
- dispositions of assets outside the normal course;
- payment of restricted payments (including dividends and other payments in respect of equity interests);
- negative pledge clauses on the PurchaseCo Parties; or
- amendment of material documents.

**EVENTS OF DEFAULT:** Following an Event of Default (as hereinafter defined) and any reasonable cure periods (as further described and agreed upon in the Operating Agreement), the Commitment shall, at the sole discretion of OHP, be reduced to $0.00, and OHP shall take sole control over PurchaseCo, any managers of PurchaseCo appointed by Coast will be removed as a manager, and OHP shall cause all assets of PurchaseCo, including existing cash and any cash from receivables owned by PurchaseCo, to be distributed directly to OHP until OHP's Funding Capital and Equity Investment are fully repaid. Following full repayment of OHP's Funding Capital and Equity Investment, PurchaseCo's operations and ownership shall revert as if such Event of Default had not occurred. An "Event of Default" includes, without limitation: nonpayment of fees or other amounts when due under any purchase agreement or the Operating Agreement; representations and warranties set forth in the Operating Agreement becoming incorrect in any material respect (the PurchaseCo Parties shall define the scope of relevant representations and warranties and materiality thresholds related thereto in further detail as part of the Operating Agreement), subject to reasonable cure periods; violation of covenants (subject, in the case of certain affirmative covenants, to a commercially reasonable cure period to be agreed upon); occurrence of a default (whether or not resulting in acceleration) under any agreement governing indebtedness, in excess of an amount to be agreed upon, of PurchaseCo; bankruptcy events of PurchaseCo, Coast or the Principals; conviction or guilty or nolo contendere pleas of a criminal offense or civil judgment in excess of $50,000.00 of PurchaseCo, Coast or any of the Principals; and certain ERISA events.

**EXPENSES AND INDEMNIFICATION:** PurchaseCo shall pay (a) all expenses of OHP associated with the preparation, execution, delivery and administration of the Operating Agreement, prior Package and File purchase agreements, and any amendment or waiver with respect thereto (including the reasonable fees, disbursements and other charges of counsel) whether or not the transaction closes, (b) all expenses of OHP (including the fees, disbursements and other charges of counsel) in connection with the enforcement of the Operating Agreement and all ongoing business expenses of OHP (including but not limited to administration, tax, legal and accounting), (c) fees and expenses associated with other advisors and professionals engaged by OHP in connection with the PurchaseCo Operating Agreement, and (d) other related expenses incurred by OHP during the due diligence process.

The Operating Agreement will contain standard indemnification and exculpation language related to the members of PurchaseCo.

                                    CONFIDENTIAL

OHPLPG00073053

Nonbinding Term Sheet

| | |
|---|---|
| **GOVERNING LAW:** | This term sheet is, and the Operating Agreement will be, governed by the internal laws of the State of Delaware. |
| **WAIVER OF JURY TRIAL:** | In the Operating Agreement, each party will agree to a waiver of jury trial substantially similar in form and substance to the following: |
| | EACH PARTY HERETO HEREBY IRREVOCABLY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN ANY LEGAL PROCEEDING DIRECTLY OR INDIRECTLY ARISING OUT OF OR RELATING TO THIS AGREEMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY (WHETHER BASED ON CONTRACT, TORT OR ANY OTHER THEORY). EACH PARTY HERETO (A) CERTIFIES THAT NO REPRESENTATIVE, AGENT OR ATTORNEY OF ANY OTHER PERSON HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT SUCH OTHER PERSON WOULD NOT, IN THE EVENT OF LITIGATION, SEEK TO ENFORCE THE FOREGOING WAIVER AND (B) ACKNOWLEDGES THAT IT AND THE OTHER PARTIES HERETO HAVE BEEN INDUCED TO ENTER INTO THIS AGREEMENT BY, AMONG OTHER THINGS, THE MUTUAL WAIVERS AND CERTIFICATIONS IN THIS SECTION. |
| **VENUE:** | Wilmington, Delaware. |

CONFIDENTIAL

OHPLPG00073054

Nonbinding Term Sheet

Each of the parties hereby approves and adopts this Term Sheet as of _January 21_, 2020.

**B.A.T. Inc.**

By: _Arash Asante Bayrooti_
Name:
Title: _Chief Financial Officer_

**Coast Processing Principals, individually**

By: _____
Name:  Brian Reale

By: _____
Name:  Asante Bayrooti

By: _Mario Azevedo_
Name:  Mario Azevedo

**Old Hickory Partners – Coast, LP**

By:        Old Hickory GP, LLC,
           its general partner

By:        _____
Name:  Adam C. Blum
Title:   Manager

8                                CONFIDENTIAL

OHPLPG00073055

Nonbinding Term Sheet

<u>Exhibit A:</u>
<u>B.A.T. Inc. dba Coast Processing - Affiliate Agreement with ACB Holdings, LP, dated September 29, 2020</u>

CONFIDENTIAL

OHPLPG00073056

### B.A.T. Inc. dba Coast Processing - Affiliate Agreement

THIS AGREEMENT (the "Agreement") is made and effective as of this 29ᵗʰ of September, 2020 by and between B.A.T. Inc. dba Coast Processing ("BAT"), and **ACB Holdings, LP** ( "Purchaser"), and together with BAT's affiliated marketing team(s) (the "Affiliate").

RECITALS:

BAT is in the business of providing administrative support services for law firms providing a package debtor's rights services in the form of debt validation, consultation, and litigation defense through a duly licensed law firm The Litigation Practice Group PC ("LPG"). Among the services offered by BAT through LPG are the following:

- Removal of invalid debts through correspondence directly with the three credit bureaus;
- Validation of consumer debts through correspondence including disputes with original creditors, validation demands to third party debt collectors and assignees, and disputes with all three credit bureaus;
- Defense of collection actions initiated by original creditors or third party assignees;
- Negotiation of advantageous settlements of consumer debts both pre and post litigation;
- Protection from harassing collection practices, including but not limited to the initiation of actions under the Telephone Consumer Protection Act and Fair Debt Collection Practices Act; and
- Education of clients regarding federal laws applicable to consumer debt and credit reporting, and consultation regarding risk mitigation and litigation defense through its network of attorneys across the country.

Each of these services is offered without regard to the identity of the creditor or third-party debt collector or assignee. BAT reviews all client files prior to the execution of the client's legal services agreement with LPG, and maintains oversight through its administrative services over all file placements.

Affiliate owns and operates a system of generating leads consisting of consumers interested in the legal services offered by LPG through its agent, BAT. Affiliate, acting in accordance with direction from BAT, shall obtain the names of prospective consumers and will market in a lawful manner, complying with the restrictions of the jurisdiction in which the consumer resides. For consumers interested in utilizing BAT's services (a "Consumer"), Affiliate will assist Consumers execute an approved legal services agreement with [LPG] to which BAT provides administrative support services. Following execution of an approved legal services agreement, Consumers will become clients of [LPG], and LPG will be exclusively responsible for and liable for the representation of consumers in the context of the provision of legal services.

Pursuant to a separate agreement, BAT has acquired from Affiliate all right, title and interest to the payments owing to Affiliate from the client files of the Consumers listed on Addendum A (the "Client Files"). Purchaser desires to purchase from BAT, and BAT desires to sell to Purchaser, the Consumer payments associated with the Client Files. The parties hereto desire to enter into this Agreement to provide for the acquisition of the all right, title and interest to the payments owing to Affiliate (the "Payments") resulting from the Consumers under the Client Files.

OHPLPG00073057

BAT, Purchaser and Affiliate hereby agree to the following:

1.    Subject to the terms of this Agreement, each Party shall be solely responsible for bearing its own costs and expenses incurred in performing its responsibilities under this Agreement, including all tariffs, filings, licensing and/or other fees.

2.    Affiliate shall comply with state and federal laws in performing (a) its operations associated with the transactions contemplated herein and (b) its obligations under this agreement and any other agreement associated herewith, including communicating with Consumers regarding BAT or any of its programs.

3.    BAT shall comply with state and federal laws in performing (a) its operations associated with the transactions contemplated herein, (b) its obligations under this Agreement, and (c) the legal services agreement entered into between BAT and the Consumers referred by Affiliate.

4.    If requested by BAT, Affiliate shall provide a copy of all marketing materials to BAT upon receiving a request from BAT.  Affiliate shall endeavor to provide such materials within 10 business days of such request, but may provide such materials in any time frame that is commercially reasonable.

5.    Affiliate agrees to keep any and all documents or communications between itself and BAT/Purchaser confidential pursuant to the provisions set forth below.

6.    <u>Acquisition.</u>

    a.    BAT hereby grants, assigns, sells, conveys, transfers and delivers to Purchaser and Purchaser hereby accepts, assumes and receives from BAT, all of BAT's right, title and interest to the Payments (which represents 65% of the payments received by BAT for the Client Files) in exchange for PURCHASER remitting to BAT a fee of $437,750.00 (the "Purchase Price").

    b.    Following the execution of this Agreement and the payment of the Purchase Price, BAT shall pay 65% of the difference resulting from (1) each Payment per Client File for each Consumer listed on Addendum A to this Agreement, which represents all of Affiliate's right, title and interest to the Payments, less (2) the monthly maintenance fee of $91.38, which BAT shall retain to cover administrative costs for each Client File. BAT acknowledges Affiliate has placed the Consumers with BAT.  Payment of 65% of each Client File shall be made by BAT direct to PURCHASER, and no portion of the per Client File payment shall be made to Affiliate, upon receipt of such funds by BAT.

    c.    If BAT is required to refund payment for services to any Consumer, then Purchaser shall be responsible for returning the entirety of its fees collected on such Client File to BAT (in such percentage as is set forth herein).  BAT has exclusive discretion to grant or deny a requested refund or cancellation, subject to the terms of this Agreement.  BAT shall be entitled to offset any future payments to Purchaser in order to recover a refund awarded by BAT.

2

OHPLPG00073058

    d. The amounts paid from the Consumers for each Client File shall be receivables of PURCHASER, and Purchaser shall have an undivided interest in the whole of any receivable from BAT, such that it shall have a legal claim to such receivable.

7. Each of BAT, Affiliate and Purchaser have all requisite power and authority to execute and deliver this Agreement and the other documents contemplated hereby (the "Transaction Documents") to which it is a party, to consummate the transactions contemplated by this Agreement and the other Transaction Documents to which it is a party. All requisite actions on the part of BAT, Affiliate and Purchaser and their officers, managers and members necessary for the authorization, execution and delivery of this Agreement and the other Transaction Documents to which they are a party, and the performance of all obligations of such party hereunder and thereunder, has been taken. This Agreement and the other Transaction Documents to which each of BAT and Affiliate is a party have been duly and validly executed and delivered and constitute, assuming this Agreement and the other Transaction Documents to BAT and Affiliate are a party have been duly authorized, executed and delivered by the other parties thereto, valid and legally binding obligations of each of BAT and Affiliate, enforceable against each of them in accordance with their respective terms, subject to applicable bankruptcy or other similar Laws affecting the rights and remedies of creditors generally as well as to general principles of equity (regardless of whether such enforceability is considered in a proceeding in equity or at law). BAT represents and warrants to Purchaser that BAT has good and marketable title to, all Client Files and Affiliate has no right to receive any payment with respect to such Client Files. Each Consumer represented by the Client Files has made at least one of their required payments to BAT.

8. Each of BAT and Affiliate are in compliance in all material respects with all any federal, state, local or foreign law (including common law), statute, code, ordinance, rule, regulation or other requirement ("Law") applicable to its business or operations. Neither of BAT or Affiliate have received any written or other notice or been charged with the violation of any Laws. To the knowledge of BAT and Affiliate, neither is under investigation with respect to the violation of any Laws and, to the knowledge of BAT and Affiliate, there are no facts or circumstances which could form the basis for any such violation. BAT and Affiliate currently have all material approvals, authorizations, consents, licenses, permits or certificates which are required for the operation of the business as presently conducted ("Permits"). Neither BAT and Affiliate (i) are in default or violation (and no event has occurred which, with notice or lapse of time or both, would constitute a default or violation) of any term, condition or provision of the certificate of organization of the relevant party, and (ii) are in default or violation (and no event has occurred which, with notice or the lapse of time or both, would constitute a default or violation) in any material respect of any term, condition or provision of any Permit, to which the business is subject or by which its properties or assets are bound, and to the knowledge of the BAT and Affiliate, there are no facts or circumstances which could form the basis for any such default or violation.

9. No fee (other than the amount set forth Paragraph 6) shall be due from PURCHASER to either Affiliate or BAT, except the refund deduction set forth in Paragraph 10. PURCHASER shall be entitled to all payments due to Affiliate from the Client Files as described under Paragraph 6, without limitation. Neither BAT nor Affiliate may modify this Agreement without the express written consent of PURCHASER, which consent may be withheld for any reason without limitation.

3

10. BAT shall bear all expenses related to the services it offers to Consumers, and Affiliate shall bear all expenses related to its marketing of the same except as is set forth in this Paragraph. No expense shall be borne by PURCHASER. BAT reserves all rights with regard to rejection or cancellation of a Consumer, but will do so only in accordance with the recommendation of the law firm utilized in providing such service, subject to the applicable state bar rules for such representation and the consent of Purchaser. PURCHASER shall be responsible for its pro rata share of refunds issued to a client as the result of a cancellation, which refund shall be borne in proportion to PURCHASER's share of fees as set forth in Paragraph 6. Notwithstanding anything to the contrary in this Agreement, such refund shall be deducted from future remittance by PURCHASER, except that if all payments to PURCHASER have been complete, any refund issued by BAT to client shall be borne exclusively by BAT. To the extent a refund or cancellation is granted to a Consumer due to a breach of a representation, warranty or covenant set forth in this Agreement, the Purchase Price shall be reduced by the amount of the Purchase Price attributable to the refunded or cancelled Client File, as calculated by taking the total value of the relevant Client File divided by the aggregate value of all Client Files and multiplying such number by the Purchase Price.

11. BAT and Affiliate shall indemnify, defend and hold harmless the Purchaser and its successors and assigns, heirs, beneficiaries, legal and other representatives and affiliates, and each of their respective partners, members, shareholders, managers, directors, officers, employees and agents (collectively, the "Purchaser Group") from and against all claims, actions or causes of action, assessments, demands, losses, damages, judgments, fines, settlements, liabilities, costs and expenses, including interest, penalties and reasonable attorneys', experts' and accounting fees and expenses of any nature whatsoever (collectively, "Damages"), asserted against, suffered by, imposed upon or incurred by any member of the Purchaser Group to the extent caused by (a) BAT's, Affiliate's or LPG's actions or omissions in their business operations, or (b) a breach of any covenant, agreement, representation or warranty of BAT and Affiliate contained in this Agreement. The indemnity provided for in this Section 11 is not limited to third party claims against members of the Purchaser Group. This Section 11 shall survive the termination of this Agreement.

12. Notwithstanding anything to the contrary in this Agreement, prior to March 31, 2020, BAT shall not, and shall not allow any of its affiliates to, offer any client files or similar revenue generating opportunities to any other Person (as defined under applicable law) other than to Purchaser, except for any existing relationship for the acquisition of customer files; *provided, however,* if Purchaser elects to not participate in such opportunity or fails to respond to BAT or its applicable affiliate within ten (10) business days, BAT or its applicable affiliate will be permitted to enter into a transaction with a third-party purchaser. Any notice of a prospective business opportunity shall be delivered in writing by e-mail (read receipt requested) to adamblum@aol.com and kevin.yu93@gmail.com.

13. This Agreement shall continue in full force and effect until the conclusion of the payment term of the clients set forth in attached addenda. Those respective client lists are attached hereto as Addendum A, Addendum B, and Addendum C, and each represents a separate batch of clients delivered from separate marketing affiliates. The anticipated return on this investment is 22% to 27%, but no return is guaranteed. The anticipated return is based on the prior performance of other clients, but the performance of the clients contained in the packages attached as Addendum A, Addendum B, and

4

OHPLPG00073060

Addendum C is unknown, and no representation is made as to the likely performance of such clients. The parties agree that the use of the phrase "payment term" shall mean the total of all payments due from any client listed in Addendum A to BAT or Affiliate without limitation, and without regard to whether a modification of the agreement between such client and BAT shall have taken place. Upon the conclusion of all payments from all clients listed in Addendum A to BAT, and BAT's payment in turn to PURCHASER, this Agreement shall cease except that any term contemplated to extend beyond the completion of such term shall remain in full force and effect.

14.    Upon termination of this Agreement for any reason whatsoever, BAT, Purchaser and Affiliate will refrain, and will instruct their affiliates, officers, directors, employees, contractors and agents to refrain, from making any disparaging or negative comment, remark, statement, or implication, whether written or oral, about any party to this Agreement.

15. The confidential information of BAT, Purchaser or Affiliate shall include information regarding contracts, customer or client lists or information, employees, directors, officers, investors, hardware, software, screens, specifications, designs, plans, drawings, data, prototypes, discoveries, research, developments, methods, processes, procedures, improvements, 'Know-how', compilations, market research, marketing techniques and plans, marketing materials, business plans and strategies, documents, this Agreement, scripts, guidelines, price lists, pricing policies and financial information or other business and/or technical information and materials, in oral, demonstrative, written, graphic or machine-readable form, which is unpublished, not available to the general public or trade, and which is maintained as confidential and proprietary information by the disclosing party for regulatory, customer relations, and/or competitive reasons. None of BAT, Purchaser or Affiliate may disclose the confidential information of the other, the name of the other, or the existence of this Agreement without the express written consent of the applicable party. The disclosure of information in connection with a judicial or administrative proceeding shall not constitute a violation of this term. The parties hereto agree to notify the other if any inadvertent disclosure of information occurs within 48 hours of becoming aware of such disclosure, to the extent legally and practically permissible. The parties hereto agree to work together in good faith to remediate any disclosure of confidential information. A party whose confidential information is disclosed shall be entitled to injunctive relief in any court of competent jurisdiction.

16. Nothing in this Agreement nor in the eventual legal services agreement shall restrict Affiliate from offering any other service of any kind to Consumer, including credit repair or debt relief programs. The Affiliate is not restricted from marketing on behalf of debt settlement, debt consolidation, credit repair, or debt relief entities, including but not limited to other law firms. BAT and Affiliate hereby agree that any and all prior agreements entered into by BAT and Affiliate or any law firm to which BAT provides administrative support services and Affiliate are null and void and unenforceable, and this Agreement shall become the operative agreement for all files previously placed through the use of BAT's administrative support services.

17. This Agreement shall be governed by the laws of the State of California, and the Courts of the State of California, County of Orange, shall have exclusive subject matter jurisdiction over this Agreement. All parties hereto to this Agreement consent to the personal jurisdiction of the Superior Court of California, County of Orange, over such party.

5

OHPLPG00073061

18. Affiliate agrees not to use the name BAT in any advertising, publicity release, or sales presentation designed to promote Affiliate's service, unless BAT provides prior written consent to such specific use.

19. Any fees incurred by BAT in connection with a Consumer's Non-Sufficient Funds ("NSF") fee shall be borne mutually by both BAT and Purchaser if and only if the Consumer cancels the program after such NSF. To the extent the Consumer cancels the program after such NSF, Purchaser shall bear that portion of the NSF fee commensurate with its share of the per file fee set forth in Paragraph 6, above. This amount shall be deducted from the fees remitted to Purchaser in the month in which the client having an outstanding NSF charge cancels the program without remitting such NSF fee.

20. This Agreement may be assigned or transferred without the prior written consent of the other by PURCHASER. This Agreement shall be binding upon and shall inure to the benefit of the Parties hereto and their respective successors and assigns.

21. In the event of a breach, the party who prevails in any court proceeding shall be entitled to reasonable attorneys' fees and collection costs, including all fees and costs on appeal.

22. This Agreement contains the entire Agreement between the Parties hereto, and shall not be modified, amended or supplemented, or any rights therein waived, unless specifically agreed upon in writing by BAT, Purchaser and Affiliate.

[signature page follows on the next page]

6

OHPLPG00073062

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed by their duly authorized officers, all as of the day and year first above written.

**B.A.T. Inc.**

By: Brian Reale

Title: Chief Executive Officer

ACB Holdings, LP

By:

Name: Adam C. Blum

Title: Manager

7

OHPLPG00073063

### Electronic Funds Transfer Authorization

This Electronic Funds Transfer (EFT) authorization is for use in connection with the foregoing Agreement, and permits BAT to transfer any and all amounts due to ("PURCHASER") under the foregoing Agreement by EFT. By signing below, PURCHASER hereby authorizes BAT to initiate EFT transfers at its discretion, with all fees and costs incurred by PURCHASER in connection with such transfer to be borne by PURCHASER, while all fees and costs incurred by BAT in connection with such transfer to be borne by BAT.

Account Holder Signature:   Date: 01-OCT-2020

By:      ADAM BLUM
         VICE PRESIDENT OF ACB HOLDINGS
         MANAGEMENT, LLC, ITS GENERAL
Title:   PARTNER

Account Owner Name: ACB HOLDINGS LP

Social Security Number / FEIN Number associated with account listed below:

Address:
         777 MAIN ST STE 550
         FORT WORTH, TX 76102
                            817-710-7073
City:    State:  Zip: Tel:

Bank Name:       BANK OF TEXAS
Routing Number:
Account Number:
                 CHECKING
Account type :

8

OHPLPG00073064

# ADDENDUM A

OHPLPG00073065

| Company | Enrolled Date | Monthly Payment | First Payment Date | Debt Enrolled | Fees % | State | Program Length | Frequency | Total Program Cost | Current Status | Total Payments Cleared | Payments Cleared |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Benefit 1st Financial | Jan 21, 2020 | $ 241.50 | Aug 04, 2020 | $ 11,548.00 | 40% | TN | 29.00 | Monthly | $ 7,033.54 | Active Pla | $ 323.74 | 2 |
| Benefit 1st Financial | Jul 29, 2020 | $ 250.97 | Aug 04, 2020 | $ 1,446.00 | 40% | NY | 5.00 | Monthly | $ 1,254.26 | Active Pla | 500.32 | 2 |
| Benefit 1st Financial | Jun 24, 2020 | 278.24 | Aug 19, 2020 | 25,000.00 | 40% | TN | 50.25 | Monthly | 5,844.44 | Active Pla | 557.48 | 2 |
| Benefit 1st Financial | Jul 20, 2020 | 254.00 | Jul 22, 2020 | 9,523.00 | 40% | CA | 40.00 | Monthly | 6,249.50 | Active Pla | 525.00 | 2 |
| Benefit 1st Financial | Jan 17, 2020 | 525.34 | Aug 20, 2020 | 13,680.00 | 40% | PA | 32.00 | Monthly | 8,023.95 | Active Pla | 561.88 | 2 |
| Benefit 1st Financial | Jan 17, 2020 | 548.64 | Jul 20, 2020 | 41,185.00 | 40% | MS | 76.00 | Monthly | 13,742.60 | Active Pla | 1,094.48 | 2 |
| Benefit 1st Financial | Jul 09, 2020 | 514.13 | Aug 18, 2020 | 35,560.00 | 40% | OH | 65.90 | Monthly | 13,513.09 | Active Pla | 1,029.28 | 2 |
| Benefit 1st Financial | Jun 30, 2020 | 367.44 | Aug 17, 2020 | 24,854.00 | 40% | NY | 29.00 | Monthly | 12,339.42 | Active Pla | 735.80 | 3 |
| Benefit 1st Financial | Jul 02, 2020 | 251.83 | Jul 27, 2020 | 12,356.00 | 35% | KY | 28.25 | Monthly | 7,301.92 | Active Pla | 502.04 | 2 |
| Benefit 1st Financial | Sep 11, 2020 | 264.27 | Jul 28, 2020 | 14,050.00 | 35% | PA | 42.90 | Monthly | 8,024.71 | Active Pla | 529.64 | 3 |
| Benefit 1st Financial | Aug 27, 2020 | 261.85 | Sep 14, 2020 | 8,705.01 | 30% | PA | 41.00 | Monthly | 5,723.49 | Active Pla | 323.96 | 3 |
| Benefit 1st Financial | Aug 24, 2020 | 265.63 | Jan 07, 2020 | 7,142.00 | 40% | AZ | 9.00 | Monthly | 4,416.25 | Active Pla | 278.63 | 3 |
| Benefit 1st Financial | Apr 09, 2020 | 1,406.08 | Aug 23, 2020 | 54,145.00 | 40% | NJ | 25.00 | Monthly | 15,147.20 | Active Pla | 1,654.09 | 3 |
| Benefit 1st Financial | Feb 11, 2020 | 307.95 | Sep 10, 2020 | 22,122.00 | 37% | MA | 42.00 | Monthly | 14,837.77 | Active Pla | 349.16 | 2 |
| Benefit 1st Financial | Aug 18, 2020 | 795.18 | Sep 08, 2020 | 17,139.00 | 35% | PA | 24.00 | Monthly | 8,251.96 | Active Pla | 790.00 | 3 |
| Benefit 1st Financial | Aug 26, 2020 | 385.89 | Aug 17, 2020 | 9,447.00 | 40% | NY | 13.00 | Monthly | 5,088.04 | Active Pla | 278.96 | 3 |
| Benefit 1st Financial | Aug 09, 2020 | 381.48 | Aug 31, 2020 | 28,174.00 | 37% | OK | 43.00 | Monthly | 14,925.74 | Active Pla | 362.26 | 1 |
| Benefit 1st Financial | Jul 31, 2020 | 388.93 | Jul 28, 2020 | 12,347.00 | 40% | CA | 23.00 | Monthly | 7,842.50 | Active Pla | 304.93 | 2 |
| Benefit 1st Financial | Jul 29, 2020 | 1,174.59 | Aug 05, 2020 | 110,087.00 | 40% | SA | 34.00 | Monthly | 40,325.54 | Active Pla | 1,214.08 | 1 |
| Benefit 1st Financial | Jul 09, 2020 | 390.74 | Aug 24, 2020 | 10,118.00 | 37% | SA | 38.00 | Monthly | 5,396.52 | Active Pla | 299.24 | 2 |
| Benefit 1st Financial | Jul 27, 2020 | 265.29 | Aug 11, 2020 | 12,058.00 | 40% | OH | 23.00 | Monthly | 6,689.27 | Active Pla | 267.21 | 1 |
| Benefit 1st Financial | Jul 13, 2020 | 715.15 | Aug 18, 2020 | 89,495.00 | 37% | CA | 46.00 | Monthly | 28,626.04 | Active Pla | 715.15 | 1 |

**Total Debt  $ 702,085.02**

OHPLPG00073066

# ADDENDUM B

OHPLPG00073067

OHPLPG00073068

**Total Debt** $ 2,974,910.49

OHPLPG00073069

# ADDENDUM C

OHPLPG00073070

OHPLPG00073071

Total Debt   $ 1,089,205.99

OHPLPG00073072

Message

| **From**: | Kevin Yu [kevin.yu93@gmail.com] |
|---|---|
| **on behalf of** | Kevin Yu <kevin.yu93@gmail.com> [kevin.yu93@gmail.com] |
| **Sent**: | 1/12/2021 8:47:40 PM |
| **To**: | Tony Diab [tony@coastprocessing.com]; Adam Blum [AdamBlum@aol.com] |
| **Subject**: | Re: Coast-OHP Term Sheet |

Hi Tony,

Any updates on this?


Kevin Yu
kevin.yu93@gmail.com
(512) 888-8897


On Fri, Jan 8, 2021 at 5:50 PM Kevin Yu <kevin.yu93@gmail.com> wrote:
> Hi Tony,
>
> See attached for revised term sheet and redline. Please let us know if this is agreeable and we can proceed with execution.
>
> Thanks,
>
>
>
> Kevin Yu
> kevin.yu93@gmail.com
> (512) 888-8897


On Fri, Jan 8, 2021 at 1:49 PM Kevin Yu <kevin.yu93@gmail.com> wrote:
> Apologies, forgot to pass this along yesterday. See attached for our proposed term sheet redlined to your last draft.
>
> Thanks,
>
>
>
> Kevin Yu
> kevin.yu93@gmail.com
> (512) 888-8897


On Thu, Jan 7, 2021 at 3:49 PM Tony Diab <tony@coastprocessing.com> wrote:
> Ok, thanks!  Can we pencil in 1:30 pm Pacific tomorrow?
>
> Thanks!

EXHIBIT 508

OHPLPG00073073

On Thu, Jan 7, 2021 at 1:48 PM Kevin Yu <kevin.yu93@gmail.com> wrote:

Hi Tony,

We caught up with our counsel, are you free at or after 1 PM PST tomorrow (Friday) to talk with them?

We are generally okay with most of your changes, but given the carte blanche to operate outside of PurchaseCo, we felt the need to shore up the ROFR. I think it's probably more efficient to keep it small between the lawyers and focus on making sure the legal language is accomplishing our intentions. From an economic perspective, we don't believe we've altered anything and given all of our previous discussions we were cognizant to ensure that:

1) Everything has a cure period to prevent any "gotchas"
2) There is no scenario where OHP is entitled to anything beyond the return of our Funding Capital and 30% of remaining equity

Finishing up a few last edits and will circulate the revisions shortly.

Thanks,


Kevin Yu
kevin.yu93@gmail.com
(512) 888-8897


On Thu, Dec 24, 2020 at 9:32 PM Tony Diab <tony@coastprocessing.com> wrote:

Revision per our conversation.  Please let me know as soon as you speak with your team on the issue we identified, and then we can set up a call with the group.  Asante and Brian would like to reach a resolution point as soon as possible.

Thanks!

On Thu, Dec 17, 2020 at 12:11 PM Kevin Yu <kevin.yu93@gmail.com> wrote:

Sure. See attached.


Kevin Yu
kevin.yu93@gmail.com
(512) 888-8897


On Thu, Dec 17, 2020 at 1:43 PM Tony Diab <tony@coastprocessing.com> wrote:

Hi Kevin -

Can you send as a word document, a few proposed revisions.

Thanks!

On Wed, Dec 16, 2020 at 1:54 PM Kevin Yu <kevin.yu93@gmail.com> wrote:

Hi all,

OHPLPG00073074

Happy to share with y'all the term sheet. I believe we've gone through almost every bit of this at least verbally so there shouldn't be any surprises. Please let us know if y'all have any questions, comments, or concerns.

Thanks,


Kevin Yu
kevin.yu93@gmail.com
(512) 888-8897
--
Coast Processing
1351 Calle Avanzado
Suite 2
San Clemente, CA 92673
949.229.6262, ext. 1013
tony@coastprocessing.com


--
Coast Processing
1351 Calle Avanzado
Suite 2
San Clemente, CA 92673
949.229.6262, ext. 1013
tony@coastprocessing.com


--
Coast Processing
1351 Calle Avanzado
Suite 2
San Clemente, CA 92673
949.229.6262, ext. 1013
tony@coastprocessing.com

OHPLPG00073075

Message

| | |
|---|---|
| **From**: | Kevin Yu [kevin.yu93@gmail.com] |
| on behalf of | Kevin Yu <kevin.yu93@gmail.com> [kevin.yu93@gmail.com] |
| **Sent**: | 1/8/2021 11:50:30 PM |
| **To**: | Tony Diab [tony@coastprocessing.com]; Adam Blum [AdamBlum@aol.com] |
| **Subject**: | Re: Coast-OHP Term Sheet |
| **Attachments**: | Redline - Old Hickory - Coast Processing -Term sheet (1).pdf; Old Hickory - Coast Processing -Term sheet 4811-7258-7475 6.pdf |

Hi Tony,

See attached for revised term sheet and redline. Please let us know if this is agreeable and we can proceed with execution.

Thanks,



Kevin Yu
kevin.yu93@gmail.com
(512) 888-8897


On Fri, Jan 8, 2021 at 1:49 PM Kevin Yu <kevin.yu93@gmail.com> wrote:
  Apologies, forgot to pass this along yesterday. See attached for our proposed term sheet redlined to your last draft.

  Thanks,



  Kevin Yu
  kevin.yu93@gmail.com
  (512) 888-8897


On Thu, Jan 7, 2021 at 3:49 PM Tony Diab <tony@coastprocessing.com> wrote:
  Ok, thanks!  Can we pencil in 1:30 pm Pacific tomorrow?

  Thanks!

On Thu, Jan 7, 2021 at 1:48 PM Kevin Yu <kevin.yu93@gmail.com> wrote:
  Hi Tony,

  We caught up with our counsel, are you free at or after 1 PM PST tomorrow (Friday) to talk with them?

  We are generally okay with most of your changes, but given the carte blanche to operate outside of PurchaseCo, we felt the need to shore up the ROFR. I think it's probably more efficient to keep it small between the lawyers and focus on making sure the legal language is accomplishing our intentions. From an economic perspective, we don't believe we've altered anything and given all of our previous discussions we were cognizant to ensure that:

EXHIBIT 509

1) Everything has a cure period to prevent any "gotchas"
2) There is no scenario where OHP is entitled to anything beyond the return of our Funding Capital and 30% of remaining equity

Finishing up a few last edits and will circulate the revisions shortly.

Thanks,


Kevin Yu
kevin.yu93@gmail.com
(512) 888-8897


On Thu, Dec 24, 2020 at 9:32 PM Tony Diab <tony@coastprocessing.com> wrote:
> Revision per our conversation.  Please let me know as soon as you speak with your team on the issue we
> identified, and then we can set up a call with the group.  Asante and Brian would like to reach a resolution
> point as soon as possible.
>
> Thanks!
>
> On Thu, Dec 17, 2020 at 12:11 PM Kevin Yu <kevin.yu93@gmail.com> wrote:
>> Sure. See attached.
>>
>>
>> Kevin Yu
>> kevin.yu93@gmail.com
>> (512) 888-8897
>>
>>
>> On Thu, Dec 17, 2020 at 1:43 PM Tony Diab <tony@coastprocessing.com> wrote:
>>> Hi Kevin -
>>>
>>> Can you send as a word document, a few proposed revisions.
>>>
>>> Thanks!
>>>
>>> On Wed, Dec 16, 2020 at 1:54 PM Kevin Yu <kevin.yu93@gmail.com> wrote:
>>>> Hi all,
>>>>
>>>> Happy to share with y'all the term sheet. I believe we've gone through almost every bit of this at least
>>>> verbally so there shouldn't be any surprises. Please let us know if y'all have any questions, comments, or
>>>> concerns.
>>>>
>>>> Thanks,
>>>>
>>>>
>>>> Kevin Yu
>>>> kevin.yu93@gmail.com

(512) 888-8897
--
Coast Processing
1351 Calle Avanzado
Suite 2
San Clemente, CA 92673
949.229.6262, ext. 1013
tony@coastprocessing.com


--
Coast Processing
1351 Calle Avanzado
Suite 2
San Clemente, CA 92673
949.229.6262, ext. 1013
tony@coastprocessing.com


--
Coast Processing
1351 Calle Avanzado
Suite 2
San Clemente, CA 92673
949.229.6262, ext. 1013
tony@coastprocessing.com

OHPLPG00073078

Nonbinding Term Sheet

## COAST PROCESSING
## INDICATIVE SUMMARY OF TERMS AND CONDITIONS

This Indicative Summary of Terms and Conditions is intended only as an outline of certain of the material terms of the proposed operating agreement (the "Operating Agreement") for PurchaseCo, a Delaware limited liability company to be jointly owned and managed by Old Hickory Partners – Coast, L.P. ("OHP") and B.A.T. Inc. dba Coast Processing and its principals Brian Reale, Asante Bayrooti and Mario Azevedo ("Coast," and together with OHP, the "PurchaseCo Parties") and does not purport to summarize all of the conditions, covenants, representations, warranties and other provisions that would be contained in definitive documentation for the structure of the Operating Agreement contemplated hereby.

| | |
|---|---|
| **PURCHASECO ENTITY:** | The PurchaseCo Parties will establish PurchaseCo, a Delaware limited liability company to be jointly owned and managed by OHP and Coast for the exclusive purpose of purchasing all future cash flow streams from individual receivables (collectively, "Packages") sourced by Coast and its Affiliates, and to receive cash flows therefrom. |
| **OWNERSHIP:** | Each PurchaseCo Party's respective interest in PurchaseCo ("Ownership Interest") is as follows:<br><br>Coast – 70%<br>OHP – 30% |
| **CAPITALIZATION:** | Prior to commencing operations at PurchaseCo, the PurchaseCo Parties will capitalize PurchaseCo with $300,000.00 of equity, pro rata, according to the Ownership Interests (the "Equity Investment"):<br><br>Coast – $210,000.00<br>OHP – $90,000.00<br><br>One time per month, PurchaseCo can issue an additional capital call request to OHP for the sole purpose of funding the purchase of Eligible Receivables (as hereinafter defined) that PurchaseCo's cash on hand cannot fund (the "Funding Capital"). The PurchaseCo Parties agree that OHP's Ownership Interest in PurchaseCo will not exceed 30%, except in certain circumstances to be described in the Operating Agreement, and is not adjusted by its contributions of Funding Capital.<br><br>OHP's Funding Capital is available over 5 years in the amount of $10 million (the "Commitment"); provided that during the first 6 months starting from the Closing Date (as hereinafter defined), availability of Funding Capital shall be limited to $5 million, and that the first advance of Funding Capital shall be limited to $2 million.  Any distributions of Funding Capital to OHP are subject to reinvestment by PurchaseCo to fund additional Eligible Receivables. The Commitment term and size can be increased at OHP's option.<br><br>PurchaseCo's ability to call Funding Capital shall be subject to certain restrictions set forth in the Operating Agreement, including the Cost Basis of Eligible Receivables measured as of the last day of the prior month (the "Funding Base"). The Funding Base as of any date of determination shall be an amount equal to 100% of the Cost Basis of Eligible Receivables.  The "Cost Basis" of Eligible Receivables refers to the amount paid to Affiliates for a File (as hereinafter defined) or Packages.  For the purposes of calculating the Funding Base, Eligible Receivables shall also include any Files or Packages contracted with Affiliates and approved for purchase by PurchaseCo in the current month.  To the extent that the outstanding amount of the Funding Capital exceeds the Funding Base (a "Funding Base |

CONFIDENTIAL

4811-7258-7475v.2 62697-19

OHPLPG00073079

Nonbinding Term Sheet

Deficiency"), PurchaseCo shall immediately pay OHP in an amount sufficient to eliminate the Funding Base Deficiency.

"Eligible Receivables" shall mean any payment stream from a File (or collectively, a Package for a given month) that satisfies either of the following conditions: (a) receives unanimous consent for purchase by all the PurchaseCo Parties, or (b) meets the following criteria: (1) such receivable has had at least its first payment made, and (2) such receivable has a purchase cost of less than the lesser of (i) 40% of the total expected cash flows to be collected over the term of the File or Package (prior to management fee or cancellations), or (ii) 7.5% of the total gross balance of debt enrolled per File or Package.

**CONDITIONS PRECEDENT:**

The creation of PurchaseCo will be subject to satisfaction of the conditions precedent deemed appropriate by OHP for the an alignment of interest between the PurchaseCo Parties, defined as the following:

Coast shall certify that Brian Reale, Asante Bayrooti and Mario Azevedo (the "Principals") individually and their other Package-buying entities, including but not limited to ABR Enterprises, LLC, Freedom Enrollment, and any trusts or entities owned, managed by, or for the benefit of the Principals or their affiliates (the "Coast Entities"), shall not engage in the purchase of any new Packages that meet the criteria of an Eligible Receivable, unless OHP first declines to provide Funding Capital for the specific Package.

The execution of the Operating Agreement will also be subject to satisfaction of the conditions precedent deemed appropriate by OHP for transactions of this type generally and for this transaction in particular, including, but not limited to, the following:

- OHP shall have received from PurchaseCo all fees required to be paid and all expenses for which invoices have been presented.

- All governmental and third party approvals necessary in connection with the transaction(s) contemplated hereby and the continuing operations of PurchaseCo, Coast and its subsidiaries (including shareholder approvals, if any) shall have been obtained on satisfactory terms and shall be in full force and effect.

- OHP shall have received such closing documents as are customary for transactions of this type or as it may reasonably request, including but not limited to resolutions, good standing certificates, incumbency certificates, organizational documents, consents, and financing statements or similar filings, all in form and substance acceptable to OHP and its counsel.

The date on which the PurchaseCo Parties execute the Operating Agreement shall be referred to as the "Closing Date."

**PURCHASECO OPERATIONS:**

PurchaseCo will purchase, from lead generating and marketing companies affiliated with Coast ("Affiliates"), cash flow streams that represent the Affiliate's entire interest in customer payments for debt validation services ("Files"). All Files purchased within a calendar month will be collectively called a "Package." Files will be funded from the following capital sources of PurchaseCo, in order of availability:

1) Available cash on hand at PurchaseCo (retaining a minimum Cash (as hereinafter defined) balance of $25,000.00 at all times);
2) Funding Capital, up to the Commitment amount (one draw per month maximum); and

2                                    CONFIDENTIAL

OHPLPG00073080

Nonbinding Term Sheet

3) Equity infusion from the PurchaseCo Parties in proportion to the Ownership Interests.

Coast will manage the day-to-day operations of PurchaseCo and will administer all Package collections and management of the Files, with the help of a fund administrator (to be hired by PurchaseCo if so requested by OHP). Collections and management will operate substantially similar to the collections and management of current Packages of Files sold to third parties and as detailed in that certain B.A.T. Inc. dba Coast Processing - Affiliate Agreement with ACB Holdings, LP, dated September 29, 2020 (Exhibit A), including, but not limited to, the monthly maintenance fee and refund clawback mechanics.  At any time, OHP may request that PurchaseCo and Coast engage a backup servicer to onboard in preparation for one day taking over PurchaseCo's servicing and collections should, in OHP's determination, Coast not be able to fulfill such duties.  The Principals will be the primary negotiators with each Affiliate for the terms of Package or File purchases on behalf of PurchaseCo, and Coast, as well as the Coast Entities, will act at all times with a fiduciary duty first and foremost to PurchaseCo.  Any commission income due or received by any of Coast, the Principals,  or its affiliates, related to the purchase of Files or Packages funded by PurchaseCo, shall be contributed to PurchaseCo and deemed income of PurchaseCo and not part of Coast's equity contributions to PurchaseCo.  Should Coast or its affiliates ever create an Affiliate, Package- or File-buying entity or any other similar entity or joint venture  (such business to be determined to be a similar business in OHP's reasonable discretion) that is owned or managed, directly or indirectly, by Coast or the Principals or affiliates, Coast will notify the PurchaseCo Parties in advance and will provide all reasonable disclosures as requested by the PurchaseCo Parties on a continuing and ongoing basis, including evidence that such business does not violate the terms of the Operating Agreement or any other contract among the PurchaseCo Parties and their assigns.

Each of OHP and Coast will appoint a manager to represent its interests at PurchaseCo.  Authorization from both Managers representing the PurchaseCo Parties shall be required for certain business operations including, but not limited to, bank outflows (dual authorization required for any disbursements), debt drawdowns, debt prepayments, equity distributions, any raises of debt or equity or issuance/purchase of securities, annual budgeting, tax matters, any acquisition or sale of assets (except in the normal course), initiation or responses to any litigation, and other major activities deemed as such by OHP in its reasonable discretion (collectively "Major Decisions").  The PurchaseCo Parties hereby agree that the exclusive capital provider to PurchaseCo shall be OHP and its assigns, Coast, and the Principals.

**RIGHT OF FIRST REFUSAL:**

For so long as PurchaseCo has not been wound down, PurchaseCo will have a right of first offer for any and all Files or Packages related to a Coast customer, that of an Affiliate, an affiliate of Coast or a Principal of Coast. Should OHP decline to have PurchaseCo fund payments associated with a complete Package, then the Package may be offered to any other party, provided such offer be made on the same economic and qualitative terms (in OHP's reasonable discretion) as those offered to PurchaseCo. At no time shall Coast, an affiliate of Coast or a Principal of Coast present a File or a Package to any third-party prior to presentation to PurchaseCo and OHP and the rejection of such File or Package (subject to the immediately following sentence) by OHP.  To the extent PurcahseCo is presented certain Files, but

3                              CONFIDENTIAL

Nonbinding Term Sheet

not a complete Package, any rejection of such Files by OHP shall not permit that such Files may be offered to any other party, until such time as OHP rejects the entire Package. Following a rejection of a Package, if any terms change for the acquisition of such Package, OHP (on PurchaseCo's behalf) must be presented with the revised terms for such Package with the opportunity to acquire such Package. The right of first offer set forth in this section shall continue regardless of default under the terms of the Operating Agreement or other definitive documents or of the number of times OHP has rejected Packages presented to PurchaseCo. In the event that OHP accepts a transaction, but PurchaseCo or Coast is in default of any agreement involving OHP, then OHP may, in its discretion, have such File or Package accounted for separately from all previously acquired Files or Packages or have such Files or Packages acquired by a different entity than PurchaseCo that may be owned and controlled by OHP.

**DISTRIBUTIONS:**

At such time as a distribution is made by PurchaseCo to the PurchaseCo Parties, the "waterfall" would work as follows:

1. First, to OHP until such time as OHP has received a return of all Funding Capital contributed to PurchaseCo;
2. Next, to OHP until such time as OHP has received a return of its Equity Investment in PurchaseCo;
3. Next, to Coast until Coast has received a return of all of its Equity Investment in PurchaseCo; and
4. Thereafter, to the PurchaseCo Parties pro rata according to Ownership Interests.

**CONDITIONS PRECEDENT TO EACH ADVANCE OF FUNDING CAPITAL:**

In advance of each monthly funding request, Coast agrees to furnish to OHP, with at least two weeks' notice, a report, in a form to be agreed upon by the PurchaseCo Parties, which includes but is not limited to historical and projected performance statistics of Files purchased, organized by Affiliate. Funding of each monthly Funding Capital advance request is subject to OHP's receipt of and approval of such report, such approval not to be unreasonably withheld. Any nonresponse within forty-eight (48) hours of such receipt is deemed to be an approval of such report.

The making of each monthly contribution of Funding Capital shall further be conditioned upon (a) the accuracy of certain material representations and warranties which the PurchaseCo Parties shall set forth in the Operating Agreement following a further meet and confer on the subject; (b) there being no breach of any covenants in the Operating Agreement nor any Events of Default (as further defined below) in existence at the time of, or after giving effect to, the making of, such contributions of Funding Capital; (c) there being no material adverse change in PurchaseCo's or Coast's business practices in existence at the time of, or after giving effect to the making of, such Funding Capital advance, except that Coast has sole discretion to control the manner in which its validation program is operated (the PurchaseCo Parties shall define the scope of a material adverse change in business practices in further detail as part of the Operating Agreement); and (d) after giving effect to the contribution of Funding Capital, the total outstanding balance of the Funding Capital to PurchaseCo shall not exceed the lesser of the Commitment or the Funding Base then in effect.

**FUNDING CAPITAL COVENANTS:**

The financial covenants under the Operating Agreement governing the Funding Capital shall be as follows:

- PurchaseCo shall not permit the Cancellation Rate (as hereinafter defined)

4                                          CONFIDENTIAL

OHPLPG00073082

of any monthly Package, or across all owned Files, to be greater than 40%, tested at the end of each calendar month; and

- PurchaseCo's Cash balance shall at all times be at least $25,000.00.

"Cancellation Rate" means, as of any date of determination thereof, an amount, expressed as a percentage, equal to (a) the total dollar amount of undiscounted expected future cash flows from Files cancelled, written off, or greater than 60 days overdue, divided by (b) the total dollar amount of undiscounted received and expected future cash flows from all Files.

"Cash" shall mean cash or cash equivalents of a person, (a) that are not, and are not required to be, designated as "restricted" on the financial statements of such person, (b) that are not contractually required, and have not been contractually committed by such person, to be used for a specific purpose, (c) that are not subject to (i) any provision of law, statute, rule or regulation, (ii) any provision of the organizational documents of such person, or (iii) any order of any governmental authority, (d) in which no person has a lien, and (e) that are held in a deposit account or securities account, as applicable, in which OHP has direct access.

A violation of either of these covenants shall entitle OHP to, in its sole discretion: (a) withhold future investment notwithstanding any representation to the contrary without waiving its ROFO/ROFR, (b) accelerate the repayment of Funding Capital to OHP pursuant to the Distributions section above, and (c) gain sole authority over any institute a "freeze" on the bank account(s) whereby no transaction may be made from the bank account(s) of PurchaseCo.

**REPRESENTATIONS AND WARRANTIES:**

The Operating Agreement shall contain representations and warranties customary for transactions of this type and other terms deemed appropriate by OHP, including with respect to licenses, permits and compliance with law.

**AFFIRMATIVE COVENANTS:**

The affirmative covenants applicable to PurchaseCo and its subsidiaries shall include, without limitation, the following: delivery to PurchaseCo Parties of monthly, quarterly and annual financial statements of Coast and PurchaseCo; annual audits with unqualified opinions of PurchaseCo and Coast; access to real-time performance of packages; delivery of monthly projections by Coast for OHP's expected advances of Funding Capital; payment of obligations; continuation of business and maintenance of existence and material rights and privileges; compliance with laws and material contractual obligations and obtainment and maintenance of any and all applicable licenses with proper authorities, if any, by both Coast and PurchaseCo; accuracy of information; maintenance of property and general liability insurance; maintenance of books and records; right of OHP to inspect property and books and records of Coast and PurchaseCo; notices of defaults and notice of formal service of lawsuits against PurchaseCo and Coast; continued unrestricted access provided to OHP of all PurchaseCo's bank accounts; use of proceeds of Funding Capital; and all or substantially all of professional time of Coast's senior management devoted to the management of the business of Coast and PurchaseCo.

**NEGATIVE COVENANTS:**

The negative covenants applicable to PurchaseCo and its subsidiaries shall include, without limitation, limitations on the following (subject to exceptions, as appropriate, to be negotiated and including the specific exceptions set forth herein):

- indebtedness (including guarantee obligations);

CONFIDENTIAL

Nonbinding Term Sheet

- liens;
- fundamental changes (including mergers, consolidations, liquidations, dissolutions, and divisions; changes in fiscal year and changes in line of business; transfers of interests; issuances of securities);
- investments;
- dispositions of assets outside the normal course;
- payment of restricted payments (including dividends and other payments in respect of equity interests);
- negative pledge clauses on the PurchaseCo Parties; or
- amendment of material documents.

**EVENTS OF DEFAULT:** Following an Event of Default (as hereinafter defined) and any reasonable cure periods (as further described and agreed upon in the Operating Agreement), the Commitment shall, at the sole discretion of OHP, be reduced to $0.00, and OHP shall take sole control over PurchaseCo, any managers of PurchaseCo appointed by Coast will be removed as a manager, and OHP shall cause all assets of PurchaseCo, including existing cash and any cash from receivables owned by PurchaseCo, to be distributed directly to OHP until OHP's Funding Capital and Equity Investment are fully repaid. Following full repayment of OHP's Funding Capital and Equity Investment, PurchaseCo's operations and ownership shall revert as if such Event of Default had not occurred. An "Event of Default" includes, without limitation: nonpayment of fees or other amounts when due under any purchase agreement or the Operating Agreement; representations and warranties set forth in the Operating Agreement becoming incorrect in any material respect (the PurchaseCo Parties shall define the scope of relevant representations and warranties and materiality thresholds related thereto in further detail as part of the Operating Agreement); subject to reasonable cure periods; violation of covenants (subject, in the case of certain affirmative covenants, to a commercially reasonable cure period to be agreed upon); occurrence of a default (whether or not resulting in acceleration) under any agreement governing indebtedness, in excess of an amount to be agreed upon, of PurchaseCo; bankruptcy events of PurchaseCo, Coast or the Principals; conviction or guilty or nolo contendere pleas of a criminal offense or civil judgment in excess of $50,000.00 of PurchaseCo, Coast or any of the Principals; and certain ERISA events.

**EXPENSES AND INDEMNIFICATION:** PurchaseCo shall pay (a) all expenses of OHP associated with the preparation, execution, delivery and administration of the Operating Agreement, prior Package and File purchase agreements, and any amendment or waiver with respect thereto (including the reasonable fees, disbursements and other charges of counsel) whether or not the transaction closes, (b) all expenses of OHP (including the fees, disbursements and other charges of counsel) in connection with the enforcement of the Operating Agreement and all ongoing business expenses of OHP (including but not limited to administration, tax, legal and accounting), (c) fees and expenses associated with other advisors and professionals engaged by OHP in connection with the PurchaseCo Operating Agreement, and (d) other related expenses incurred by OHP during the due diligence process.

The Operating Agreement will contain standard indemnification and exculpation language related to the members of PurchaseCo.

6                         CONFIDENTIAL

OHPLPG00073084

Nonbinding Term Sheet

**GOVERNING LAW:**   This term sheet is, and the Operating Agreement will be, governed by the internal laws of the State of Delaware.

**WAIVER OF JURY TRIAL:**   In the Operating Agreement, each party will agree to a waiver of jury trial substantially similar in form and substance to the following:

EACH PARTY HERETO HEREBY IRREVOCABLY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN ANY LEGAL PROCEEDING DIRECTLY OR INDIRECTLY ARISING OUT OF OR RELATING TO THIS AGREEMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY (WHETHER BASED ON CONTRACT, TORT OR ANY OTHER THEORY). EACH PARTY HERETO (A) CERTIFIES THAT NO REPRESENTATIVE, AGENT OR ATTORNEY OF ANY OTHER PERSON HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT SUCH OTHER PERSON WOULD NOT, IN THE EVENT OF LITIGATION, SEEK TO ENFORCE THE FOREGOING WAIVER AND (B) ACKNOWLEDGES THAT IT AND THE OTHER PARTIES HERETO HAVE BEEN INDUCED TO ENTER INTO THIS AGREEMENT BY, AMONG OTHER THINGS, THE MUTUAL WAIVERS AND CERTIFICATIONS IN THIS SECTION.

**VENUE:**   ~~Orange County, California.~~ Wilmington, Delaware.

7                                         CONFIDENTIAL

OHPLPG00073085

Nonbinding Term Sheet

Each of the parties hereby approves and adopts this Term Sheet as of _____, 2020.

**B.A.T. Inc.**

By: _____
Name: _____
Title: _____

**Coast Processing Principals, individually**

By: _____
Name:  Brian Reale

By: _____
Name:  Asante Bayrooti

By: _____
Name:  Mario Azevedo

**Old Hickory Partners – Coast, LP**

By:      Old Hickory GP, LLC,
         its general partner

By: _____
Name:  Adam C. Blum
Title:  Manager

8                                    CONFIDENTIAL

Nonbinding Term Sheet

<u>Exhibit A:</u>

<u>B.A.T. Inc. dba Coast Processing - Affiliate Agreement with ACB Holdings, LP, dated September 29, 2020</u>

CONFIDENTIAL

OHPLPG00073087

Document comparison by Workshare 10.0 on Friday, January 8, 2021 5:10:53 PM

| Input: | |
|---|---|
| Document 1 ID | netdocuments://4811-7258-7475/5 |
| Description | Old Hickory - Coast Processing -Term sheet |
| Document 2 ID | netdocuments://4811-7258-7475/6 |
| Description | Old Hickory - Coast Processing -Term sheet |
| Rendering set | Standard |

| Legend: | |
|---|---|
| Insertion | |
| Deletion | |
| Moved from | |
| Moved to | |
| Style change | |
| Format change | |
| Moved deletion | |
| Inserted cell | |
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 4 |
| Deletions | 2 |
| Moved from | 0 |
| Moved to | 0 |
| Style changes | 0 |
| Format changes | 0 |
| Total changes | 6 |

Nonbinding Term Sheet

### COAST PROCESSING
### INDICATIVE SUMMARY OF TERMS AND CONDITIONS

This Indicative Summary of Terms and Conditions is intended only as an outline of certain of the material terms of the proposed operating agreement (the "Operating Agreement") for PurchaseCo, a Delaware limited liability company to be jointly owned and managed by Old Hickory Partners – Coast, L.P. ("OHP") and B.A.T. Inc. dba Coast Processing and its principals Brian Reale, Asante Bayrooti and Mario Azevedo ("Coast," and together with OHP, the "PurchaseCo Parties") and does not purport to summarize all of the conditions, covenants, representations, warranties and other provisions that would be contained in definitive documentation for the structure of the Operating Agreement contemplated hereby.

| | |
|---|---|
| **PURCHASECO ENTITY:** | The PurchaseCo Parties will establish PurchaseCo, a Delaware limited liability company to be jointly owned and managed by OHP and Coast for the exclusive purpose of purchasing all future cash flow streams from individual receivables (collectively, "Packages") sourced by Coast and its Affiliates, and to receive cash flows therefrom. |
| **OWNERSHIP:** | Each PurchaseCo Party's respective interest in PurchaseCo ("Ownership Interest") is as follows:<br><br>Coast – 70%<br>OHP – 30% |
| **CAPITALIZATION:** | Prior to commencing operations at PurchaseCo, the PurchaseCo Parties will capitalize PurchaseCo with $300,000.00 of equity, pro rata, according to the Ownership Interests (the "Equity Investment"):<br><br>Coast – $210,000.00<br>OHP – $90,000.00<br><br>One time per month, PurchaseCo can issue an additional capital call request to OHP for the sole purpose of funding the purchase of Eligible Receivables (as hereinafter defined) that PurchaseCo's cash on hand cannot fund (the "Funding Capital"). The PurchaseCo Parties agree that OHP's Ownership Interest in PurchaseCo will not exceed 30%, except in certain circumstances to be described in the Operating Agreement, and is not adjusted by its contributions of Funding Capital.<br><br>OHP's Funding Capital is available over 5 years in the amount of $10 million (the "Commitment"); provided that during the first 6 months starting from the Closing Date (as hereinafter defined), availability of Funding Capital shall be limited to $5 million, and that the first advance of Funding Capital shall be limited to $2 million. Any distributions of Funding Capital to OHP are subject to reinvestment by PurchaseCo to fund additional Eligible Receivables. The Commitment term and size can be increased at OHP's option.<br><br>PurchaseCo's ability to call Funding Capital shall be subject to certain restrictions set forth in the Operating Agreement, including the Cost Basis of Eligible Receivables measured as of the last day of the prior month (the "Funding Base"). The Funding Base as of any date of determination shall be an amount equal to 100% of the Cost Basis of Eligible Receivables. The "Cost Basis" of Eligible Receivables refers to the amount paid to Affiliates for a File (as hereinafter defined) or Packages. For the purposes of calculating the Funding Base, Eligible Receivables shall also include any Files or Packages contracted with Affiliates and approved for purchase by PurchaseCo in the current month. To the extent that the outstanding amount of the Funding Capital exceeds the Funding Base (a "Funding Base Deficiency"), PurchaseCo |

CONFIDENTIAL

4811-7258-7475v.2 62697-19

OHPLPG00073089

Nonbinding Term Sheet

shall immediately pay OHP in an amount sufficient to eliminate the Funding Base Deficiency.

"Eligible Receivables" shall mean any payment stream from a File (or collectively, a Package for a given month) that satisfies either of the following conditions: (a) receives unanimous consent for purchase by all the PurchaseCo Parties, or (b) meets the following criteria: (1) such receivable has had at least its first payment made, and (2) such receivable has a purchase cost of less than the lesser of (i) 40% of the total expected cash flows to be collected over the term of the File or Package (prior to management fee or cancellations), or (ii) 7.5% of the total gross balance of debt enrolled per File or Package.

**CONDITIONS PRECEDENT:**

The creation of PurchaseCo will be subject to satisfaction of the conditions precedent deemed appropriate by OHP for the an alignment of interest between the PurchaseCo Parties, defined as the following:

Coast shall certify that Brian Reale, Asante Bayrooti and Mario Azevedo (the "Principals") individually and their other Package-buying entities, including but not limited to ABR Enterprises, LLC, Freedom Enrollment, and any trusts or entities owned, managed by, or for the benefit of the Principals or their affiliates (the "Coast Entities"), shall not engage in the purchase of any new Packages that meet the criteria of an Eligible Receivable, unless OHP first declines to provide Funding Capital for the specific Package.

The execution of the Operating Agreement will also be subject to satisfaction of the conditions precedent deemed appropriate by OHP for transactions of this type generally and for this transaction in particular, including, but not limited to, the following:

- OHP shall have received from PurchaseCo all fees required to be paid and all expenses for which invoices have been presented.

- All governmental and third party approvals necessary in connection with the transaction(s) contemplated hereby and the continuing operations of PurchaseCo, Coast and its subsidiaries (including shareholder approvals, if any) shall have been obtained on satisfactory terms and shall be in full force and effect.

- OHP shall have received such closing documents as are customary for transactions of this type or as it may reasonably request, including but not limited to resolutions, good standing certificates, incumbency certificates, organizational documents, consents, and financing statements or similar filings, all in form and substance acceptable to OHP and its counsel.

The date on which the PurchaseCo Parties execute the Operating Agreement shall be referred to as the "Closing Date."

**PURCHASECO OPERATIONS:**

PurchaseCo will purchase, from lead generating and marketing companies affiliated with Coast ("Affiliates"), cash flow streams that represent the Affiliate's entire interest in customer payments for debt validation services ("Files"). All Files purchased within a calendar month will be collectively called a "Package." Files will be funded from the following capital sources of PurchaseCo, in order of availability:

1) Available cash on hand at PurchaseCo (retaining a minimum Cash (as hereinafter defined) balance of $25,000.00 at all times);

2) Funding Capital, up to the Commitment amount (one draw per month maximum); and

2    CONFIDENTIAL

OHPLPG00073090

Nonbinding Term Sheet

3) Equity infusion from the PurchaseCo Parties in proportion to the Ownership Interests.

Coast will manage the day-to-day operations of PurchaseCo and will administer all Package collections and management of the Files, with the help of a fund administrator (to be hired by PurchaseCo if so requested by OHP). Collections and management will operate substantially similar to the collections and management of current Packages of Files sold to third parties and as detailed in that certain B.A.T. Inc. dba Coast Processing - Affiliate Agreement with ACB Holdings, LP, dated September 29, 2020 (Exhibit A), including, but not limited to, the monthly maintenance fee and refund clawback mechanics. At any time, OHP may request that PurchaseCo and Coast engage a backup servicer to onboard in preparation for one day taking over PurchaseCo's servicing and collections should, in OHP's determination, Coast not be able to fulfill such duties. The Principals will be the primary negotiators with each Affiliate for the terms of Package or File purchases on behalf of PurchaseCo, and Coast, as well as the Coast Entities, will act at all times with a fiduciary duty first and foremost to PurchaseCo. Any commission income due or received by any of Coast, the Principals, or its affiliates, related to the purchase of Files or Packages funded by PurchaseCo, shall be contributed to PurchaseCo and deemed income of PurchaseCo and not part of Coast's equity contributions to PurchaseCo. Should Coast or its affiliates ever create an Affiliate, Package- or File-buying entity or any other similar entity or joint venture (such business to be determined to be a similar business in OHP's reasonable discretion) that is owned or managed, directly or indirectly, by Coast or the Principals or affiliates, Coast will notify the PurchaseCo Parties in advance and will provide all reasonable disclosures as requested by the PurchaseCo Parties on a continuing and ongoing basis, including evidence that such business does not violate the terms of the Operating Agreement or any other contract among the PurchaseCo Parties and their assigns.

Each of OHP and Coast will appoint a manager to represent its interests at PurchaseCo. Authorization from both Managers representing the PurchaseCo Parties shall be required for certain business operations including, but not limited to, bank outflows (dual authorization required for any disbursements), debt drawdowns, debt prepayments, equity distributions, any raises of debt or equity or issuance/purchase of securities, annual budgeting, tax matters, any acquisition or sale of assets (except in the normal course), initiation or responses to any litigation, and other major activities deemed as such by OHP in its reasonable discretion (collectively "Major Decisions"). The PurchaseCo Parties hereby agree that the exclusive capital provider to PurchaseCo shall be OHP and its assigns, Coast, and the Principals.

**RIGHT OF FIRST REFUSAL:**

For so long as PurchaseCo has not been wound down, PurchaseCo will have a right of first offer for any and all Files or Packages related to a Coast customer, that of an Affiliate, an affiliate of Coast or a Principal of Coast. Should OHP decline to have PurchaseCo fund payments associated with a complete Package, then the Package may be offered to any other party, provided such offer be made on the same economic and qualitative terms (in OHP's reasonable discretion) as those offered to PurchaseCo. At no time shall Coast, an affiliate of Coast or a Principal of Coast present a File or a Package to any third-party prior to presentation to PurchaseCo and OHP and the rejection of such File or Package (subject to the immediately following sentence) by OHP. To the extent PurcahseCo is presented certain Files, but not a complete Package, any rejection of such Files by OHP shall not permit that such Files

OHPLPG00073091

Nonbinding Term Sheet

may be offered to any other party, until such time as OHP rejects the entire Package. Following a rejection of a Package, if any terms change for the acquisition of such Package, OHP (on PurchaseCo's behalf) must be presented with the revised terms for such Package with the opportunity to acquire such Package. The right of first offer set forth in this section shall continue regardless of default under the terms of the Operating Agreement or other definitive documents or of the number of times OHP has rejected Packages presented to PurchaseCo. In the event that OHP accepts a transaction, but PurchaseCo or Coast is in default of any agreement involving OHP, then OHP may, in its discretion, have such File or Package accounted for separately from all previously acquired Files or Packages or have such Files or Packages acquired by a different entity than PurchaseCo that may be owned and controlled by OHP.

**DISTRIBUTIONS:**

At such time as a distribution is made by PurchaseCo to the PurchaseCo Parties, the "waterfall" would work as follows:

1. First, to OHP until such time as OHP has received a return of all Funding Capital contributed to PurchaseCo;
2. Next, to OHP until such time as OHP has received a return of its Equity Investment in PurchaseCo;
3. Next, to Coast until Coast has received a return of all of its Equity Investment in PurchaseCo; and
4. Thereafter, to the PurchaseCo Parties pro rata according to Ownership Interests.

**CONDITIONS PRECEDENT TO EACH ADVANCE OF FUNDING CAPITAL:**

In advance of each monthly funding request, Coast agrees to furnish to OHP, with at least two weeks' notice, a report, in a form to be agreed upon by the PurchaseCo Parties, which includes but is not limited to historical and projected performance statistics of Files purchased, organized by Affiliate. Funding of each monthly Funding Capital advance request is subject to OHP's receipt of and approval of such report, such approval not to be unreasonably withheld. Any nonresponse within forty-eight (48) hours of such receipt is deemed to be an approval of such report.

The making of each monthly contribution of Funding Capital shall further be conditioned upon (a) the accuracy of certain material representations and warranties which the PurchaseCo Parties shall set forth in the Operating Agreement following a further meet and confer on the subject; (b) there being no breach of any covenants in the Operating Agreement nor any Events of Default (as further defined below) in existence at the time of, or after giving effect to, the making of, such contributions of Funding Capital; (c) there being no material adverse change in PurchaseCo's or Coast's business practices in existence at the time of, or after giving effect to the making of, such Funding Capital advance, except that Coast has sole discretion to control the manner in which its validation program is operated (the PurchaseCo Parties shall define the scope of a material adverse change in business practices in further detail as part of the Operating Agreement); and (d) after giving effect to the contribution of Funding Capital, the total outstanding balance of the Funding Capital to PurchaseCo shall not exceed the lesser of the Commitment or the Funding Base then in effect.

**FUNDING CAPITAL COVENANTS:**

The financial covenants under the Operating Agreement governing the Funding Capital shall be as follows:

4                                    CONFIDENTIAL

OHPLPG00073092

Nonbinding Term Sheet

- PurchaseCo shall not permit the Cancellation Rate (as hereinafter defined) of any monthly Package, or across all owned Files, to be greater than 40%, tested at the end of each calendar month; and

- PurchaseCo's Cash balance shall at all times be at least $25,000.00.

"Cancellation Rate" means, as of any date of determination thereof, an amount, expressed as a percentage, equal to (a) the total dollar amount of undiscounted expected future cash flows from Files cancelled, written off, or greater than 60 days overdue, divided by (b) the total dollar amount of undiscounted received and expected future cash flows from all Files.

"Cash" shall mean cash or cash equivalents of a person, (a) that are not, and are not required to be, designated as "restricted" on the financial statements of such person, (b) that are not contractually required, and have not been contractually committed by such person, to be used for a specific purpose, (c) that are not subject to (i) any provision of law, statute, rule or regulation, (ii) any provision of the organizational documents of such person, or (iii) any order of any governmental authority, (d) in which no person has a lien, and (e) that are held in a deposit account or securities account, as applicable, in which OHP has direct access.

A violation of either of these covenants shall entitle OHP to, in its sole discretion: (a) withhold future investment notwithstanding any representation to the contrary without waiving its ROFO/ROFR, (b) accelerate the repayment of Funding Capital to OHP pursuant to the Distributions section above, and (c) institute a "freeze" on the bank account(s) whereby no transaction may be made from the bank account(s) of PurchaseCo.

**REPRESENTATIONS AND WARRANTIES:**

The Operating Agreement shall contain representations and warranties customary for transactions of this type and other terms deemed appropriate by OHP, including with respect to licenses, permits and compliance with law.

**AFFIRMATIVE COVENANTS:**

The affirmative covenants applicable to PurchaseCo and its subsidiaries shall include, without limitation, the following: delivery to PurchaseCo Parties of monthly, quarterly and annual financial statements of Coast and PurchaseCo; annual audits with unqualified opinions of PurchaseCo and Coast; access to real-time performance of packages; delivery of monthly projections by Coast for OHP's expected advances of Funding Capital; payment of obligations; continuation of business and maintenance of existence and material rights and privileges; compliance with laws and material contractual obligations and obtainment and maintenance of any and all applicable licenses with proper authorities, if any, by both Coast and PurchaseCo; accuracy of information; maintenance of property and general liability insurance; maintenance of books and records; right of OHP to inspect property and books and records of Coast and PurchaseCo; notices of defaults and notice of formal service of lawsuits against PurchaseCo and Coast; continued unrestricted access provided to OHP of all PurchaseCo's bank accounts; use of proceeds of Funding Capital; and all or substantially all of professional time of Coast's senior management devoted to the management of the business of Coast and PurchaseCo.

**NEGATIVE COVENANTS:**

The negative covenants applicable to PurchaseCo and its subsidiaries shall include, without limitation, limitations on the following (subject to exceptions, as appropriate, to be negotiated and including the specific exceptions set forth herein):

- indebtedness (including guarantee obligations);

CONFIDENTIAL

OHPLPG00073093

Nonbinding Term Sheet

- liens;
- fundamental changes (including mergers, consolidations, liquidations, dissolutions, and divisions; changes in fiscal year and changes in line of business; transfers of interests; issuances of securities);
- investments;
- dispositions of assets outside the normal course;
- payment of restricted payments (including dividends and other payments in respect of equity interests);
- negative pledge clauses on the PurchaseCo Parties; or
- amendment of material documents.

**EVENTS OF DEFAULT:** Following an Event of Default (as hereinafter defined) and any reasonable cure periods (as further described and agreed upon in the Operating Agreement), the Commitment shall, at the sole discretion of OHP, be reduced to $0.00, and OHP shall take sole control over PurchaseCo, any managers of PurchaseCo appointed by Coast will be removed as a manager, and OHP shall cause all assets of PurchaseCo, including existing cash and any cash from receivables owned by PurchaseCo, to be distributed directly to OHP until OHP's Funding Capital and Equity Investment are fully repaid. Following full repayment of OHP's Funding Capital and Equity Investment, PurchaseCo's operations and ownership shall revert as if such Event of Default had not occurred. An "Event of Default" includes, without limitation: nonpayment of fees or other amounts when due under any purchase agreement or the Operating Agreement; representations and warranties set forth in the Operating Agreement becoming incorrect in any material respect (the PurchaseCo Parties shall define the scope of relevant representations and warranties and materiality thresholds related thereto in further detail as part of the Operating Agreement), subject to reasonable cure periods; violation of covenants (subject, in the case of certain affirmative covenants, to a commercially reasonable cure period to be agreed upon); occurrence of a default (whether or not resulting in acceleration) under any agreement governing indebtedness, in excess of an amount to be agreed upon, of PurchaseCo; bankruptcy events of PurchaseCo, Coast or the Principals; conviction or guilty or nolo contendere pleas of a criminal offense or civil judgment in excess of $50,000.00 of PurchaseCo, Coast or any of the Principals; and certain ERISA events.

**EXPENSES AND INDEMNIFICATION:** PurchaseCo shall pay (a) all expenses of OHP associated with the preparation, execution, delivery and administration of the Operating Agreement, prior Package and File purchase agreements, and any amendment or waiver with respect thereto (including the reasonable fees, disbursements and other charges of counsel) whether or not the transaction closes, (b) all expenses of OHP (including the fees, disbursements and other charges of counsel) in connection with the enforcement of the Operating Agreement and all ongoing business expenses of OHP (including but not limited to administration, tax, legal and accounting), (c) fees and expenses associated with other advisors and professionals engaged by OHP in connection with the PurchaseCo Operating Agreement, and (d) other related expenses incurred by OHP during the due diligence process.

The Operating Agreement will contain standard indemnification and exculpation language related to the members of PurchaseCo.

CONFIDENTIAL

OHPLPG00073094

Nonbinding Term Sheet

**GOVERNING LAW:**    This term sheet is, and the Operating Agreement will be, governed by the internal laws of the State of Delaware.

**WAIVER OF JURY TRIAL:**    In the Operating Agreement, each party will agree to a waiver of jury trial substantially similar in form and substance to the following:

EACH PARTY HERETO HEREBY IRREVOCABLY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN ANY LEGAL PROCEEDING DIRECTLY OR INDIRECTLY ARISING OUT OF OR RELATING TO THIS AGREEMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY (WHETHER BASED ON CONTRACT, TORT OR ANY OTHER THEORY). EACH PARTY HERETO (A) CERTIFIES THAT NO REPRESENTATIVE, AGENT OR ATTORNEY OF ANY OTHER PERSON HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT SUCH OTHER PERSON WOULD NOT, IN THE EVENT OF LITIGATION, SEEK TO ENFORCE THE FOREGOING WAIVER AND (B) ACKNOWLEDGES THAT IT AND THE OTHER PARTIES HERETO HAVE BEEN INDUCED TO ENTER INTO THIS AGREEMENT BY, AMONG OTHER THINGS, THE MUTUAL WAIVERS AND CERTIFICATIONS IN THIS SECTION.

**VENUE:**    Wilmington, Delaware.

CONFIDENTIAL

OHPLPG00073095

Nonbinding Term Sheet

Each of the parties hereby approves and adopts this Term Sheet as of _____, 2020.

**B.A.T. Inc.**


By: _____
Name: _____
Title: _____

**Coast Processing Principals, individually**


By: _____
Name:  Brian Reale



By: _____
Name:  Asante Bayrooti



By: _____
Name:  Mario Azevedo

**Old Hickory Partners – Coast, LP**

By:      Old Hickory GP, LLC,
         its general partner



By: _____
Name:  Adam C. Blum
Title:   Manager

8

CONFIDENTIAL

OHPLPG00073096

Nonbinding Term Sheet

Exhibit A:

B.A.T. Inc. dba Coast Processing - Affiliate Agreement with ACB Holdings, LP, dated September 29, 2020

CONFIDENTIAL

OHPLPG00073097

<u>**B.A.T. Inc. dba Coast Processing - Affiliate Agreement**</u>

THIS AGREEMENT (the "Agreement") is made and effective as of this 29th of September, 2020 by and between B.A.T. Inc. dba Coast Processing ("BAT"), and **ACB Holdings, LP** ( "Purchaser"), and together with BAT's affiliated marketing team(s) (the "Affiliate").

RECITALS:

BAT is in the business of providing administrative support services for law firms providing a package debtor's rights services in the form of debt validation, consultation, and litigation defense through a duly licensed law firm The Litigation Practice Group PC ("LPG"). Among the services offered by BAT through LPG are the following:

- Removal of invalid debts through correspondence directly with the three credit bureaus;
- Validation of consumer debts through correspondence including disputes with original creditors, validation demands to third party debt collectors and assignees, and disputes with all three credit bureaus;
- Defense of collection actions initiated by original creditors or third party assignees;
- Negotiation of advantageous settlements of consumer debts both pre and post litigation;
- Protection from harassing collection practices, including but not limited to the initiation of actions under the Telephone Consumer Protection Act and Fair Debt Collection Practices Act; and
- Education of clients regarding federal laws applicable to consumer debt and credit reporting, and consultation regarding risk mitigation and litigation defense through its network of attorneys across the country.

Each of these services is offered without regard to the identity of the creditor or third-party debt collector or assignee. BAT reviews all client files prior to the execution of the client's legal services agreement with LPG, and maintains oversight through its administrative services over all file placements.

Affiliate owns and operates a system of generating leads consisting of consumers interested in the legal services offered by LPG through its agent, BAT. Affiliate, acting in accordance with direction from BAT, shall obtain the names of prospective consumers and will market in a lawful manner, complying with the restrictions of the jurisdiction in which the consumer resides. For consumers interested in utilizing BAT's services (a "Consumer"), Affiliate will assist BAT in having Consumers execute an approved legal services agreement with [LPG] to which BAT provides administrative support services. Following execution of an approved legal services agreement, Consumers will become clients of [LPG], and LPG will be exclusively responsible for and liable for the representation of consumers in the context of the provision of legal services.

Pursuant to a separate agreement, BAT has acquired from Affiliate all right, title and interest to the payments owing to Affiliate from the client files of the Consumers listed on Addendum A (the "Client Files"). Purchaser desires to purchase from BAT, and BAT desires to sell to Purchaser, the Consumer payments associated with the Client Files. The parties hereto desire to enter into this Agreement to provide for the acquisition of the all right, title and interest to the payments owing to Affiliate (the "Payments") resulting from the Consumers under the Client Files.

1

OHPLPG00073098

BAT, Purchaser and Affiliate hereby agree to the following:

1.   Subject to the terms of this Agreement, each Party shall be solely responsible for bearing its own costs and expenses incurred in performing its responsibilities under this Agreement, including all tariffs, filings, licensing and/or other fees.

2.   Affiliate shall comply with state and federal laws in performing (a) its operations associated with the transactions contemplated herein and (b) its obligations under this agreement and any other agreement associated herewith, including communicating with Consumers regarding BAT or any of its programs.

3.   BAT shall comply with state and federal laws in performing (a) its operations associated with the transactions contemplated herein, (b) its obligations under this Agreement, and (c) the legal services agreement entered into between BAT and the Consumers referred by Affiliate.

4.   If requested by BAT, Affiliate shall provide a copy of all marketing materials to BAT upon receiving a request from BAT.  Affiliate shall endeavor to provide such materials within 10 business days of such request, but may provide such materials in any time frame that is commercially reasonable.

5.   Affiliate agrees to keep any and all documents or communications between itself and BAT/Purchaser confidential pursuant to the provisions set forth below.

6.   <u>Acquisition.</u>

   a.   BAT hereby grants, assigns, sells, conveys, transfers and delivers to Purchaser and Purchaser hereby accepts, assumes and receives from BAT, all of BAT's right, title and interest to the Payments (which represents 65% of the payments received by BAT for the Client Files) in exchange for PURCHASER remitting to BAT a fee of $437,750.00 (the "Purchase Price").

   b.   Following the execution of this Agreement and the payment of the Purchase Price, BAT shall pay 65% of the difference resulting from (1) each Payment per Client File for each Consumer listed on Addendum A to this Agreement, which represents all of Affiliate's right, title and interest to the Payments, less (2) the monthly maintenance fee of $91.38, which BAT shall retain to cover administrative costs for each Client File. BAT acknowledges Affiliate has placed the Consumers with BAT.  Payment of 65% of each Client File shall be made by BAT direct to PURCHASER, and no portion of the per Client File payment shall be made to Affiliate, upon receipt of such funds by BAT.

   c.   If BAT is required to refund payment for services to any Consumer, then Purchaser shall be responsible for returning the entirety of its fees collected on such Client File to BAT (in such percentage as is set forth herein).  BAT has exclusive discretion to grant or deny a requested refund or cancellation, subject to the terms of this Agreement.  BAT shall be entitled to offset any future payments to Purchaser in order to recover a refund awarded by BAT.

2

OHPLPG00073099

d. The amounts paid from the Consumers for each Client File shall be receivables of PURCHASER, and Purchaser shall have an undivided interest in the whole of any receivable from BAT, such that it shall have a legal claim to such receivable.

7. Each of BAT, Affiliate and Purchaser have all requisite power and authority to execute and deliver this Agreement and the other documents contemplated hereby (the "Transaction Documents") to which it is a party, to consummate the transactions contemplated by this Agreement and the other Transaction Documents to which it is a party. All requisite actions on the part of BAT, Affiliate and Purchaser and their officers, managers and members necessary for the authorization, execution and delivery of this Agreement and the other Transaction Documents to which they are a party, and the performance of all obligations of such party hereunder and thereunder, has been taken. This Agreement and the other Transaction Documents to which each of BAT and Affiliate is a party have been duly and validly executed and delivered and constitute, assuming this Agreement and the other Transaction Documents to BAT and Affiliate are a party have been duly authorized, executed and delivered by the other parties thereto, valid and legally binding obligations of each of BAT and Affiliate, enforceable against each of them in accordance with their respective terms, subject to applicable bankruptcy or other similar Laws affecting the rights and remedies of creditors generally as well as to general principles of equity (regardless of whether such enforceability is considered in a proceeding in equity or at law). BAT represents and warrants to Purchaser that BAT has good and marketable title to, all Client Files and Affiliate has no right to receive any payment with respect to such Client Files. Each Consumer represented by the Client Files has made at least one of their required payments to BAT.

8. Each of BAT and Affiliate are in compliance in all material respects with all any federal, state, local or foreign law (including common law), statute, code, ordinance, rule, regulation or other requirement ("Law") applicable to its business or operations. Neither of BAT or Affiliate have received any written or other notice or been charged with the violation of any Laws. To the knowledge of BAT and Affiliate, neither is under investigation with respect to the violation of any Laws and, to the knowledge of BAT and Affiliate, there are no facts or circumstances which could form the basis for any such violation. BAT and Affiliate currently have all material approvals, authorizations, consents, licenses, permits or certificates which are required for the operation of the business as presently conducted ("Permits"). Neither BAT and Affiliate (i) are in default or violation (and no event has occurred which, with notice or lapse of time or both, would constitute a default or violation) of any term, condition or provision of the certificate of organization of the relevant party, and (ii) are in default or violation (and no event has occurred which, with notice or the lapse of time or both, would constitute a default or violation) in any material respect of any term, condition or provision of any Permit, to which the business is subject or by which its properties or assets are bound, and to the knowledge of the BAT and Affiliate, there are no facts or circumstances which could form the basis for any such default or violation.

9. No fee (other than the amount set forth Paragraph 6) shall be due from PURCHASER to either Affiliate or BAT, except the refund deduction set forth in Paragraph 10. PURCHASER shall be entitled to all payments due to Affiliate from the Client Files as described under Paragraph 6, without limitation. Neither BAT nor Affiliate may modify this Agreement without the express written consent of PURCHASER, which consent may be withheld for any reason without limitation.

3

OHPLPG00073100

10. BAT shall bear all expenses related to the services it offers to Consumers, and Affiliate shall bear all expenses related to its marketing of the same except as is set forth in this Paragraph. No expense shall be borne by PURCHASER. BAT reserves all rights with regard to rejection or cancellation of a Consumer, but will do so only in accordance with the recommendation of the law firm utilized in providing such service, subject to the applicable state bar rules for such representation and the consent of Purchaser. PURCHASER shall be responsible for its pro rata share of refunds issued to a client as the result of a cancellation, which refund shall be borne in proportion to PURCHASER's share of fees as set forth in Paragraph 6. Notwithstanding anything to the contrary in this Agreement, such refund shall be deducted from future remittance by PURCHASER, except that if all payments to PURCHASER have been complete, any refund issued by BAT to client shall be borne exclusively by BAT. To the extent a refund or cancellation is granted to a Consumer due to a breach of a representation, warranty or covenant set forth in this Agreement, the Purchase Price shall be reduced by the amount of the Purchase Price attributable to the refunded or cancelled Client File, as calculated by taking the total value of the relevant Client File divided by the aggregate value of all Client Files and multiplying such number by the Purchase Price.

11. BAT and Affiliate shall indemnify, defend and hold harmless the Purchaser and its successors and assigns, heirs, beneficiaries, legal and other representatives and affiliates, and each of their respective partners, members, shareholders, managers, directors, officers, employees and agents (collectively, the "Purchaser Group") from and against all claims, actions or causes of action, assessments, demands, losses, damages, judgments, fines, settlements, liabilities, costs and expenses, including interest, penalties and reasonable attorneys', experts' and accounting fees and expenses of any nature whatsoever (collectively, "Damages"), asserted against, suffered by, imposed upon or incurred by any member of the Purchaser Group to the extent caused by (a) BAT's, Affiliate's or LPG's actions or omissions in their business operations, or (b) a breach of any covenant, agreement, representation or warranty of BAT and Affiliate contained in this Agreement. The indemnity provided for in this <u>Section 11</u> is not limited to third party claims against members of the Purchaser Group. This Section 11 shall survive the termination of this Agreement.

12. Notwithstanding anything to the contrary in this Agreement, prior to March 31, 2020, BAT shall not, and shall not allow any of its affiliates to, offer any client files or similar revenue generating opportunities to any other Person (as defined under applicable law) other than to Purchaser, except for any existing relationship for the acquisition of customer files; *provided, however,* if Purchaser elects to not participate in such opportunity or fails to respond to BAT or its applicable affiliate within ten (10) business days, BAT or its applicable affiliate will be permitted to enter into a transaction with a third-party purchaser. Any notice of a prospective business opportunity shall be delivered in writing by e-mail (read receipt requested) to <u>adamblum@aol.com</u> and <u>kevin.yu93@gmail.com.</u>

13. This Agreement shall continue in full force and effect until the conclusion of the payment term of the clients set forth in attached addenda. Those respective client lists are attached hereto as Addendum A, Addendum B, and Addendum C, and each represents a separate batch of clients delivered from separate marketing affiliates. The anticipated return on this investment is 22% to 27%, but no return is guaranteed. The anticipated return is based on the prior performance of other clients, but the performance of the clients contained in the packages attached as Addendum A, Addendum B, and

4

OHPLPG00073101

Addendum C is unknown, and no representation is made as to the likely performance of such clients. The parties agree that the use of the phrase "payment term" shall mean the total of all payments due from any client listed in Addendum A to BAT or Affiliate without limitation, and without regard to whether a modification of the agreement between such client and BAT shall have taken place. Upon the conclusion of all payments from all clients listed in Addendum A to BAT, and BAT's payment in turn to PURCHASER, this Agreement shall cease except that any term contemplated to extend beyond the completion of such term shall remain in full force and effect.

14.    Upon termination of this Agreement for any reason whatsoever, BAT, Purchaser and Affiliate will refrain, and will instruct their affiliates, officers, directors, employees, contractors and agents to refrain, from making any disparaging or negative comment, remark, statement, or implication, whether written or oral, about any party to this Agreement.

15. The confidential information of BAT, Purchaser or Affiliate shall include information regarding contracts, customer or client lists or information, employees, directors, officers, investors, hardware, software, screens, specifications, designs, plans, drawings, data, prototypes, discoveries, research, developments, methods, processes, procedures, improvements, 'Know-how', compilations, market research, marketing techniques and plans, marketing materials, business plans and strategies, documents, this Agreement, scripts, guidelines, price lists, pricing policies and financial information or other business and/or technical information and materials, in oral, demonstrative, written, graphic or machine-readable form, which is unpublished, not available to the general public or trade, and which is maintained as confidential and proprietary information by the disclosing party for regulatory, customer relations, and/or competitive reasons. None of BAT, Purchaser or Affiliate may disclose the confidential information of the other, the name of the other, or the existence of this Agreement without the express written consent of the applicable party.  The disclosure of information in connection with a judicial or administrative proceeding shall not constitute a violation of this term.  The parties hereto agree to notify the other if any inadvertent disclosure of information occurs within 48 hours of becoming aware of such disclosure, to the extent legally and practically permissible.  The parties hereto agree to work together in good faith to remediate any disclosure of confidential information.  A party whose confidential information is disclosed shall be entitled to injunctive relief in any court of competent jurisdiction.

16. Nothing in this Agreement nor in the eventual legal services agreement shall restrict Affiliate from offering any other service of any kind to Consumer, including credit repair or debt relief programs.  The Affiliate is not restricted from marketing on behalf of debt settlement, debt consolidation, credit repair, or debt relief entities, including but not limited to other law firms.  BAT and Affiliate hereby agree that any and all prior agreements entered into by BAT and Affiliate or any law firm to which BAT provides administrative support services and Affiliate are null and void and unenforceable, and this Agreement shall become the operative agreement for all files previously placed through the use of BAT's administrative support services.

17. This Agreement shall be governed by the laws of the State of California, and the Courts of the State of California, County of Orange, shall have exclusive subject matter jurisdiction over this Agreement. All parties hereto to this Agreement consent to the personal jurisdiction of the Superior Court of California, County of Orange, over such party.

5

OHPLPG00073102

18. Affiliate agrees not to use the name BAT in any advertising, publicity release, or sales presentation designed to promote Affiliate's service, unless BAT provides prior written consent to such specific use.

19. Any fees incurred by BAT in connection with a Consumer's Non-Sufficient Funds ("NSF") fee shall be borne mutually by both BAT and Purchaser if and only if the Consumer cancels the program after such NSF. To the extent the Consumer cancels the program after such NSF, Purchaser shall bear that portion of the NSF fee commensurate with its share of the per file fee set forth in Paragraph 6, above. This amount shall be deducted from the fees remitted to Purchaser in the month in which the client having an outstanding NSF charge cancels the program without remitting such NSF fee.

20. This Agreement may be assigned or transferred without the prior written consent of the other by PURCHASER. This Agreement shall be binding upon and shall inure to the benefit of the Parties hereto and their respective successors and assigns.

21. In the event of a breach, the party who prevails in any court proceeding shall be entitled to reasonable attorneys' fees and collection costs, including all fees and costs on appeal.

22. This Agreement contains the entire Agreement between the Parties hereto, and shall not be modified, amended or supplemented, or any rights therein waived, unless specifically agreed upon in writing by BAT, Purchaser and Affiliate.

[signature page follows on the next page]

6

OHPLPG00073103

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed by their duly authorized officers, all as of the day and year first above written.

**B.A.T. Inc.**

By: Brian Reale

Title: Chief Executive Officer


ACB Holdings, LP



By:

Name:   Adam C. Blum

Title:   Manager


7

OHPLPG00073104

### Electronic Funds Transfer Authorization

This Electronic Funds Transfer (EFT) authorization is for use in connection with the foregoing Agreement, and permits BAT to transfer any and all amounts due to ("PURCHASER") under the foregoing Agreement by EFT. By signing below, PURCHASER hereby authorizes BAT to initiate EFT transfers at its discretion, with all fees and costs incurred by PURCHASER in connection with such transfer to be borne by PURCHASER, while all fees and costs incurred by BAT in connection with such transfer to be borne by BAT.

Account Holder Signature:  _____ Date: 01-OCT-2020

By:     ADAM BLUM
        VICE PRESIDENT OF ACB HOLDINGS
        MANAGEMENT, LLC, ITS GENERAL
Title:  PARTNER

Account Owner Name:  ACB HOLDINGS LP

Social Security Number / FEIN Number associated with account listed below:

████████████

Address:
        777 MAIN ST STE 550
        FORT WORTH, TX 76102
                                817-710-7073
City:   State:  Zip: Tel:

Bank Name:      BANK OF TEXAS
Routing Number:  ████████████
Account Number:  CHECKING
Account type :

8

# ADDENDUM A

OHPLPG00073106

| Company | Enrolled Date | Monthly Payment | First Payment Date | Debt Enrolled | Fee % | State | Program Length (Months) | Pay Freq | Total Program Cost | Client Status | Total Payment Cleared | # Pmts Cleared |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Benefit 1st Financial | Jul 31, 2020 | $ 291.89 | Aug 04, 2020 | $ 11,946.00 | 49% | TN | 25.00 | Monthly | $ 7,623.04 | Active File | $ 523.78 | 2 |
| Benefit 1st Financial | Jul 28, 2020 | $ 251.28 | Aug 04, 2020 | $ 1,965.00 | 49% | HI | 5.00 | Monthly | $ 1,251.50 | Active File | $ 500.52 | 2 |
| Benefit 1st Financial | Jul 24, 2020 | $ 278.24 | Aug 12, 2020 | $ 25,266.50 | 28% | FL | 35.00 | Monthly | $ 6,944.84 | Active File | $ 353.48 | 2 |
| Benefit 1st Financial | Jul 20, 2020 | $ 291.00 | Jul 23, 2020 | $ 7,531.00 | 49% | CA | 20.00 | Monthly | $ 5,290.00 | Active File | $ 524.09 | 2 |
| Benefit 1st Financial | Jul 17, 2020 | $ 289.84 | Aug 06, 2020 | $ 14,686.00 | 26% | PA | 32.00 | Monthly | $ 8,029.98 | Active File | $ 601.88 | 2 |
| Benefit 1st Financial | Jul 17, 2020 | $ 549.54 | Jul 26, 2020 | $ 61,506.50 | 46% | ME | 34.00 | Monthly | $ 18,743.68 | Active File | $ 1,096.46 | 2 |
| Benefit 1st Financial | Jul 16, 2020 | $ 518.79 | Aug 10, 2020 | $ 38,093.00 | 40% | OH | 38.00 | Monthly | $ 18,370.68 | Active File | $ 1,026.38 | 2 |
| Benefit 1st Financial | Jul 10, 2020 | $ 367.85 | Aug 03, 2020 | $ 24,084.31 | 40% | NV | 36.00 | Monthly | $ 13,235.40 | Active File | $ 735.30 | 2 |
| Benefit 1st Financial | Jul 02, 2020 | $ 251.62 | Jul 22, 2020 | $ 13,196.00 | 39% | KY | 19.00 | Monthly | $ 7,303.92 | Active File | $ 503.66 | 2 |
| Benefit 1st Financial | Jun 17, 2020 | $ 254.27 | Jul 26, 2020 | $ 14,793.00 | 35% | PA | 32.00 | Monthly | $ 6,120.71 | Active File | $ 601.54 | 2 |
| Benefit 1st Financial | Aug 26, 2020 | $ 291.96 | Sep 14, 2020 | $ 6,135.21 | 39% | PA | 11.00 | Monthly | $ 3,272.43 | Active File | $ 202.06 | 1 |
| Benefit 1st Financial | Aug 25, 2020 | $ 209.43 | Sep 09, 2020 | $ 7,147.00 | 34% | PA | 17.00 | Monthly | $ 4,478.28 | Active File | $ 219.43 | 1 |
| Benefit 1st Financial | Aug 25, 2020 | $ 1,504.20 | Aug 28, 2020 | $ 154,114.00 | 33% | LC | 38.00 | Monthly | $ 54,147.50 | Active File | $ 1,604.09 | 1 |
| Benefit 1st Financial | Aug 11, 2020 | $ 349.96 | Sep 10, 2020 | $ 40,223.00 | 27% | MA | 42.00 | Monthly | $ 10,498.17 | Active File | $ 949.96 | 1 |
| Benefit 1st Financial | Aug 10, 2020 | $ 259.19 | Sep 09, 2020 | $ 17,195.00 | 35% | PA | 26.00 | Monthly | $ 8,921.98 | Active File | $ 100.00 | 1 |
| Benefit 1st Financial | Aug 06, 2020 | $ 258.89 | Aug 17, 2020 | $ 5,444.00 | 45% | WV | 13.00 | Monthly | $ 3,386.94 | Active File | $ 258.89 | 1 |
| Benefit 1st Financial | Aug 03, 2020 | $ 292.29 | Aug 31, 2020 | $ 36,574.00 | 25% | OK | 44.00 | Monthly | $ 16,829.14 | Active File | $ 292.29 | 1 |
| Benefit 1st Financial | Jul 31, 2020 | $ 304.93 | Aug 10, 2020 | $ 13,347.00 | 40% | CA | 25.00 | Monthly | $ 7,623.30 | Active File | $ 304.93 | 1 |
| Benefit 1st Financial | Jul 29, 2020 | $ 1,314.50 | Aug 25, 2020 | $ 115,980.00 | 40% | NH | 34.00 | Monthly | $ 47,325.25 | Active File | $ 1,314.09 | 1 |
| Benefit 1st Financial | Jul 19, 2020 | $ 292.74 | Aug 31, 2020 | $ 12,318.00 | 39% | GA | 18.00 | Monthly | $ 5,358.22 | Active File | $ 267.74 | 1 |
| Benefit 1st Financial | Jul 17, 2020 | $ 258.28 | Aug 11, 2020 | $ 12,098.70 | 16% | OH | 26.00 | Monthly | $ 5,169.22 | Active File | $ 267.71 | 1 |
| Benefit 1st Financial | Jul 13, 2020 | $ 715.13 | Aug 28, 2020 | $ 38,408.00 | 21% | CA | 40.00 | Monthly | $ 20,620.56 | Active File | $ 715.13 | 1 |

| Total Debt | $ 702,085.02 |
|---|---|

OHPLPG00073107

# ADDENDUM B

OHPLPG00073108

| Category | Enrolled Date | Monthly Payment | First Payment Date | Debt Enrolled | Fee 1 % | State | Program Length (mos) | Pay Freq | Total Program Cost | Client Status | Total Payments Cleared | # Drafts Cleared |
|---|---|---|---|---|---|---|---|---|---|---|---|---|

| Total Debt | $2,974,910.49 |
|---|---|

OHPLPG00073110

# ADDENDUM C

OHPLPG00073111

| Company | Enrolled Date | Monthly Payment | First Payment Step | Debt Enrolled | Fee % | State | Program Length (Months) | Pay Plan | Total Program Cost | Client Status | Total Payments Cleared | # Drafts Cleared |
|---|---|---|---|---|---|---|---|---|---|---|---|---|

OHPLPG00073112

Total Debt $ 1,089,205.99

OHPLPG00073113